1  Howard Kaloogian, State Bar No. 118954
   Lowell Robert Fuselier, State Bar No. 140701
2  David Hayek State Bar No. 144116
   Kaloogian & Fuselier LLP
3  2382 Faraday Avenue, Suite 130
   Carlsbad, California 92008
4  Tel. 760-522-1802
   Fax 760-431-1116
5
   **Attorneys for Plaintiffs**
6

7  # ORIGINAL

8
   ## UNITED STATES DISTRICT COURT
9
   ### Southern District of California
10

11
12  SAN DIEGO MINUTEMEN, An          )    Case Number 08 CV 0210 WQH RBB
    Unincorporated Association,       )
13                                    )    POINTS AND AUTHORITIES IN
                         Plaintiff,   )    SUPPORT OF PETITION FOR
14       vs.                          )    TEMPORARY RESTRAINING ORDER
                                      )    AND PRELIMINARY INJUNCTION
15  CALIFORNIA BUSINESS,              )
    TRANSPORTATION AND HOUSING        )
16  AGENCY'S DEPARTMENT OF            )
    TRANSPORTATION; DALE BONNER in    )
17  his Official Capacity as Agency Director, )
    Business, Transportation and Housing   )
18  Agency; WILL KEMPTON in his Official   )
    Capacity as CalTrans Director; PEDRO   )
19  ORSO-DELGADO in his Official Capacity  )
    as Caltrans District Director and DOES 1 )
20  through 50,                       )
                                      )
21                       Defendants.  )
                                      )
22

FILED

08 FEB -4 PM 1:47

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY                          DEPUTY

## TABLE OF CONTENTS

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. BACKGROUND SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3. RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4. URGENCY OF PLAINTIFF'S REQUEST . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5. BALANCING TEST TO BE APPLIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6. STATEMENT OF FACTS RE: ACTIONS BY CALTRANS . . . . . . . . . . . . . . . 6

7. REASONS GIVEN BY DEFENDANTS FOR THEIR ACTIONS . . . . . . . . . . . 9

8. PLAINTIFF'S CONTENTIONS AND ARGUMENTS . . . . . . . . . . . . . . . . . . . 11

    A. Plaintiff's Rights to Freedom of Speech and Expression,
       as Guaranteed by the First Amendment, and its Rights to Equal
       Protection of the Laws and Procedural Due Process Have Been
       Violated by CALTRANS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B. Defendants Bear the Burden of Proving That Their Actions Will Pass
       Constitutional Muster. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C. CALTRANS' Actions Denying Plaintiff an Adopt-a-highway Sign on
       Interstate 5 near San Onofre, California Is Constitutionally
       Impermissible Viewpoint Discrimination. . . . . . . . . . . . . . . . . . . . . . . 13

    D. The Mere Fact That Plaintiff's Adopt-a-highway Permit Has
       "Raised Questions Regarding Public Safety", Does Not Pass
       Constitutional Muster. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    E. CALTRANS and the Individual Defendants Engaged in
       Content Based on Discrimination When it Took down Plaintiff's
       Adopt-a-highway Sign in Violation of Plaintiff's First Amendment
       and Equal Protection Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    F. The First Amendment Prohibits CALTRANS from Exercising
       Unbridled Discretion to Restrict Plaintiff's Speech and Discretion. . . . . 19

G.  CALTRANS Has Violated its Own Rules and Procedures in
Taking down Plaintiff's Sign near the U.S. Border
Station on Interstate 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

H.  CALTRANS Denied Plaintiff its Procedural Due Process . . . . . . . . . . 21

10.  THERE IS A HIGH PROBABILITY OF SUCCESS OF
PLAINTIFF'S COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## <u>TABLE OF AUTHORITIES</u>

*Associated Gen. Contractors of Calif. vs.*
*Coalition for Economic Equity*, 1401, 1410 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . *6*

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-764,
108 S.Ct. 2138, 100 L.Ed.2d 771 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

*Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 59 L.Ed. 1027 (1915).  *22*

*Cohen v. California*, 403 U.S. 15, 91 S.Ct. 760, 29 L.Ed.2d 284 (1971) . . . . . . . . . . . . . *15*

*Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) . . . . . . . . . . . . . . . *20*

*Department of Parks & Rec. for State of California vs. Bazaar Del Mundo, Inc.*,
448 F. 3d 118 (9th Cir. 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). . . . . . . . . . . . *6*

*Flynt Distributing Co., Inc. vs. Harvey*, 734 Fed.2d 1389, 1394 (9th Cir. 1984) . . . . . . . . . *9*

*Forysth County, GA vs. Nationalist Monument*, 505 U.S. 123,
112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*Good News/Good Sports Club vs. School Dist. of City of Ladue*,
28 F.3d 1504, 1506 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56,
108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*Johnson v. California State Bd. of Accountancy*, 72 Fed.3d 1427, 1429  (9th Cir. 1995). . . *23*

*Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576
(1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

*Lewis v. Wilson*, 253 F.3d 1077 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2, 15*

*Morgan v. United States*, 298 U.S. 468, 56 S. Ct. 908, 80 L.Ed. 1288 (1936) . . . . . . . . . . *22*

*Perry Educ. Association vs. Perry Local Educators*, 460 U.S. 37, 46,
103 S.Ct. 948, 74 L.Ed.2d 794 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*Philadelphia Newspapers, Inc. v. HDPPS*, 475 U.S. 767,
106 S.Ct. 1558,89 L.Ed.2d 783 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Police Dept. of City of Chicago vs. Mosley*, 408 U.S. 92, 95,
92 S.Ct. 2286,33 L.Ed.2d 212 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*Regan v. Time, Inc.,* 468 U.S. 641, 649,  104 S.Ct. 3262, 82 L.Ed.2d 487. . . . . . . . . . . . . *17*

*Republic of Phillippines vs. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) . . . . . . . . . . . . *6*

*Rob v Hungebeeler,* 370 F.3d 735, 743–745 (2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819,
115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Terminiello v. City of Chicago*, 337 U.S.1, 69 S.Ct. 894,
93 L.Ed. 1131, 93 L.Ed. 1131 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908). . . . . . . . . . . . . . . . *22*

*Texas vs. Johnson*, 491 U.S. 397, 415; 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). . . . . . . . *14*

*Tinker v. Des Moines Independent Community School District* 393
U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*United States, et al. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803,
120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## 1 INTRODUCTION

Plaintiff, SAN DIEGO MINUTEMEN (an unincorporated association), through its area representative, Jeff Schwilk, brings this action to address the violation of its rights of free speech, procedural due process, and equal protection under the 1st and 14th Amendments to the United States Constitution.

Defendants DALE BONNER, WILL KEMPTON, and PEDRO ORSO-DELGADO are sued in their official capacities as the agency secretary, director, and district director of the California Business, Transportation and Housing Agency's Department of Transportation. Defendants are collectively referred to as CALTRANS.

The SAN DIEGO MINUTEMEN applied for and obtained a permit to Adopt-A-Highway from CALTRANS. CALTRANS assigned a portion of Interstate 5 adjacent to the San Onofre Immigration Check Point to the SAN DIEGO MINUTEMEN, and erected an Adopt-A-Highway sign at that location bearing the name "SAN DIEGO MINUTEMEN."

Individuals and special interest groups opposing the political message of the SAN DIEGO MINUTEMEN complained to CALTRANS about the sign and its location. As a result, CALTRANS removed the sign.

This petition requests the Court immediately restrain CALTRANS from assigning the SAN DIEGO MINUTEMEN sign location to any other person or entity until such time as this Court can consider a request for a preliminary injunction to determined if CALTRANS actions in removing the SAN DIEGO MINUTEMEN sign was a probable constitutional violation of the SAN DIEGO MINUTEMEN's right of free speech, procedural due process, and equal protection.

## 2. BACKGROUND SUMMARY

The SAN DIEGO MINUTEMEN is an unincorporated association whose members advocate secure boarders, American sovereignty, and the rule of law. They are in essence a neighborhood watch group who report criminal activity in San Diego County to law enforcement.

The name "SAN DIEGO MINUTEMEN" *speaks.* The name "SAN DIEGO MINUTEMEN" speaks, by representation, the principals, beliefs, and values of an association of people with a particular political view regarding illegal immigration. [*T]aking part in the Adopt-A-Highway*

1   *program, and receiving the attendant recognition on the signs, is "sufficiently imbued with elements*

2   *of communication" to constitute a form of private expressive conduct entitled to first amendment*

3   *protection. . . Although the signs are state owned, an adopter speaks through the signs by choosing*

4   *to undertake the program's obligations in exchange for the signs' announcement to the community*

5   *that it is a highway adopter. Rob v Hungebeeler, 370 F.3d 735, 743–745 (2004).*

6          Proponents of an opposing political view have exercised a "heckler's veto" in opposition to

7   the content and view point of the SAN DIEGO MINUTEMEN sign with sufficient influence to

8   persuade CALTRANS to silence the Minute Men by removing their name from public view at the

9   San Onofre Immigration Check Point.

10         The outcry was twofold: First, the content and view point of the SAN DIEGO MINUTEMEN

11  sign was opposed, and Second, the location of the sign at the San Onofre Immigration Checkpoint

12  was politically incorrect in the opinion of the hecklers.  CALTRANS attempting to overcome the

13  apparent politically incorrect act of giving the SAN DIEGO MINUTEMEN the stretch of highway

14  at the immigration check point bowed to political pressure from special interest groups and

15  politicians, ordering the sign be taken down.  Every argument raised by CALTRANS, and several

16  more, to deny the SAN DIEGO MINUTEMEN's right to its sign were addressed and summarily

17  disposed of in *Lewis v. Wilson*, 253 F.3d 1077 (8th Cir. 2001).

18         CALTRANS' "concern" for public safety based on the possibility that some members of the

19  public may react violently to the SAN DIEGO MINUTEMEN's sigh has also been previously argued

20  unsuccessfully by state operated Adopt-A-Highway programs: *The State may not censor AAH*

21  *applicants' speech because of the potential responses of its recipients. "The first amendment knows*

22  *no heckler's veto," and the State's desire to exclude controversial organizations in order to prevent*

23  *"road rage" or public backlash on the highways against the adopters' unpopular beliefs is simply*

24  *not a legitimate governmental interest that would support the enactment of speech-abridging*

25  *regulations. Rob, supra, 370 F.3d at 743.*

26         CALTRANS is to be commended for its fair and equal administration of the Adopt-A-

27  Highway Program in initially issuing the SAN DIEGO MINUTEMEN's sign permit.  In keeping

28  with the mandate of equal protection and neutral administration of the laws, the CALTRANS

1    administration did the constitutionally correct thing by randomly assigning the location to the SAN

2    DIEGO MINUTEMEN; thereby, acting in a ***content neutral*** manner. The assignment was obviously

3    and appropriately without regard to the speech content of the sign. To say otherwise would be to say

4    CALTRANS administration intentionally assigned the location for the purpose of antagonizing some

5    of the citizenry – an absurd proposition. SAN DIEGO MINUTEMEN choose to believe

6    CALTRANS' process for approving permits and assignment of sign locations has historically been

7    ***content neutral***; however, the named Defendants bowed to open boarder advocates, and they have

8    disregarded the constitutional rights of the SAN DIEGO MINUTEMEN in removing the sign.

9           People of influence, to include *three members of the California State Legislature –*

10   *Assemblyman Joe Coto, D–San Jose; Senator Gil Cedillo, D–Los Angeles; and Assemblywoman*

11   *Lori Saldana, D–San Diego,* confronted the CALTRANS director, Defendant KEMPTON. These

12   legislators who oppose the SAN DIEGO MINUTEMEN's message wanted the sign removed.

13   Defendant KEMPTON, bowing to political pressure and in total disregard for the constitutional

14   rights of the SAN DIEGO MINUTEMEN, ordered the sign taken down.

15          CALTRANS suggested that an alternate location may be offered to the SAN DIEGO

16   MINUTEMEN; however, CALTRANS's removal of the sign before a new location was determined

17   demonstrates that the primary objective was the removal of the SAN DIEGO MINUTEMEN

18   message from public view at the immigration check point.

19          CALTRANS attempted to minimize its actions by offering to install the SAN DIEGO

20   MINUTEMEN sign in a different location sometime in the future. CALTRANS is in effect saying,

21   "We will permit you to speak, but we are going to select the location from which you can speak

22   because we believe it would be more appropriate for your message in that location." This position

23   by CALTRANS forecloses any possible argument that its action is not based on the sign's

24   speech–content.

25          CALTRANS attempts to cloak its actions with the appearance of some legitimate objective

26   by claiming it is motivated by public safety; however, as will be demonstrated below, that position

27   is nothing more than an after-thought justification for an illegal and improper restraint on free speech

28   and denial of equal protection.

1    To err is human.  CALTRANS probably did not intend to violate the SAN DIEGO

2    MINUTEMEN'S constitutional rights in taking the action it did – nevertheless, a constitutional

3    violation did occur.  CALTRANS should concede that an error was made, and then do the right thing

4    by replacing the sign.  Then the SAN DIEGO MINUTEMEN will dismiss this action.  The SAN

5    DIEGO MINUTEMEN do not want anyone fired or disciplined.  They just want their right to free

6    speech and equal protection restored.

### 3  RELIEF REQUESTED

8    Plaintiff, SAN DIEGO MINUTEMEN, seeks a temporary restraining order and preliminary

9    injunction restraining defendants, and each of them, from taking any action, directly or indirectly,

10    from assigning or transferring any rights under the Adopt-A-Highway sign program with respect to

11    that certain Adopt-A-Highway sign located at Location ND 5: SD66.3-SD68.3 (freeway section),

12    the Adopt-a-Highway location assigned to plaintiff SAN DIEGO MINUTEMEN pursuant to Permit

13    No. 11-07NAH0586, pending a hearing on plaintiffs' Order to Show Cause re Preliminary Injunction.

### 4  URGENCY OF PLAINTIFF'S REQUEST

15    Plaintiff's request is based upon the Defendants' actions violating plaintiff's First Amendment,

16    Procedural Due Process, and Equal Protection Rights.

17    Plaintiff, SAN DIEGO MINUTEMEN, was accepted in the Department of Transportation's

18    Adopt-a-Highway program and was entitled to place a sign at location ND 5: SD66.3-SD68.3 as a

19    result of plaintiff agreeing to and removing trash in the vicinity of its adopted highway sign.

20    Attached as Exhibit "**A**" to the declaration of Jeff Schwilk is a copy of the Adopt-a-Highway sign

21    erected by CalTrans under its Adopt-a-Highway program.

22    Attached  as Exhibit "**B**" to the declaration of Jeff Schwilk is a photograph of the SAN

23    DIEGO MINUTEMEN, all wearing helmets and CalTrans approved safety vests, cleaning up trash

24    in the vicinity of their Adopt-a-Highway sign.  Both of these photographs were taken on or about

25    January 9, 2008.

26    Attached as Exhibit "**C**" to the declaration of Jeff Schwilk is a copy of a letter of January 28,

27    2008 to Jeff Schwilk, Spokesman of the SAN DIEGO MINUTEMEN.  The letter is signed at page

28    2 by PEDRO ORSO-DELGADO, California Department of Transportation District Director.  In

1   paragraph one of the letter CalTrans states:

2        The location of your existing Adopt-a-Highway (AAH) permit has <u>raised questions</u>
         regarding public safety due to the proximity of your assigned highway segment to a
3        U.S. Border Patrol facility that is co-located with the California Highway Patrol
         (CHP) San Onofre inspection facility.  (Emphasis added.)
4
    The letter of January 28, 2008 continues:
5
         As a result, Permit No. 110-NAH0586 is hereby modified and the related courtesy
6        sign will be removed.

7        Thereafter, as set forth in the Declaration of Jeff Schwilk, SAN DIEGO MINUTEMEN's

8   Adopt-a-Highway sign was removed by CALTRANS.  The Adopt-a-Highway sign has not been re-

9   erected or replaced in its original location or any location.

10       Plaintiff contends that the actions of CALTRANS, in taking down the Adopt-a-Highway sign

11  of plaintiff, was politically driven, content based, and in violation of Plaintiff's First Amendment,

12  Procedural Due Process and Equal Protection Rights guaranteed under the United States

13  Constitution.

14       Plaintiff is concerned that Defendants and each of them, including CALTRANS, may, before

15  Plaintiff's request for a preliminary injunction can be heard, re-assign the Adopt-a-Highway sign

16  space which was previously held by Plaintiff under its Permit No. 11-07NAH0586 to some other

17  individual or organization, preventing Plaintiff from regaining its specific Adopt-a-Highway sign

18  location as provided to Plaintiff pursuant to Permit No. 11-07NAH0586.

19       All Plaintiff requests is that this court order the Defendants maintain the status quo and not

20  assign the highway location previously permitted to Plaintiff until the constitutional issues raised

21  are addressed by this Court.

22                        **5. BALANCING TEST TO BE APPLIED**

23       As stated by the Ninth Circuit Court of Appeal in *Department of Parks & Rec. for State of*

24  *California vs. Bazaar Del Mundo, Inc.*, 448 F. 3d 118 (9th Cir. 2006):

25       To obtain injunctive relief, the movement must demonstrate either: (1) a combination
         of probable success on the merits and the possibility of irreparable harm, or (2) that
26       serious questions are raised as to the merits and that the balance of hardships tips in
         its favor.
27  *Id.*, at 123.

28

1    The Ninth Circuit held that "serious questions" means questions that involve a fair chance

2    of success on the merits that cannot be resolved one way or the other at the hearing on the injunction

3    " . . . and as to which the court perceives the need to preserve the status quo lest one side prevent

4    resolution of the questions or execution of any judgment by altering the status quo."*Republic of*

5    *Phillippines vs. Marcos*, 862 F.2d 1355, 1362 (9ᵗʰ Cir. 1988).

6    Here, plaintiff is asserting an invasion of its constitutional rights.  When a violation of

7    constitutionally protected rights is shown, no further showing of irreparable injury is required.

8    *Associated Gen. Contractors of Calif. vs. Coalition for Economic Equity*, 1401, 1410 (9ᵗʰ Cir. 1991).

9    The presumption of irreparable injury is particularly strong in cases involving infringement

10   of First Amendment rights: "The loss of First Amendment freedoms, even for minimal periods of

11   time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary

12   injunction.  *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

13   As discussed ante, application of the balancing test prescribed by the California Ninth

14   Circuit, Plaintiff's entitlement to the relief requested is clear. The Court should grant the temporary

15   restraining Order and Preliminary Injunction as requested herein.

16   ## 6. STATEMENT OF FACTS RE: ACTIONS BY CALTRANS

17   Attached to the Declaration of Jeffrey Schwilk as Exhibit "**B**" is a letter dated November 19,

18   2007 from Larry Wharton, District 11, Adopt-a-Highway Coordinator.

19   The letter welcomes the SAN DIEGO MINUTEMEN to the CALTRANS Adopt-a-Highway

20   Program.  Paragraph one, line two of the letter states:

21   The permit is a legal and binding document that contains important safety
     information, so please review it thoroughly.  (Emphasis added.)

22

23   After receiving the letter of November 19, 2007 welcoming the SAN DIEGO MINUTEMEN

     to the CALTRANS Adopt-a-Highway Program, Exhibit "**B**", an encroachment permit was issued,

24   a copy of which is attached to the declaration of Jeff Schwilk as Exhibit "**E**", authorizing and

25
     permitting the SAN DIEGO MINUTEMEN to have an Adopt-a-Highway sign at location 11-07-

26   NAH0586.  As it turns out, the two mile clean up location is bisected by the United Stated Border

27   Patrol checkpoint on Interstate 5.  It should be noted that the permit was presumably reviewed by

28

1    Defendant PEDRO ORSO-DELGADO, District Director..

2         Attached to the declaration of Jeff Schwilk as Exhibit "**F**" is a copy of the Adopt-a-Highway

3    Permit Special Provisions.  Paragraph two of page one of the Special Provisions states:

4         **Revocation/Cancellation:** This permit may be revoked by the department for non-
         compliance with permit provisions or for failure of the permitee, or their
5         representatives, to adhere to direction given by a department representative.  These
         provisions are subject to modification and abrogation at any time.  This permit may
6         be temporarily suspended due to construction or other state operations at, or within
         the vicinity of the site.
7
         Permitee may cancel their permit at any time without consequence from the
8         department.  Permitees using contractors are responsible for terminating those
         arrangements.
9

10        The permit issued to the SAN DIEGO MINUTEMEN (see Exhibit "**E**" attached to the

11   Declaration of Jeff Schwilk) is for a specific location – 11-07NAH0586, at the United States Border

12   Inspection station near San Onofre on Interstate 5.  The permit granted is <u>not</u> a general permit, but

13   a permit with respect to <u>a specific location</u>.

14        Plaintiff contends that the only way CALTRANS may properly cancel its permit for this

15   specific location, pursuant to CALTRANS own rules and regulations (paragraph two of Exhibit "**F**"

16   attached to the Declaration of Jeff Schwilk) is "for non-compliance of permit provisions or for

17   failure of the permitee, or their representatives, to adhere to direction given by a department

18   representative".

19        CALTRANS has reserved the right to modify or abrogate their provisions at any time.

20   However, Plaintiff has not been notified of any modification or abrogation of the provisions on

21   Exhibit "**F**" at paragraph two by the CALTRANS.  Plaintiff contends that the actions of

22   CALTRANS are in direct violation of its own rules and procedures as discussed above.

23        Paragraph 30 of Exhibit "**F**" (attached to the Declaration of Jeff Schwilk) sets forth the

24   duration of the permit granted to plaintiff SAN DIEGO MINUTEMEN.  Pursuant to that paragraph,

25   the permit is " . . . valid for five calendar years from the date of issuance."

26        Attached to the Declaration of Jeff Schwilk as Exhibit "**G**" is page four of the CALTRANS

27   Adopt-a-Highway "Brochure on Getting Started" located at the California Department of

28   Transportation web site at www.ca.gov/hq/maint/. adopt.

In Exhibit "**G**", in the left hand column under the heading "Cancelling Permits," the criteria or basis for cancelling permits is set forth by the CALTRANS as:

> Violation of any of the provisions of your permit could result in its cancellation. You, or CALTRANS, may cancel the permit any time you are <u>unable to meet the permit requirements</u>.

> CALTRANS may temporarily suspend permits for safety reasons, such as construction in your adopted area." (Emphasis added.)

Exhibit "**G**", the CALTRANS brochure on "Getting Started", contains similar language relating to the cancellation of permits as Exhibit "**F**" attached to the Declaration of Jeff Schwilk relating to the permit special provisions.

A permit, according to the CALTRANS rules and regulations, may only be cancelled if an adopter in the Adopt-a-Highway program violates:

1.    Any of the provisions of their permit; or

2.    Is unable to meet the permit's requirements.

CALTRANS rules and regulations do not provide for modification of the permit as to location; therefore, attempting to change the location is in effect cancellation of the site specific permit granted.

CALTRANS did not follow its own rules and regulations as set forth in Exhibits "**F**" and "**G**" attached to the declaration of Jeff Schwilk, Plaintiff is unaware of any modification or abrogation of any provisions of its Adopt-a-Highway permit's special provisions (Exhibit "**F**") and allowed its director, and others, <u>unfettered discretion</u> to act arbitrarily and capriciously on the "content" of the message contained on the SAN DIEGO MINUTEMEN Adopt-a-Highway sign. The only content on plaintiff's Adopt-a-Highway sign, Exhibit "**A**" are the words "SAN DIEGO MINUTEMEN".

CALTRANS objected to the "content" of the words "SAN DIEGO MINUTEMEN" and further, discriminated against the Plaintiff through "viewpoint discrimination" because the Defendants did not agree with the SAN DIEGO MINUTEMEN message.

Plaintiff contends that such actions are clearly in violation of its First Amendment Rights to Free Speech, Procedural Due Process and its Equal Protection Rights guaranteed under the United States Constitution.

## 7. REASONS GIVEN BY DEFENDANTS FOR THEIR ACTIONS

Exhibit "C" attached to the Declaration of Jeff Schwilk is a letter of January 28, 2008 to Jeffrey Schwilk of the SAN DIEGO MINUTEMEN by Defendant PEDRO ORSO-DELGADO, California Department of Transportation District Director.    In Mr. ORSO-DELGADO's January 28, 2008 letter, at paragraph one, Mr. DELGADO states:

> The location of your existing Adopt-a-Highway (AAH) Permit has raised questions regarding public safety due to the proximity of your assigned highway segment to the U. S. Border Patrol facility that is co-located with the California Highway Patrol (CHP) San Onofre Inspection Facility.  Your group has also indicated concerns regarding possible vandalism to the courtesy sign displaying your participation in the AAH program and the release of information relative to the days you will perform the required clean up.

Based only on the fact that plaintiff's permit "has raised questions regarding public safety due to the proximity of your assigned highway segment", Mr. ORSO-DELGADO came to the conclusion in paragraph two of his January 28, 2008 letter that Plaintiff's permit "poses a significant risk of disruption to the operation of the state highway as well as highway safety concerns for both the traveling public and participants in the AAH program".

No other facts, occurrences or events other than *"raised questions"* was set forth in Mr. ORSO-DELGADO's letter of January 28, 2008 upon which he based his conclusion to terminate Plaintiff's Adopt-a-Highway sign at its location near the U. S. Border Control facility, San Onofre, California.

The real reason why plaintiff's permit was revoked is set forth in Exhibit "I" attached to the declaration of Jeff Schwilk.  Exhibit "I" is an internet copy of an article written in the San Diego Union Tribune by columnist Logan Jenkins on January 31, 2008 – political pressure.

Inadmissible evidence may be considered in obtaining a temporary restraining order. Because of the urgency involved and limited time that temporary restraining orders remain in effect, declarations and evidence supporting the application need not conform to the standards for a summary judgment motion or to the Federal Rules of Evidence. *Flynt Distributing Co., Inc. vs. Harvey*, 734 Fed.2d 1389, 1394 (9th Cir. 1984).

It is up to the trial court to determine the weight to be given such evidence, taking into consideration the declarant's competency, personal knowledge and credibility.  See *Bracco vs.*

1   *Lackner*, 462 Fed.Supp 436 (1978).

2       Here, there is an article written by a very reputable columnist, Logan Jenkins of the San

3   Diego Union Tribune, who cites facts based upon his personal knowledge. Plaintiff submits that the

4   statements made in said article by Logan Jenkins should be given great weight.

5       The San Diego Union Tribune columnist Logan Jenkins painted a quite alarming and chilling

6   picture of what actually happened with respect to the revocation of the permit for plaintiff SAN

7   DIEGO MINUTEMEN when he stated in his article on January 31, 2008:

8       Last week three members of the Latino caucus – Assemblyman Joe Coto, D-San
        Jose; Senator Gil Cedillo, D-Los Angeles; and Assemblywoman Laurie Saldaña, D-
9       San Diego – met with Cal Trans Director Will Kempton, according to the spokesman
        in Saldaña's office.
10
        The Latino law makers reportedly stressed that public safety would be threatened if
11      the Minutemen picked up litter near the border check point."

12       After meeting with the three members of the California Legislature, Logan Jenkins in his

13   article of January 31, 2008 stated: "Kempton assured the Latino politicians that the sign would be

14   removed, according to Saldaña's spokesman." <u>Neither Defendants nor the quoted legislators have</u>

15   <u>publicly denied the contents of the news article</u>.

16       The real reason for the removal of Plaintiff's Adopt-a-Highway sign from its location near

17   the San Onofre U. S. Border Inspection Station was because of imagined or hypothetical safety

18   issues, and it was clearly a result of political pressure placed on CALTRANS Director, WILL

19   KEPTON by members of the California Legislature.

20       Such actions are unacceptable in our society. Decisions by CALTRANS are not to be based

21   upon political pressure or patronage, but are to be well reasoned and factually based.

22       In addition, the actions of the members of the California Legislature in attempting to remove

23   the plaintiff's Adopt-a-Highway sign were content based and resulted in viewpoint discrimination

24   by CALTRANS. Such arbitrary and capricious actions allowing the Director of CALTRANS

25   unfettered discretion to ignore his own procedures and guidelines because either he, members of the

26   California Legislature or other individuals have a different viewpoint than Plaintiffs, should not be

27   sanctioned by this Court.

28

## 8. PLAINTIFF'S CONTENTIONS AND ARGUMENTS

There is no rational basis between "questions being raised" and a determination that plaintiff's Adopt-a-Highway sign "poses a significant risk of disruption to the operation of the state highway as well as public safety concerns for both the traveling public and participants in the AAH program." The Defendants have not articulated one single incident or occurrence other than their own conjecture and imagination, upon which to base their decision to terminate plaintiff's Adopt-a-Highway permit.

Plaintiff's permit was a <u>site specific</u> permit, allowing Plaintiff to have its Adopt-a-Highway sign in a specific location. Further, Plaintiff's Adopt-a-Highway sign is subject to the rules and regulations promulgated and supposedly followed by CALTRANS.

Exhibit "**D**" attached to the Declaration of Jeff Schwilk, indicated on November 19, 2007 that the permit "is a legal and binding document."

CALTRANS ignored and did not follow its own rules and regulations in cancelling Plaintiff's permit number 11-07NAH0586.

CALTRANS did not afford Plaintiff procedural due process. The action of CALTRANS in terminating Plaintiff's permit, in addition to being arbitrary and capricious, did not allow Plaintiff its due process rights to be heard and to present evidence and/or testimony to refute the "questions raised" or the speculation of CALTRANS.

Further, there appears to be no procedure in place by CALTRANS to allow an Adopt-a-Highway participant such as Plaintiff, its procedural due process rights to a hearing or even to present evidence or documentation to state its side of any contention. By way of example only, Exhibit "**F**" attached to the Declaration of Jeff Schwilk, at paragraph two indicates that the permit may be revoked if an individual permitee "fails to adhere to direction given by a department representative."

An occasion may arise where CALTRANS may revoke a permit based upon incorrect information that a permitee did not follow the directions of a Department of Transportation representative. There is no known means available under the CALTRANS's rules and regulations for a permitee to challenge the revocation of a permit or present evidence that they did not refuse to

1    "adhere to directions given by a department representative."

2    CALTRANS failed to provide Plaintiff with the right to a hearing or having a hearing

3    procedure. Plaintiff's procedural due process rights have been violated.

4    **A.    Plaintiff's Rights to Freedom of Speech and Expression, as Guaranteed by the First**

5    **Amendment, and its Rights to Equal Protection of the Laws and Procedural Due**

6    **Process Have Been Violated by CALTRANS.**

7    In *Terminiello v. City of Chicago*, 337 U.S.1, 69 S.Ct. 894, 93 L.Ed. 1131, 93 L.Ed. 1131

8    (1949), the United States Supreme Court held unconstitutional an ordinance which as construed,

9    punished an utterance as a breach of peace "if it disturbs the public to anger, invites dispute, brings

10    about a condition of unrest, or creates a disturbance." *Id..*, at 337 U.S. at 3.

11    The United States Supreme Court set aside a conviction based upon such a statute, saying:

12    The validity of civil and political institutions in our society depends on free
    discussion. As Chief Justice Hughes wrote in De Jonge vs. State of Oregon, 299
13    U.S. 353, 365; 57 S.Ct. 255, 260; 81 L.Ed. 278, it is only through free debate and free
    exchange of ideas that government remains responsive to the will of the people and
14    peaceful change is affected. The right to speak freely and promote diversity of ideas
    and programs is therefore one of the chief distinctions that sets us apart from
15    totalitarian regimes.

16    Accordingly, a function of free speech under our system of government is to invite
    dispute. It may indeed best serve its high purpose when it induces a condition of
17    unrest, creates dissatisfaction with conditions as they are, or even stirs people to
    anger. Speech is often provocative and challenging. It may strike at prejudices and
18    preconceptions and have profound unsettling effects as it presses for acceptance of
    an idea.
19    *Id.,*377 U.S. at 4.

20    SAN DIEGO MINUTEMEN is being penalized for an expression of its name. CALTRANS

21    does not want to have the name "SAN DIEGO MINUTEMEN" close to the U. S. Border Inspection

22    Station on Interstate 5 at San Onofre because of the view point of the SAN DIEGO MINUTEMEN.

23    While allegedly being concerned that an Adopt-a-Highway sign containing Plaintiff's name

24    would be disruptive at a location near the U. S. Border Inspection Station near San Onofre,

25    CALTRANS has offered to move Plaintiff's Adopt-a-Highway sign "behind a barn – a less visual

26    location", by moving it to Highway 52 in Santee, California.

27    Plaintiff has a right to have its Adopt-a-Highway sign and its name and any connotation its

28    name means, in the full public eye and not hidden from view so as not to offend the sensibilities of

1   drivers who pass by plaintiff's sign on Interstate 5.

2        CALTRANS will not be able to articulate a rational basis for its position that motorists on

3   Highway 52 will be less motivated to civil disobedience than those who drive on Interstate 5.

4   CALTRANS is attempting, arbitrarily and capriciously to hide plaintiff's sign from as many viewers

5   as possible.

6   **B.   Defendants Bear the Burden of Proving That Their Actions Will Pass Constitutional**

7        **Muster.**

8        Where the government restricts speech, the government bears the burden of proving the

9   constitutionality of its actions. *United States, et al. v. Playboy Entertainment Group, Inc.*, 529 U.S.

10   803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

11

12        In *Philadelphia Newspapers, Inc. v. HDPPS*, 475 U.S. 767, 106 S.Ct. 1558,89 L.Ed.2d 783

13   (1986) the court stated:

14        In the context of governmental restriction, it has long been established that the
        government cannot limit speech protected by the First Amendment without bearing

15        the burden of showing that its restriction is justified.
   *Id.*, at 777 (citing *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 540,

16   100 S.Ct. 2326, 2334, 65 L.Ed.2d 319 (1980)).

17        Once Plaintiff has established that its Constitutional and First Amendment rights have been

18   violated, the burden then shifts to the Defendants, the government, to justify their actions.

19   **C.   CALTRANS' Actions Denying Plaintiff an Adopt-a-highway Sign on Interstate 5 near**

20        **San Onofre, California Is Constitutionally Impermissible Viewpoint Discrimination.**

21        The decision to take down Plaintiff's Adopt-a-Highway sign on Interstate 5 near San Onofre,

22   California is unconstitutional because it is discrimination on the basis of the SAN DIEGO

23   MINUTEMEN's viewpoints. See *Rosenberger v. Rector and Visitors of the University of Virginia*,

24   515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

25        The constitutional provision against viewpoint discrimination addresses the viewpoint of the

26   speakers and not whether the state officials disapprove of the speaker's viewpoint. The relevant

27   inquiry is whether Plaintiff was excluded from having its Adopt-a-Highway sign at its permitted site

28   because of Plaintiff's viewpoint, irrespective of whether CALTRANS or its employees and agents

1  opposed that viewpoint. *Good News/Good Sports Club vs. School Dist. of City of Ladue*, 28 F.3d

2  1504, 1506 (1994).

3  "If there is a bedrock principal underlying the First Amendment, it is that the government

4  may not prohibit the expression of an idea simply because society finds the idea itself offensive or

5  disagreeable." *Texas vs. Johnson*, 491 U.S. 397, 415; 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

6  It cannot be repeated often enough that "above all else, the First Amendment means that

7  government has no power to restrict expression because of its message, its ideas, its subject matter

8  or content."*Police Dept. of City of Chicago vs. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286,33 L.Ed.2d

9  212 (1972).

10  The court in *Police Dept. of Chicago*, *supra*, went on to state:

11  Necessarily, then, under the equal protection clause, not to mention the First
Amendment itself, the government may not grant the use of a forum to people whose

12  views it finds acceptable, but deny use to those wishing to express less favorable or
more controversial views. And it may not select which issues are worth discussing

13  or debating in public facilities. There is an equality of status in the field of ideas, and
government must afford all points of view and equal opportunity to be heard. Once

14  a forum is opened up to assembly or speaking by some groups, government may not
prohibit others from assembling or speaking on the basis of what they intend to say.

15  Selective exclusions from a public forum may not be based on content alone, and
may not be justified by reference to content alone.

16  *Id.*, 408 U.S. at 96.

17  There is no question that the Defendants have engaged in viewpoint discrimination. As set

18  forth in the article by Logan Jenkins, Exhibit "**I**" attached to the declaration of Jeff Schwilk, it

19  appears that three members of the California Legislature urged and/or politically pushed Defendant

20  WILL KEMPTON, CALTRANS Director, to move Plaintiff's Adopt-a-Highway sign.

21  Plaintiff is just as entitled as any organization or person to have its Adopt-a-Highway sign

22  at the specific site the permit allows. Plaintiff should not have its highway sign moved because its

23  name, "SAN DIEGO MINUTEMEN", may connote unpleasant ideas in the minds of some.

24  No matter what Plaintiff's viewpoint may be, Plaintiff is entitled to have its ideas and points

25  of view equally heard and observed as well as any other person's ideas or points of view.

26  The burden is on the Defendants who took down Plaintiff's message – a message merely

27  setting forth Plaintiff's name, SAN DIEGO MINUTEMEN – – to prove that their actions were not

28  based on viewpoint discrimination. Plaintiff requests that this Court grant a temporary restraining

1   order pending its hearing on Plaintiff's request for a preliminary injunction so as to keep the status

2   quo while the Defendants attempt to meet their burden of proof.

3   **D.   The Mere Fact That Plaintiff's Adopt-a-highway Permit Has "Raised Questions**

4   **Regarding Public Safety", Does Not Pass Constitutional Muster.**

5   In Exhibit "**C**" attached to the declaration of Jeff Schwilk, CALTRANS indicated that:

6   The location of your existing Adopt-a-Highway (AAH) permit has raised questions
    regarding public safety due to the proximity of your signed highway segment to the
7   U. S. Border Patrol facility that is co-located with the California Highway Patrol
    (CHP) San Onofre Inspection Facility.

8

9   The mere possibility of violent reaction to free speech does not allow the curtailment of free

10  speech or the hiding of free speech "behind the barn".

11  In *Lewis vs. Wilson, supra,* the court in discussing the State of Missouri's attempt to ban a

12  license plate with read "ARYAN-1" stated in response to the State of Missouri's contention that such

13  a sign could promote violence:

14  Without evidence that Ms. Lewis has intentionally sought to invoke a violent reaction
    or has directed at a particular individual "personally abusive epitaphs which . . . are
15  . . . inherently likely to provoke violent reaction (i.e., "fighting words"). Cohen v.
    California (1971) 403 US 15, 20, 91 S.Ct. 1780, 29 C.Ed 2d 284 The mere possibility
16  of a violent reaction to Ms. Lewis's speech is simply not a constitutional basis on
    which to restrict her right to speak. (Citation.) The argument amounts to little more
17  than a self-defeating proposition that to avoid physical censorship of one who has not
    sought to provoke such a response by a hypothetical coterie of the violent and
18  lawlessness, the state may more appropriately effectuate that censorship themselves
    (403 U.S. at 23, 91 S.Ct. 780), even if we assume that the D.O.R. made no judgment
19  about the viewpoint of Ms. Lewis's speech, therefore, we reject its attempt to censor
    Ms. Lewis's speech because of the potential responses of its recipients. The First
20  Amendment knows no **Heckler's Veto**. (Emphasis added.)
    *Id.*, 253 F3d at 1081-82.

21

22  If certain individuals object to Plaintiff's position, that is not a proper basis for restricting

23  Plaintiff's right to convey its point of view, nor is it permissible to take down Plaintiff's sign at the

24  particular place at which it was erected (near San Onofre, California on Interstate 5) and to move it

25  to another, less visible location.

26  In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 760, 29 L.Ed.2d 284 (1971) the United States

27  Supreme Court considered a California statute which made the words "f_ _ _ the draft" a criminal

28  offense. The appellant walked through a courthouse corridor wearing a jacket bearing the words "f_

1    _ _ the draft" in a place where women and children were present.  In discussing the potential for

2    violence which such a epitaph could create, the United States Supreme Court, stated:

> Against this background, the issue flushed by this case stands out in bold relief.  It
> is whether California can exercise, as 'offensive conduct', one particular scurrilous
> epitaph from the public discourse either upon the theory of the court below that its
> use is inherently likely to cause violent reaction (Emphasis added.) or upon a more
> general assertion that the state's, acting as guardians of public morality, may properly
> remove this offensive word from the public vocabulary.
>
> The rationale of the California court is plainly untenable.  At most it reflects an
> undifferentiated fear or apprehension of disturbance (which) is not enough to
> overcome the right to freedom of expression.  (Citation.)  We have been shown no
> evidence that substantial numbers of citizens are standing ready to strike out
> physically at whoever may assault their sensibilities with execrations like that found
> uttered by Cohen.  There may be such persons about with such lawlessness and
> violent proclivities, but that is an insufficient base upon which to erect, consistently
> with constitutional values, a governmental power to force persons who wish to
> ventilate their dissent views into avoiding particular forms of expression.  The
> argument amounts to little more than the self-defeating proposition that to avoid
> physical censorship of one who has not sought to provoke such a response by a
> hypothetical coterie of the violent and lawlessness, the states may more appropriate
> effectuate that censorship themselves.  (Emphasis added.)

13   *Id.*, 403 U.S. at 23.

14       Here, CALTRANS is attempting to use, as an excuse to overcome their viewpoint

15   discrimination and content discrimination (discussed hereinafter) the mere fact that a sign bearing

16   the words "SAN DIEGO MINUTEMEN" "raised questions" and should be removed and placed

17   elsewhere.

18       The United States Supreme Court, in *Tinker v. Des Moines Independent Community School*

19   *District* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), discussed the prohibiting of speech or

20   expression because of "undifferentiated fear or apprehension of disturbance" when it stated, in

21   reversing a judgment by a district court which limited free speech because of a fear of disturbances:

> The district court concluded that the action of the school authorities was reasonable
> because it was based upon their fear of disturbance for the wearing of the arm bands.
> But, in our system, undifferentiated fear or apprehension of disturbance is not enough
> to overcome the right of freedom of expression.  Any departure from absolute
> regimentation may cause trouble.  Any variation from the majority's opinion may
> inspire fear.  Any word spoken, in class, in the lunch room, or on the campus, that
> deviates from the views of another person may start an argument or cause a
> disturbance.  But our constitution says we must take the risk (Citation.); and our
> history says that it is this sort of hazardous freedom – this kind of openness that is the
> basis of our national strength and of the independence and vigor of Americans who
> grow up and live in this relatively permissive, often disputatious, society.

28       In order for the state, in the person of school officials, to justify prohibition of a

particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. (Emphasis added.) *Id.*, 393 U.S. at 508-509.

CALTRANS' letter, Exhibit "**C**", also mentions that directly adjacent to plaintiff's specific site, in addition to the United States Immigration Checkpoint is the California Highway Patrol which is "co-located" with the United States Border Patrol. What safer area to place Plaintiff's Adopt-a-Highway sign, than next to a California Highway Patrol office and a United States Border Patrol office?

Are the defendants suggesting that those individuals who pass by Plaintiff's Adopt-a-Highway sign in Santee, California would be less sensitive to the *speech* "SAN DIEGO MINUTEMEN"? Or that there is some physical, emotional or psychological difference between those individuals on Highway 52 in Santee, California and those individuals near the U. S. Border Inspection Station on Interstate 5 near San Onofre?

What the Defendants are attempting to do is use, as a ruse, their hypothetical fear of "raised questions" to hide their viewpoint and content dislike and discrimination against Plaintiff. Either way, Plaintiff submits that Defendants' actions do not and should not pass constitutional muster.

**E.    CALTRANS and the Individual Defendants Engaged in Content Based on Discrimination When it Took down Plaintiff's Adopt-a-highway Sign in Violation of Plaintiff's First Amendment and Equal Protection Rights.**

"Regulations that permit the government to discriminate on the basis of content of the message cannot be tolerated under the First Amendment."*Regan v. Time, Inc.,* 468 U.S. 641, 649, 104 S.Ct. 3262, 82 L.Ed.2d 487.

Government regulation must not be "an effort to suppress expression because public officials oppose the speaker's views" *Perry Educ. Association vs. Perry Local Educators*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

In addition to public officials being opposed to a speaker's viewpoint, speech may not be prohibited because of a listener's potential reaction *Forsyth County, GA vs. Nationalist Monument*, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

*Forsyth, supra* further stated: "Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob." *Id.*, 505 U.S. at 134-135.

The United States Supreme Court has indicated that in public debate, our citizens must tolerate insulting, even outrageous speech, in order to provide adequate breathing space to freedoms protected by the First Amendment. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988).

A "dignity standard like the 'outrageousness' standard that the Supreme Court rejected in *Hustler, supra* is so inherently subjective that it would be inconsistent with the long standing refusal to punish speech because the speech in question may have an adverse emotional impact on the audience". *Id.*, 485 U.S. at 55.

Here, the Defendants have unconstitutionally prevented Plaintiff from having its Adopt-a-Highway sign on Interstate 5 near San Onofre, California, merely because of the "content" of plaintiff's message.

The CALTRANS officials have concluded that the words "SAN DIEGO MINUTEMEN" somehow will conjure up such emotional and/or potentially violent and unsafe actions on Interstate 5, it should be taken down and moved to Highway 52 in Santee. Presumably on Highway 52 such violent, unsafe reactions presumably are allowable.

The CALTRANS reasoning in this regard is irrational. What the Defendants in the instant case are attempting to do is discriminate against Plaintiff based upon the content of its message: SAN DIEGO MINUTEMEN.

Contrary to suggestions made to CALTRANS, SAN DIEGO MINUTEMEN support the rule of law. As set forth in the declaration of Jeff Schwilk at paragraph 3, the mission of the SAN DIEGO MINUTEMEN is to uphold the laws of The United States of America. In this respect, the SAN DIEGO MINUTEMEN Mission Statement, contained at paragraph 3 of Mr. Schwilk's declaration states:

> To demand maximum border security and immigration enforcement both locally and at the national level. We oppose illegal immigration in all parts of San Diego County with our activism. We assist and support the U.S. Border Patrol in securing the U.S.-Mexican border from terrorists, gang members, criminals, drugs, and illegal aliens entering the United States. We also assist ICE (Immigration & Customs Enforcement) and local law enforcement in exposing law breaking employers and

helping to return illegal aliens to their country of legal residence. We act on behalf of and in accord with the United States Constitution and the Bill of Rights.

There are individuals in our country, possibly including members of the California Legislature, who do not agree with the Mission Statement of the SAN DIEGO MINUTEMEN. They have a different point of view and they are attempting to stifle the expression and point of view of Plaintiff. In our society, this cannot be tolerated or allowed and Plaintiff's only avenue of redress is to come to this court and ask for injunctive relief as Plaintiff is now doing.

As Plaintiff has set forth herein, it appears that CALTRANS is under political pressure from certain California Legislators who have their own agendas, to take down and/or move Plaintiff's sign. Plaintiff submits that political pressure based on the contents of speech or expression, should not be tolerated in our society.

**F.    The First Amendment Prohibits CALTRANS from Exercising Unbridled Discretion to Restrict Plaintiff's Speech and Discretion.**

The CALTRANS regulations set forth in the Declaration Jeff Schwilk at Exhibits "**F**" and "**G**", allow the Director of CALTRANS to have unfettered discretion as to what signs he will or will now allow and what signs he will remove; however, there are no regulations regarding what signs he may move once a site specific permit is issued. Further, as will be discussed later, there are no procedures within the CALTRANS regulations to afford Plaintiff, and others similarly situated, a notice and a hearing before any action is taken.

"A law or policy permitting communication in a certain manner for some but not others raises a spector of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is <u>left to the unbridled discretion</u> of a government official. As demonstrated above, we have often and uniformly held that such statutes or policies impose censorship on the public or the press, and hence are unconstitutional, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based on the content of the speech or viewpoint of the speaker."*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-764, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1965). (Emphasis added.)

1    As stated in *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965):

2    It is clearly unconstitutional to enable a public official to determine which
     expressions of view will be permitted and which will not or to engage in invidious
3    discrimination among persons or groups either by use of a statute providing a system
     of broad discretionary licensing power or, as in this case, the equivalent of such a
4    system by selective enforcement of an extremely broad prohibitory statute.
     *Id.*, 379 U.S. at 557-558.

5

6    A restriction on speech is constitutional <u>only</u> if certain principals are adhered to. Among

7    these principals is the requirement that the restriction be specific enough that it does not delegate

8    unbridled discretion to the government officials entrusted to enforce the regulation. *See City of*

9    *Lakewood , supra.*

10    In cases such as the instant one, wherein an official like CALTRANS has unfettered

11    discretion to take down the Adopt-a-Highway sign or move such a highway sign, both in direct

12    violation of its own regulations and without specific guidelines, the courts have generally held such

13    action to violate the First Amendment. "It is clearly unconstitutional to enable a public official to

14    determine which expressions of view will be permitted and which will not . . . by use of a statute

15    providing a system of broad discretionary licensing power. . . ." *Cox, supra*, 379 U.S. at 557.

16    In reviewing the regulations of the CALTRANS (Exhibits "**F**" and "**G**" attached to the

17    declaration of Jeff Schwilk, there are no boundaries, regulations, guidelines or rules for CALTRANS

18    or its directors or officials, to determine when to remove a sign from a specific location or on what

19    basis an Adopt-a-Highway sign should or must be relocated.

20    Such action, plaintiff contends, is completely within the unbridled discretion of CALTRANS

21    and its officers and clearly does not pass constitutional muster. The actions of CALTRANS in acting

22    at their mere whim based on content or viewpoint discrimination, are arbitrary and capricious.

23    **G.    CALTRANS Has Violated its Own Rules and Procedures in Taking down Plaintiff's**

24    **Sign near the U.S. Border Station on Interstate 5.**

25    In reviewing the permit issued by CALTRANS, said permit clearly shows that it is issued for

26    a <u>site specific</u> location. The rules and regulations of CALTRANS only discuss the revocation of

27    such a permit, "for failure of the permitee, or their representative, to adhere to direction given by the

28    department representative."

1    There is no showing and there will be no showing that Plaintiff or its representatives refused
2    to adhere to any direction given by CALTRANS.
3    Defendants may argue that they have an absolute right to modify or abrogate their
4    regulations. While this is contained in Defendants' regulations, there is no evidence or showing that
5    any action was taken by CALTRANS at any time to change, modify or abrogate its regulations.
6    CALTRANS took the instant action without changing or modifying its guidelines. Such action is
7    in direct violation of CALTRANS guidelines.
8    Further, by CALTRANS not following its guidelines, it acted arbitrarily and capriciously
9    without consideration for its own rules and regulations. Such action was taken by CALTRANS, as
10   Plaintiff contends, because of content and/or viewpoint discrimination by CALTRANS

11   **H.    CALTRANS Denied Plaintiff its Procedural Due Process**

12   The actions by Defendants, and each of them, in removing Plaintiff's Adopt-a-Highway sign
13   under the pretext that "questions were raised" and not allowing Plaintiff the opportunity for a hearing
14   and/or to be heard and present evidence to refute the allegations in the January 28, 2008 letter,
15   Exhibit "**C**" attached to the declaration of Jeff Schwilk, is a violation of Plaintiff's procedural due
16   process rights.
17   Plaintiff was never given a hearing nor does Plaintiff believe there are any procedures
18   through which Plaintiff could have obtained a fair hearing to present evidence to rebut the allegations
19   contained in the said January 28, 2008 letter.
20   Plaintiff was never notified of any review procedures nor was Plaintiff ever notified of any
21   right(s) it had to contest the removal of its sign from the location on Interstate 5 near San Onofre,
22   California. Plaintiff had previously entered into a "legal and binding document" with CALTRANS
23   (see Exhibit "**D**" attached to the declaration of Jeff Schwilk) and believed pursuant to CALTRANS'
24   rules and regulations (Exhibits "**F**" and "**G**" to the declaration of Jeff Schwilk) that its Adopt-a-
25   Highway rights could only be terminated if it did not follow the instructions of CALTRANS' officers
26   or if CALTRANS were to modify its rules. Plaintiff has always followed CALTRANS' rules and
27   Plaintiff is informed and believe that CALTRANS never, at any time, modified its rules to allow
28   unfettered discretion by its officers or directors.

1    It is universally accepted that parties must have reasonable notice and an opportunity for

2  hearing before they lose acquired rights. *Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed.

3  97 (1908).

4    Procedural due process does not require a trial before a court and Plaintiff is not requesting

5  a trial before a court. Plaintiff is only arguing that it was never allowed a fair hearing before anyone,

6  including any administrative officer, an independent board, or even a CALTRANS board.

7    Proceedings which wholly deny a hearing are generally considered lacking in due process,

8  when an individual's rights are taken away. *See Morgan v. United States*, 298 U.S. 468, 56 S. Ct.

9  908, 80 L.Ed. 1288 (1936); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576

10  (1953).

11    It has been held that a statute or regulation itself must provide for a hearing and that the

12  absence of such right contained in the statutes or regulations, is not cured by a hearing granted as a

13  matter of discretion. *See Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 59 L.Ed.

14  1027 (1915).

15    In *Coe, supra*, the court discussed the failure of a statute to provide in the statute itself a

16  provision for a hearing when the court stated:

17    Nor can extra-official or casual notice, or hearing granted as a matter of favor or
      discretion, be deemed a substantial substitute for the due process of law that the
18    constitution requires. In Stewart v. Palmer, 74 N.I. 183,188 30 Am. Rep. 289, which
      involved the validity of a statute providing for assessing the expense of a local
19    improvement upon the lands benefitted, without notice to the owner, the court said:
      'It is not enough that the owners may by chance have notice, or that they may as a
20    matter of favor have a hearing. The law must require notice to them, and give them
      a right to a hearing and the opportunity to be heard. The soundness of this doctrine
21    has repeatedly been recognized by this court'.
   *Id.*, 237 U.S. at page U.S. 424-425.

22

23    Plaintiff knows of no rights for a hearing nor has any hearing ever been offered or made

24  available to Plaintiff regarding the loss of its rights to have an Adopt-a-Highway sign on Interstate

25  5 at San Onofre, California.

26    Plaintiff submits that Defendants herein acted arbitrarily, capriciously and with unfettered

27  discretion to effectuate their content and viewpoint discrimination in an attempt to eliminate

28  Plaintiff's name from the public's view. In this regard, Plaintiff submits that is procedural due

1  process rights were violated by the Defendants herein.

2  **10. THERE IS A HIGH PROBABILITY OF SUCCESS OF PLAINTIFF'S COMPLAINT**

3  The Ninth Circuit Court of Appeal has held that the minimum required showing of success

4  is that there is a "fair chance of success on the merits". *Johnson v. California State Bd. of*

5  *Accountancy*, 72 Fed.3d 1427, 1429 (9th Cir. 1995).

6  The primary facts are not in dispute in the instant case. Plaintiff did apply for an Adopt-a-

7  Highway sign at a specific location and was granted that right. It appears from Exhibit "I" attached

8  to the declaration of Jeff Schwilk, that three California legislators put unacceptable political pressure

9  on Defendant WILL KEMPTON, CALTRANS Director, to have Plaintiff's Adopt-a-Highway sign

10  on Interstate 5 near San Onofre taken down.

11  The Defendants, on January 28, 2008, sent a letter to Plaintiff indicating that they were taking

12  down Plaintiff's sign because "it raised questions". Plaintiff believes it has now submitted evidence

13  to show there is a very good likelihood the Plaintiff will prevail because the actions of the

14  Defendants were:

15  1.    A violation of Plaintiff's First Amendment rights to free speech and Equal Protection under

16    the law;

17  2.    The actions of the Defendants constitute impermissible viewpoint discrimination;

18  3.    The actions of the Defendants constitute impermissible content discrimination;

19  4.    The actions of the Defendants were arbitrary, capricious and the result of unfettered

20    discretion by the director of CALTRANS and his agents;

21  5.    CALTRANS did not follow its own rules and procedures;

22  6.    The actions of CALTRANS violated Plaintiff's procedural due process rights.

23  Plaintiff submits from all of the above that it has more than a fair chance of success on the

24  merits and in fact, there is a probability of success of Plaintiff's claims on the merits.

25  **11. CONCLUSION**

26  Plaintiff requests this Court issue a Temporary Restraining Order restraining the Defendants

27  herein from assigning its sign-specific location on Interstate 5 near the United States Border

28  Inspection Station near San Onofre, California to any other individual or entity pending a resolution

1    of Plaintiff's request for preliminary injunction.

2         Plaintiff further requests that this Court, at the preliminary injunction hearing:

3    1.    Continue its order requiring Defendants not to assign the specific space previously assigned

4         to Plaintiff for its Adopt-a-Highway sign on Interstate 5 near San Onofre, California;

5    2.    Require that Defendants and each of them replace Plaintiff's signs in the same place and

6         manner as they were prior to being taken down; and that the orders stay in full force and

7         effect until a trial on this matter can be heard on the merits.

8    DATED: February 4, 2008

9

10

11

12    LOWELL ROBERT FUSELIER
      **KALOOGIAN & FUSELIER, LLP**
13    Attorneys for Plaintiff, SAN DIEGO
      MINUTEMEN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28