1    Howard Kaloogian, State Bar No. 118954
     Lowell Robert Fuselier, State Bar No. 140701
2    David Hayek State Bar No. 144116
     Kaloogian & Fuselier LLP
3    2382 Faraday Avenue, Suite 130
     Carlsbad, California 92008
4    Tel. 760-522-1802
     Fax 760-431-1116
5
     **Attorneys for Plaintiffs**
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **Southern District of California**

10

11
     SAN DIEGO MINUTEMEN, An              )    Case Number: 08CV0210 WQH (RBB)
12   Unincorporated Association,          )
                                          )    PLAINTIFF'S MEMORANDUM OF
13                        Plaintiff,      )    POINTS AND AUTHORITIES IN
         vs.                              )    SUPPORT OF MOTION FOR
14                                        )    PRELIMINARY INJUNCTION
     CALIFORNIA BUSINESS,                 )
15   TRANSPORTATION AND HOUSING           )
     AGENCY'S DEPARTMENT OF               )
16   TRANSPORTATION; DALE BONNER in       )
     his Official Capacity as Agency Director, )
17   Business, Transportation and Housing )
     Agency; WILL KEMPTON in his Official )
18   Capacity as CalTrans Director; PEDRO )
     ORSO-DELGADO in his Official Capacity )
19   as Caltrans District Director and DOES 1 )
     through 50,                          )
20                                        )
                          Defendants.     )
21                                        )

22

23

24

25

26

27

28

1

## 1. **INTRODUCTION**

2       Plaintiff, SAN DIEGO MINUTEMEN (an unincorporated association), through its area

3   representative, Jeff Schwilk, brings this action to address the violation of its rights of free speech,

4   procedural due process, and equal protection under the 1st and 14th Amendments to the United States

5   Constitution.

6       Defendants DALE BONNER, WILL KEMPTON, and PEDRO ORSO-DELGADO are sued

7   in their official capacities as the agency secretary, director, and district director of the California

8   Business, Transportation and Housing Agency's Department of Transportation. Defendants are

9   collectively referred to as CALTRANS.

10      The SAN DIEGO MINUTEMEN applied for and obtained a permit to Adopt-A-Highway

11  from CALTRANS. CALTRANS assigned a portion of Interstate 5 adjacent to the San Onofre

12  Immigration Check Point to the SAN DIEGO MINUTEMEN, and erected an Adopt-A-Highway sign

13  at that location bearing the name "SAN DIEGO MINUTEMEN."

14      Individuals and special interest groups opposing the political message of the SAN DIEGO

15  MINUTEMEN complained to CALTRANS about the sign and its location. As a result, CALTRANS

16  removed the sign.

17      This petition requests the Court immediately restrain CALTRANS from assigning the SAN

18  DIEGO MINUTEMEN sign location to any other person or entity until such time as this Court can

19  consider a request for a preliminary injunction to determined if CALTRANS actions in removing

20  the SAN DIEGO MINUTEMEN sign was a probable constitutional violation of the SAN DIEGO

21  MINUTEMEN's right of free speech, procedural due process, and equal protection.

22

23

## 2. **BACKGROUND SUMMARY**

24      The SAN DIEGO MINUTEMEN is an unincorporated association whose members

25  advocate secure boarders, American sovereignty, and the rule of law. They are in essence a

26  neighborhood watch group who report criminal activity in San Diego County to law enforcement.

27      The name "SAN DIEGO MINUTEMEN" *speaks.* The name "SAN DIEGO MINUTEMEN"

28  speaks, by representation, the principals, beliefs, and values of an association of people with a

1    particular political view regarding illegal immigration. [T]aking part in the Adopt-A-Highway
2    program, and receiving the attendant recognition on the signs, is "sufficiently imbued with elements
3    of communication" to constitute a form of private expressive conduct entitled to first amendment
4    protection. . . Although the signs are state owned, an adopter speaks through the signs by choosing
5    to undertake the program's obligations in exchange for the signs' announcement to the community
6    that it is a highway adopter. Rob v Hungebeeler, 370 F.3d 735, 743–745 (2004).

7        Proponents of an opposing political view have exercised a "heckler's veto" in opposition to
8    the content and view point of the SAN DIEGO MINUTEMEN sign with sufficient influence to
9    persuade CALTRANS to silence the Minute Men by removing their name from public view at the
10   San Onofre Immigration Check Point.

11       The outcry was twofold: First, the content and view point of the SAN DIEGO MINUTEMEN
12   sign was opposed, and Second, the location of the sign at the San Onofre Immigration Checkpoint
13   was politically incorrect in the opinion of the hecklers.  CALTRANS attempting to overcome the
14   apparent politically incorrect act of giving the SAN DIEGO MINUTEMEN the stretch of highway
15   at the immigration check point bowed to political pressure from special interest groups and
16   politicians, ordering the sign be taken down.  Every argument raised by CALTRANS, and several
17   more, to deny the SAN DIEGO MINUTEMEN's right to its sign were addressed and summarily
18   disposed of in Lewis v. Wilson, 253 F.3d 1077 (8th Cir. 2001).

19       CALTRANS' "concern" for public safety based on the possibility that some members of the
20   public may react violently to the SAN DIEGO MINUTEMEN's sigh has also been previously argued
21   unsuccessfully by state operated Adopt-A-Highway programs: The State may not censor AAH
22   applicants' speech because of the potential responses of its recipients. "The first amendment knows
23   no heckler's veto," and the State's desire to exclude controversial organizations in order to prevent
24   "road rage" or public backlash on the highways against the adopters' unpopular beliefs is simply
25   not a legitimate governmental interest that would support the enactment of speech-abridging
26   regulations. Rob, supra, 370 F.3d at 743.

27       CALTRANS is to be commended for its fair and equal administration of the Adopt-A-
28   Highway Program in initially issuing the SAN DIEGO MINUTEMEN's sign permit.  In keeping

1   with the mandate of equal protection and neutral administration of the laws, the CALTRANS

2   administration did the constitutionally correct thing by randomly assigning the location to the SAN

3   DIEGO MINUTEMEN; thereby, acting in a ***content neutral*** manner. The assignment was obviously

4   and appropriately without regard to the speech content of the sign. To say otherwise would be to say

5   CALTRANS administration intentionally assigned the location for the purpose of antagonizing some

6   of the citizenry – an absurd proposition.    SAN DIEGO MINUTEMEN choose to believe

7   CALTRANS' process for approving permits and assignment of sign locations has historically been

8   ***content neutral***; however, the named Defendants bowed to open boarder advocates, and they have

9   disregarded the constitutional rights of the SAN DIEGO MINUTEMEN in removing the sign.

10      People of influence, to include *three members of the California State Legislature –*

11  *Assemblyman Joe Coto, D–San Jose; Senator Gil Cedillo, D–Los Angeles; and Assemblywoman*

12  *Lori Saldana, D–San Diego,* confronted the CALTRANS director, Defendant KEMPTON. These

13  legislators who oppose the SAN DIEGO MINUTEMEN's message wanted the sign removed.

14  Defendant KEMPTON, bowing to political pressure and in total disregard for the constitutional

15  rights of the SAN DIEGO MINUTEMEN, ordered the sign taken down.

16      CALTRANS suggested that an alternate location may be offered to the SAN DIEGO

17  MINUTEMEN; however, CALTRANS's removal of the sign before a new location was determined

18  demonstrates that the primary objective was the removal of the SAN DIEGO MINUTEMEN

19  message from public view at the immigration check point.

20      CALTRANS attempted to minimize its actions by offering to install the SAN DIEGO

21  MINUTEMEN sign in a different location sometime in the future. CALTRANS is in effect saying,

22  "We will permit you to speak, but we are going to select the location from which you can speak

23  because we believe it would be more appropriate for your message in that location." This position

24  by CALTRANS forecloses any possible argument that its action is not based on the sign's

25  speech–content.

26      CALTRANS attempts to cloak its actions with the appearance of some legitimate objective

27  by claiming it is motivated by public safety; however, as will be demonstrated below, that position

28  is nothing more than an after-thought justification for an illegal and improper restraint on free speech

1    and denial of equal protection.

2    To err is human.  CALTRANS probably did not intend to violate the SAN DIEGO

3    MINUTEMEN'S constitutional rights in taking the action it did – nevertheless, a constitutional

4    violation did occur. CALTRANS should concede that an error was made, and then do the right thing

5    by replacing the sign.  Then the SAN DIEGO MINUTEMEN will dismiss this action.  The SAN

6    DIEGO MINUTEMEN do not want anyone fired or disciplined.  They just want their right to free

7    speech and equal protection restored.

8

9    ### 3  RELIEF REQUESTED

10    Plaintiff, SAN DIEGO MINUTEMEN, seeks a preliminary, mandatory  injunction which

11    returns the parties to the *status quo ante litem* by requiring Defendants to restore the encroachment

12    permit No. 11-07NAH0586 granted to Plaintiff for Location ND 5: SD66.3-SD68.3 (freeway

13    section) and re-erect the Adopt-a-Highway sign bearing the name of plaintiff SAN DIEGO

14    MINUTEMEN at that location, pending this Court's final determination of the claims asserted by

15    Plaintiff herein.

16    The relief sought by Plaintiff returns the *status quo ante litem* - the last uncontested status

17    which preceded the pending controversy (*Goto.com, Inc. v. The Walt Disney Company*, 202 F.3d

18    1199, 1210 (9th Cir. 2000)) and halts the irreparable injury being suffered by Plaintiff.

19

20    ### 4  URGENCY OF PLAINTIFF'S REQUEST

21    Plaintiff's request is based upon the Defendants' actions violating plaintiff's First Amendment,

22    Procedural Due Process, and Equal Protection Rights.

23    Plaintiff, SAN DIEGO MINUTEMEN, was accepted in the Department of Transportation's

24    Adopt-a-Highway program and was entitled to place a sign at location ND 5: SD66.3-SD68.3 as a

25    result of plaintiff agreeing to and removing trash in the vicinity of its adopted highway sign.

26    Attached  as Exhibit "**A**" to the declaration of Jeff Schwilk [Doc #2, Attach. #1] is a copy of the

27    Adopt-a-Highway sign erected by CalTrans under its Adopt-a-Highway program.

28    Attached  as Exhibit "**B**" to the declaration of Jeff Schwilk is a photograph of the SAN

1    DIEGO MINUTEMEN, all wearing helmets and CalTrans approved safety vests, cleaning up trash

2    in the vicinity of their Adopt-a-Highway sign. Both of these photographs were taken on or about

3    January 9, 2008.

4

5        Attached as Exhibit "**C**" to the declaration of Jeff Schwilk is a copy of a letter of January 28,

6    2008 to Jeff Schwilk, Spokesman of the SAN DIEGO MINUTEMEN. The letter is signed at page

7    2 by PEDRO ORSO-DELGADO, California Department of Transportation District Director. In

8    paragraph one of the letter CalTrans states:

9            The location of your existing Adopt-a-Highway (AAH) permit has <u>raised questions</u>
             regarding public safety due to the proximity of your assigned highway segment to a
10           U.S. Border Patrol facility that is co-located with the California Highway Patrol
             (CHP) San Onofre inspection facility. (Emphasis added.)
11

12   The letter of January 28, 2008 continues:

13           As a result, Permit No. 110-NAH0586 is hereby modified and the related courtesy
             sign will be removed.

14       Thereafter, as set forth in the Declaration of Jeff Schwilk, SAN DIEGO MINUTEMEN's

15   Adopt-a-Highway sign was removed by CALTRANS. The Adopt-a-Highway sign has not been re-

16   erected or replaced in its original location or any location.

17       Plaintiff contends that the actions of CALTRANS, in taking down the Adopt-a-Highway sign

18   of plaintiff, was politically driven, content based, and in violation of Plaintiff's First Amendment,

19   Procedural Due Process and Equal Protection Rights guaranteed under the United States

20   Constitution.

21       All Plaintiff requests is that this Court Order the Defendants maintain the *status quo ante*

22   *litem* and reinstate the encroachment permit issued to Plaintiff and re-install the sign bearing their

23   name at the original location until the constitutional issues raised are addressed by this Court.

24

25                        **5. BALANCING TEST TO BE APPLIED**

26   As stated in *Requa v. Kent School District No. 415*, 492 F. Supp.2d 1272:

27           "This circuit's longstanding standard for a preliminary injunction is well known: The
             moving party must show either (1) a combination of probable success on the merits
28           and the possibility of irreparable injury, or (2) that serious questions are raised and
             the balance of hardships tips sharply in favor of the moving party. These standards

                                            -5-                    08CV0210 WQH (RBB)

1

2

3

4

5

are not separate tests but the outer reaches of a single continuum." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839-40 (9th Cir.2001) (internal quotation marks and citations omitted). The court must also weigh whether the public interest favors issuance of the injunction. *Southwest Voter Registration Ed. Project v. Shelley,* 344 F.3d 914, 917 (9th Cir.2003). Regardless of which test is used, the analysis "creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiff[ ] must convince the district court that the public interest and balance of hardships tip in [his] favor." *Id.* at 918. *Id.,* 492 F. Supp. at 1276-1277.

6

7

8

9

10

Under this analysis, the Ninth Circuit held that "serious questions" means questions that involve a fair chance of success on the merits that cannot be resolved one way or the other at the hearing on the injunction " . . . and as to which the court perceives the need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo."*Republic of Phillippines vs. Marcos*, 862 F.2d 1355, 1362 (9ᵗʰ Cir. 1988).

11

12

13

Here, plaintiff is asserting an invasion of its constitutional rights.  When a violation of constitutionally protected rights is shown, no further showing of irreparable injury is required. *Associated Gen. Contractors of Calif. vs. Coalition for Economic Equity*, 1401, 1410 (9ᵗʰ Cir. 1991).

14

15

16

17

The presumption of irreparable injury is particularly strong in cases involving infringement of First Amendment rights: "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary injunction.  *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

18

19

20

As discussed *ante*, application of the balancing test prescribed by the California Ninth Circuit renders Plaintiff's entitlement to the relief requested clear. The Court should grant the Preliminary Injunction as requested herein.

21

22

23

24

25

26

Further, the relief sought specifically addresses the harms and injury alleged by Plaintiff. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9ᵗʰ Cir. 2004); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9ᵗʰ Cir. 1990).  Reinstatement of the encroachment permit No. 11-07NAH0586 granted to Plaintiff for Location ND 5: SD66.3-SD68.3 and restoration of the courtesy sign bearing Plaintiff's name ends the irreparable injury being visited on Plaintiff. Moreover, it returns the parties to the *status quo ante litem*.

27

//

28

//

1
2
3

The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to "the last uncontested status which preceded the pending controversy," *Tanner Motor Livery, Ltd. V. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. V. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958).

4

*Goto.com, Inc. v. The Walt Disney Company, supra*, 202 F.3d at 1210.

5

In this case, the last uncontested status before the controversy at issue in this litigation was

6

at the point in time when Caltrans had issued encroachment permit No. 11-07NAH0586 granted to

7

Plaintiff for Location ND 5: SD66.3-SD68.3 and erected the Adopt-A-Highway sign bearing

8

Plaintiff's name. It was only Caltrans removal of the sign and revocation of that site-specific permit

9

that created the instant controversy.

10

11

## 6. STATEMENT OF FACTS RE: ACTIONS BY CALTRANS

12

Attached to the Declaration of Jeffrey Schwilk [Doc #2, Attach #1] as Exhibit "**B**" is a letter

13

dated November 19, 2007 from Larry Wharton, District 11, Adopt-a-Highway Coordinator.

14

The letter welcomes the SAN DIEGO MINUTEMEN to the CALTRANS Adopt-a-Highway

15

Program. Paragraph one, line two of the letter states:

16

The permit is a legal and binding document that contains important safety

17

information, so please review it thoroughly. (Emphasis added.)

18

19

After receiving the letter of November 19, 2007 welcoming the SAN DIEGO MINUTEMEN

20

to the CALTRANS Adopt-a-Highway Program, Exhibit "**B**", an encroachment permit was issued,

21

a copy of which is attached to the declaration of Jeff Schwilk as Exhibit "**E**", authorizing and

22

permitting the SAN DIEGO MINUTEMEN to have an Adopt-a-Highway sign at location 11-07-

23

NAH0586. As it turns out, the two mile clean up location is bisected by the United Stated Border

24

Patrol checkpoint on Interstate 5. It should be noted that the permit was presumably reviewed by

25

Defendant PEDRO ORSO-DELGADO, District Director..

26

Attached to the declaration of Jeff Schwilk as Exhibit "**F**" is a copy of the Adopt-a-Highway

27

Permit Special Provisions. Paragraph two of page one of the Special Provisions states:

28

**Revocation/Cancellation:** This permit may be revoked by the department for non-compliance with permit provisions or for failure of the permitee, or their

1

2

3

4

5

representatives, to adhere to direction given by a department representative. These provisions are subject to modification and abrogation at any time. This permit may be temporarily suspended due to construction or other state operations at, or within the vicinity of the site.

Permitee may cancel their permit at any time without consequence from the department. Permitees using contractors are responsible for terminating those arrangements.

6

7

8

9

The permit issued to the SAN DIEGO MINUTEMEN (see Exhibit "**E**" attached to the Declaration of Jeff Schwilk) is for a specific location – 11-07NAH0586, at the United States Border Inspection station near San Onofre on Interstate 5. The permit granted is <u>not</u> a general permit, but a permit with respect to <u>a specific location</u>.

10

11

12

13

14

Plaintiff contends that the only way CALTRANS may properly cancel its permit for this specific location, pursuant to CALTRANS own rules and regulations (paragraph two of Exhibit "**F**" attached to the Declaration of Jeff Schwilk) is "for non-compliance of permit provisions or for failure of the permitee, or their representatives, to adhere to direction given by a department representative".

15

16

17

18

CALTRANS has reserved the right to modify or abrogate their provisions at any time. However, Plaintiff has not been notified of any modification or abrogation of the provisions on Exhibit "**F**" at paragraph two by the CALTRANS. Plaintiff contends that the actions of CALTRANS are in direct violation of its own rules and procedures as discussed above.

19

20

21

Paragraph 30 of Exhibit "**F**" (attached to the Declaration of Jeff Schwilk) sets forth the duration of the permit granted to plaintiff SAN DIEGO MINUTEMEN. Pursuant to that paragraph, the permit is " . . . valid for five calendar years from the date of issuance."

22

23

24

Attached to the Declaration of Jeff Schwilk as Exhibit "**G**" is page four of the CALTRANS Adopt-a-Highway "Brochure on Getting Started" located at the California Department of Transportation web site at www.ca.gov/hq/maint/. adopt.

25

26

In Exhibit "**G**", in the left hand column under the heading "Cancelling Permits," the criteria or basis for cancelling permits is set forth by the CALTRANS as:

27

28

Violation of any of the provisions of your permit could result in its cancellation. You, or CALTRANS, may cancel the permit any time you are <u>unable to meet the permit requirements</u>.

08CV0210 WQH (RBB)

1

CALTRANS may temporarily suspend permits for safety reasons, such as construction in your adopted area." (Emphasis added.)

2

3          Exhibit "**G**", the CALTRANS brochure on "Getting Started", contains similar language

4    relating to the cancellation of permits as Exhibit "**F**" attached to the Declaration of Jeff Schwilk

5    relating to the permit special provisions.

6          A permit, according to the CALTRANS rules and regulations, may only be cancelled if an

7    adopter in the Adopt-a-Highway program violates:

8          1.      Any of the provisions of their permit; or

9          2.      Is unable to meet the permit's requirements.

10         CALTRANS rules and regulations do not provide for modification of the permit as to

11   location; therefore, attempting to change the location is in effect cancellation of the site specific

12   permit granted.

13         CALTRANS did not follow its own rules and regulations as set forth in Exhibits "**F**" and "**G**"

14   attached to the declaration of Jeff Schwilk, Plaintiff is unaware of any modification or abrogation

15   of any provisions of its Adopt-a-Highway permit's special provisions (Exhibit "**F**") and allowed its

16   director, and others, <u>unfettered discretion</u> to act arbitrarily and capriciously on the "content" of the

17   message contained on the SAN DIEGO MINUTEMEN Adopt-a-Highway sign. The only content

18   on plaintiff's Adopt-a-Highway sign, Exhibit "**A**" are the words "SAN DIEGO MINUTEMEN".

19         CALTRANS objected to the "content" of the words "SAN DIEGO MINUTEMEN" and

20   further, discriminated against the Plaintiff through "viewpoint discrimination" because the

21   Defendants did not agree with the SAN DIEGO MINUTEMEN message.

22         Plaintiff contends that such actions are clearly in violation of its First Amendment Rights to

23   Free Speech, Procedural Due Process and its Equal Protection Rights guaranteed under the United

24   States Constitution.

25

26                    **7. REASONS GIVEN BY DEFENDANTS FOR THEIR ACTIONS**

27         Exhibit "**C**" attached to the Declaration of Jeff Schwilk is a letter of January 28, 2008 to

28   Jeffrey Schwilk of the SAN DIEGO MINUTEMEN by Defendant PEDRO ORSO-DELGADO,

California Department of Transportation District Director.    In Mr. ORSO-DELGADO's January 28,

2008 letter, at paragraph one, Mr. DELGADO states:

> The location of your existing Adopt-a-Highway (AAH) Permit has raised questions regarding public safety due to the proximity of your assigned highway segment to the U. S. Border Patrol facility that is co-located with the California Highway Patrol (CHP) San Onofre Inspection Facility.  Your group has also indicated concerns regarding possible vandalism to the courtesy sign displaying your participation in the AAH program and the release of information relative to the days you will perform the required clean up.

Based <u>only</u> on the fact that plaintiff's permit "<u>has raised questions</u> regarding public safety due

to the proximity of your assigned highway segment", Mr. ORSO-DELGADO came to the conclusion

in paragraph two of his January 28, 2008 letter that Plaintiff's permit "poses a significant risk of

disruption to the operation of the state highway as well as highway safety concerns for both the

traveling public and participants in the AAH program".

No other facts, occurrences or events other than ***"raised questions"*** was set forth in Mr.

ORSO-DELGADO's letter of January 28, 2008 upon which he based his conclusion to terminate

Plaintiff's Adopt-a-Highway sign at its location near the U. S. Border Control facility, San Onofre,

California.

The real reason why plaintiff's permit was revoked is set forth in Exhibit "I" attached to the

declaration of Jeff Schwilk.  Exhibit "I" is an internet copy of an article written in the San Diego

Union Tribune by columnist Logan Jenkins on January 31, 2008 – political pressure.

Here, there is an article written by a very reputable columnist, Logan Jenkins of the San

Diego Union Tribune, who cites facts based upon his personal knowledge.  Plaintiff submits that the

statements made in said article by Logan Jenkins should be given great weight.

The San Diego Union Tribune columnist Logan Jenkins painted a quite alarming and chilling

picture of what actually happened with respect to the revocation of the permit for plaintiff SAN

DIEGO MINUTEMEN when he stated in his article on January 31, 2008:

> Last week three members of the Latino caucus – Assemblyman Joe Coto, D-San Jose; Senator Gil Cedillo, D-Los Angeles; and Assemblywoman Laurie Saldaña, D-San Diego – met with Cal Trans Director Will Kempton, according to the spokesman in Saldaña's office.

> The Latino law makers reportedly stressed that public safety would be threatened if the Minutemen picked up litter near the border check point."

1    After meeting with the three members of the California Legislature, Logan Jenkins in his

2    article of January 31, 2008 stated: "Kempton assured the Latino politicians that the sign would be

3    removed, according to Saldaña's spokesman." Neither Defendants nor the quoted legislators have

4    publicly denied the contents of the news article.

5    To confirm this report, Plaintiff has requested that the Court grant early depositions of

6    Defendants Kempton and Orso-Delgado {Doc #3} regarding the foregoing and related issues so that

7    Plaintiff may present further evidence regarding these issues to the Court. The Court has ordered

8    this discovery request to Magistrate Brooks for determination [*see* Doc. #6].

9

10    The real reason for the removal of Plaintiff's Adopt-a-Highway sign from its location near

11    the San Onofre U. S. Border Inspection Station was because of imagined or hypothetical safety

12    issues, and it was clearly a result of political pressure placed on CALTRANS Director, WILL

13    KEMPTON by members of the California Legislature.

14    Such actions are unacceptable in our society. Decisions by CALTRANS are not to be based

15    upon political pressure or patronage, but are to be well reasoned and factually based.

16    In addition, the actions of the members of the California Legislature in attempting to remove

17    the plaintiff's Adopt-a-Highway sign were content based and resulted in viewpoint discrimination

18    by CALTRANS. Such arbitrary and capricious actions allowing the Director of CALTRANS

19    unfettered discretion to ignore his own procedures and guidelines because either he, members of the

20    California Legislature or other individuals have a different viewpoint than Plaintiffs, should not be

21    sanctioned by this Court.

22

23    **8. PLAINTIFF'S CONTENTIONS AND ARGUMENTS**

24    There is no rational basis between "questions being raised" and a determination that

25    plaintiff's Adopt-a-Highway sign "poses a significant risk of disruption to the operation of the state

26    highway as well as public safety concerns for both the traveling public and participants in the AAH

27    program." The Defendants have not articulated one single incident or occurrence other than their

28    own conjecture and imagination, upon which to base their decision to terminate plaintiff's Adopt-a-

1    Highway permit.

2        Plaintiff's permit was a <u>site specific</u> permit, allowing Plaintiff to have its Adopt-a-Highway

3    sign in a specific location. Further, Plaintiff's Adopt-a-Highway sign is subject to the rules and

4    regulations promulgated and supposedly followed by CALTRANS.

5        Exhibit "**D**" attached to the Declaration of Jeff Schwilk, indicated on November 19, 2007

6    that the permit "is a legal and binding document."

7        CALTRANS ignored and did not follow its own rules and regulations in cancelling

8    Plaintiff's permit number 11-07NAH0586.

9        CALTRANS did not afford Plaintiff procedural due process. The action of CALTRANS in

10   terminating Plaintiff's permit, in addition to being arbitrary and capricious, did not allow Plaintiff

11   its due process rights to be heard and to present evidence and/or testimony to refute the "questions

12   raised" or the speculation of CALTRANS.

13       Further, there appears to be no procedure in place by CALTRANS to allow an Adopt-a-

14   Highway participant such as Plaintiff, its procedural due process rights to a hearing or even to

15   present evidence or documentation to state its side of any contention. By way of example only,

16   Exhibit "**F**" attached to the Declaration of Jeff Schwilk, at paragraph two indicates that the permit

17   may be revoked if an individual permitee "fails to adhere to direction given by a department

18   representative."

19       An occasion may arise where CALTRANS may revoke a permit based upon incorrect

20   information that a permitee did not follow the directions of a Department of Transportation

21   representative. There is no known means available under the CALTRANS's rules and regulations

22   for a permitee to challenge the revocation of a permit or present evidence that they did not refuse to

23   "adhere to directions given by a department representative."

24       CALTRANS failed to provide Plaintiff with the right to a hearing or having a hearing

25   procedure. Plaintiff's procedural due process rights have been violated.

26   **A.    Plaintiff's Rights to Freedom of Speech and Expression, as Guaranteed by the First**

27   **Amendment, and its Rights to Equal Protection of the Laws and Procedural Due**

28   **Process Have Been Violated by CALTRANS.**

1    In *Terminiello v. City of Chicago*, 337 U.S.1, 69 S.Ct. 894,, 93 L.Ed. 1131 (1949), the United

2    States Supreme Court held unconstitutional an ordinance which as construed, punished an utterance

3    as a breach of peace "if it disturbs the public to anger, invites dispute, brings about a condition of

4    unrest, or creates a disturbance." *Id..*, at 337 U.S. at 3.

5        The United States Supreme Court set aside a conviction based upon such a statute, saying:

6        The validity of civil and political institutions in our society depends on free
         discussion. As Chief Justice Hughes wrote in *De Jonge vs. State of Oregon*, 299
7        U.S. 353, 365; 57 S.Ct. 255, 260; 81 L.Ed. 278, it is only through free debate and free
         exchange of ideas that government remains responsive to the will of the people and
8        peaceful change is affected. The right to speak freely and promote diversity of ideas
         and programs is therefore one of the chief distinctions that sets us apart from
9        totalitarian regimes.

10       Accordingly, a function of free speech under our system of government is to invite
         dispute. It may indeed best serve its high purpose when it induces a condition of
11       unrest, creates dissatisfaction with conditions as they are, or even stirs people to
         anger. Speech is often provocative and challenging. It may strike at prejudices and
12       preconceptions and have profound unsettling effects as it presses for acceptance of
         an idea.
13   *Id.*,377 U.S. at 4.

14       SAN DIEGO MINUTEMEN is being penalized for an expression of its name. CALTRANS

15   does not want to have the name "SAN DIEGO MINUTEMEN" close to the U. S. Border Inspection

16   Station on Interstate 5 at San Onofre because of the view point of the SAN DIEGO MINUTEMEN.

17       While allegedly being concerned that an Adopt-a-Highway sign containing Plaintiff's name

18   would be disruptive at a location near the U. S. Border Inspection Station near San Onofre,

19   CALTRANS has offered to move Plaintiff's Adopt-a-Highway sign "behind a barn – a less visual

20   location", by moving it to Highway 52 in Santee, California.

21       Plaintiff has a right to have its Adopt-a-Highway sign and its name and any connotation its

22   name means, in the full public eye and not hidden from view so as not to offend the sensibilities of

23   drivers who pass by plaintiff's sign on Interstate 5.

24       CALTRANS will not be able to articulate a rational basis for its position that motorists on

25   Highway 52 will be less motivated to civil disobedience than those who drive on Interstate 5.

26   CALTRANS is attempting, arbitrarily and capriciously to hide plaintiff's sign from as many viewers

27   as possible.

28

**B.    Defendants Bear the Burden of Proving That Their Actions Will Pass Constitutional Muster.**

Where the government restricts speech, the government bears the burden of proving the constitutionality of its actions. *United States, et al. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

In *Philadelphia Newspapers, Inc. v. HDPPS*, 475 U.S. 767, 106 S.Ct. 1558,89 L.Ed.2d 783 (1986) the court stated:

> In the context of governmental restriction, it has long been established that the government cannot limit speech protected by the First Amendment without bearing the burden of showing that its restriction is justified.

*Id.*, at 777 (citing *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 540, 100 S.Ct. 2326, 2334, 65 L.Ed.2d 319 (1980)).

Once Plaintiff has established that its Constitutional and First Amendment rights have been violated, the burden then shifts to the Defendants, the government, to justify their actions.

**C.    CALTRANS' Actions Denying Plaintiff an Adopt-a-highway Sign on Interstate 5 near San Onofre, California Is Constitutionally Impermissible Viewpoint Discrimination.**

The decision to take down Plaintiff's Adopt-a-Highway sign on Interstate 5 near San Onofre, California is unconstitutional because it is discrimination on the basis of the SAN DIEGO MINUTEMEN's viewpoints. See *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

The constitutional provision against viewpoint discrimination addresses the viewpoint of the speakers and not whether the state officials disapprove of the speaker's viewpoint. The relevant inquiry is whether Plaintiff was excluded from having its Adopt-a-Highway sign at its permitted site because of Plaintiff's viewpoint, irrespective of whether CALTRANS or its employees and agents opposed that viewpoint. *Good News/Good Sports Club vs. School Dist. of City of Ladue*, 28 F.3d 1504, 1506 (8th Cir. 1994).

"If there is a bedrock principal underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas vs. Johnson*, 491 U.S. 397, 415; 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

1       It cannot be repeated often enough that "above all else, the First Amendment means that

2   government has no power to restrict expression because of its message, its ideas, its subject matter

3   or content."*Police Dept. of City of Chicago vs. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286,33 L.Ed.2d

4   212 (1972).

5       The court in *Police Dept. of Chicago, supra*, went on to state:

6           Necessarily, then, under the equal protection clause, not to mention the First
            Amendment itself, the government may not grant the use of a forum to people whose
7           views it finds acceptable, but deny use to those wishing to express less favorable or
            more controversial views.  And it may not select which issues are worth discussing
8           or debating in public facilities.  There is an equality of status in the field of ideas, and
            government must afford all points of view and equal opportunity to be heard.  Once
9           a forum is opened up to assembly or speaking by some groups, government may not
            prohibit others from assembling or speaking on the basis of what they intend to say.
10          Selective exclusions from a public forum may not be based on content alone, and
            may not be justified by reference to content alone.
11  *Id.*, 408 U.S. at 96.

12      There is no question that the Defendants have engaged in viewpoint discrimination.  As set

13  forth in the article by Logan Jenkins, Exhibit "I" attached to the declaration of Jeff Schwilk, it

14  appears that three members of the California Legislature urged and/or politically pushed Defendant

15  WILL KEMPTON, CALTRANS Director, to move Plaintiff's Adopt-a-Highway sign.

16      Plaintiff is just as entitled as any organization or person to have its Adopt-a-Highway sign

17  at the specific site the permit allows.  Plaintiff should not have its highway sign moved because its

18  name, "SAN DIEGO MINUTEMEN", may connote unpleasant ideas in the minds of some.

19      No matter what Plaintiff's viewpoint may be, Plaintiff is entitled to have its ideas and points

20  of view equally heard and observed as well as any other person's ideas or points of view.

21      The burden is on the Defendants who took down Plaintiff's message – a message merely

22  setting forth Plaintiff's name, SAN DIEGO MINUTEMEN – – to prove that their actions were not

23  based on viewpoint discrimination.  Plaintiff requests that this Court grant a preliminary injunction

24  so as to keep the *status quo ante litem* while the Defendants attempt to meet their burden of proof.

25  **D.    The Mere Fact That Plaintiff's Adopt-a-highway Permit Has "Raised Questions**

26  **Regarding Public Safety", Does Not Pass Constitutional Muster.**

27      In Exhibit "C" attached to the declaration of Jeff Schwilk, CALTRANS indicated that:

28          The location of your existing Adopt-a-Highway (AAH) permit has raised questions
            regarding public safety due to the proximity of your signed highway segment to the

                                        -15-                        08CV0210 WQH (RBB)

1    U. S. Border Patrol facility that is co-located with the California Highway Patrol
2    (CHP) San Onofre Inspection Facility.

3    The mere possibility of violent reaction to free speech does not allow the curtailment of free

4    speech or the hiding of free speech "behind the barn".

5    In *Lewis vs. Wilson*, *supra*, the court in discussing the State of Missouri's attempt to ban a

6    license plate with read "ARYAN-1" stated in response to the State of Missouri's contention that such

7    a sign could promote violence:

8    Without evidence that Ms. Lewis has intentionally sought to invoke a violent reaction
     or has directed at a particular individual "personally abusive epitaphs which . . . are
9    . . . inherently likely to provoke violent reaction (i.e., "fighting words"). <u>Cohen v.
     California</u> (1971) 403 US 15, 20, 91 S.Ct. 1780, 29 C.Ed 2d 284 <u>The mere possibility
10   of a violent reaction to Ms. Lewis's speech is simply not a constitutional basis on
     which to restrict her right to speak.</u> (Citation.)  The argument amounts to little more
11   than a self-defeating proposition that to avoid physical censorship of one who has not
     sought to provoke such a response by a hypothetical coterie of the violent and
12   lawlessness, the state may more appropriately effectuate that censorship themselves
     (403 U.S. at 23, 91 S.Ct. 780), even if we assume that the D.O.R. made no judgment
13   about the viewpoint of Ms. Lewis's speech, therefore, we reject its attempt to censor
     Ms. Lewis's speech because of the potential responses of its <u>recipients.  The First
14   Amendment knows no **Heckler's Veto**</u>. (Emphasis added.)
     *Id.*, 253 F.3d at 1081-82.
15
16   If certain individuals object to Plaintiff's position, that is not a proper basis for restricting

17   Plaintiff's right to convey its point of view, nor is it permissible to take down Plaintiff's sign at the

18   particular place at which it was erected (near San Onofre, California on Interstate 5) and to move it

19   to another, less visible location.

20   In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 760, 29 L.Ed.2d 284 (1971) the United States

21   Supreme Court considered a California statute which made the words "f_ _ _ the draft" a criminal

22   offense.  The appellant walked through a courthouse corridor wearing a jacket bearing the words "f_

23   _ _ the draft" in a place where women and children were present.  In discussing the potential for

24   violence which such a epitaph could create, the United States Supreme Court, stated:

25   Against this background, the issue flushed by this case stands out in bold relief.  It
     is whether California can exercise, as 'offensive conduct', one particular scurrilous
26   epitaph from the public discourse either upon the theory of the court below that its
     use is <u>inherently likely to cause violent reaction</u> (Emphasis added.) or upon a more
27   general assertion that the state's, acting as guardians of public morality, may properly
     remove this offensive word from the public vocabulary.

28   <u>The rationale of the California court is plainly untenable.</u> At most it reflects an
     undifferentiated fear or apprehension of disturbance (which) is not enough to

-16-                                    08CV0210 WQH (RBB)

overcome the right to freedom of expression. (Citation.) We have been shown no evidence that substantial numbers of citizens are standing ready to strike out physically at whoever may assault their sensibilities with execrations like that found uttered by Cohen. There may be such persons about with such lawlessness and violent proclivities, <u>but that is an insufficient base upon which to erect, consistently with constitutional values, a governmental power to force persons who wish to ventilate their dissent views into avoiding particular forms of expression.</u> The argument amounts to little more than the self-defeating proposition that to avoid physical censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawlessness, the states may more appropriate effectuate that censorship themselves. (Emphasis added.)

*Id.*, 403 U.S. at 23.

Here, CALTRANS is attempting to use, as an excuse to overcome their viewpoint discrimination and content discrimination (discussed hereinafter) the mere fact that a sign bearing the words "SAN DIEGO MINUTEMEN" "raised questions" and should be removed and placed elsewhere.

The United States Supreme Court, in *Tinker v. Des Moines Independent Community School District* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), discussed the prohibiting of speech or expression because of "undifferentiated fear or apprehension of disturbance" when it stated, in reversing a judgment by a district court which limited free speech because of a fear of disturbances:

The district court concluded that the action of the school authorities was reasonable because it was based upon their fear of disturbance for the wearing of the arm bands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunch room, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But <u>our constitution says we must take the risk</u> (Citation.); and our history says that it is this sort of hazardous freedom – this kind of openness that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

In order for the state, in the person of school officials, to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. (Emphasis added.)

*Id.*, 393 U.S. at 508-509.

CALTRANS' letter, Exhibit "**C**", also mentions that directly adjacent to plaintiff's specific site, in addition to the United States Immigration Checkpoint is the <u>California Highway Patrol</u> which is "co-located" with the United States Border Patrol. What safer area to place Plaintiff's Adopt-a-Highway sign, than next to a California Highway Patrol office and a United States Border Patrol office?

-17-

1    Are the defendants suggesting that those individuals who pass by Plaintiff's Adopt-a-

2    Highway sign in Santee, California would be less sensitive to the *speech* "SAN DIEGO

3    MINUTEMEN"? Or that there is some physical, emotional or psychological difference between

4    those individuals on Highway 52 in Santee, California and those individuals near the U. S. Border

5    Inspection Station on Interstate 5 near San Onofre?

6    What the Defendants are attempting to do is use, as a ruse, their hypothetical fear of "raised

7    questions" to hide their viewpoint and content dislike and discrimination against Plaintiff. Either

8    way, Plaintiff submits that Defendants' actions do not and should not pass constitutional muster.

9    **E.    CALTRANS and the Individual Defendants Engaged in Content Based on**

10    **Discrimination When it Took down Plaintiff's Adopt-a-highway Sign in Violation of**

11    **Plaintiff's First Amendment and Equal Protection Rights.**

12    "Regulations that permit the government to discriminate on the basis of content of the

13    message cannot be tolerated under the First Amendment."*Regan v. Time, Inc.,* 468 U.S. 641, 649,

14    104 S.Ct. 3262, 82 L.Ed.2d 487.

15    Government regulation must not be "an effort to suppress expression because public officials

16    oppose the speaker's views." *Perry Educ. Association vs. Perry Local Educators*, 460 U.S. 37, 46,

17    103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

18    In addition to public officials being opposed to a speaker's viewpoint, speech may not be

19    prohibited because of a listener's potential reaction. *Forsyth County, GA vs. Nationalist Monument*,

20    505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

21    *Forsyth, supra* further stated: "Speech cannot be financially burdened, any more than it can
be punished or banned, simply because it might offend a hostile mob." *Id.*, 505 U.S. at 134-135.

22

23    The United States Supreme Court has indicated that in public debate, our citizens must

24    tolerate insulting, even outrageous speech, in order to provide adequate breathing space to freedoms

25    protected by the First Amendment. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, 108 S.Ct.

876, 882, 99 L.Ed.2d 41 (1988).

26

27    A "dignity standard like the 'outrageousness' standard that the Supreme Court rejected in

28    *Hustler, supra* is so inherently subjective that it would be inconsistent with the long standing refusal

to punish speech because the speech in question may have an adverse emotional impact on the

1   audience". *Id.*, 485 U.S. at 55.

2       Here, the Defendants have unconstitutionally prevented Plaintiff from having its Adopt-a-

3   Highway sign on Interstate 5 near San Onofre, California, merely because of the "content" of

4   plaintiff's message.

5       The CALTRANS officials have concluded that the words "SAN DIEGO MINUTEMEN"

6   somehow will conjure up such emotional and/or potentially violent and unsafe actions on Interstate

7   5, it should be taken down and moved to Highway 52 in Santee. Presumably on Highway 52 such

8   violent, unsafe reactions presumably are allowable.

9       The CALTRANS reasoning in this regard is irrational. What the Defendants in the instant

10  case are attempting to do is discriminate against Plaintiff based upon the content of its message:

11  SAN DIEGO MINUTEMEN.

12      Contrary to suggestions made to CALTRANS, SAN DIEGO MINUTEMEN support the rule

13  of law. As set forth in the declaration of Jeff Schwilk at paragraph 3, the mission of the SAN

14  DIEGO MINUTEMEN is to uphold the laws of The United States of America. In this respect, the

15  SAN DIEGO MINUTEMEN Mission Statement, contained at paragraph 3 of Mr. Schwilk's

16  declaration states:

17          To demand maximum border security and immigration enforcement both locally and
            at the national level. We oppose illegal immigration in all parts of San Diego County
18          with our activism. We assist and support the U.S. Border Patrol in securing the U.S.-
            Mexican border from terrorists, gang members, criminals, drugs, and illegal aliens
19          entering the United States.   We also assist ICE (Immigration & Customs
            Enforcement) and local law enforcement in exposing law breaking employers and
20          helping to return illegal aliens to their country of legal residence. We act on behalf
            of and in accord with the United States Constitution and the Bill of Rights.
21
        There are individuals in our country, possibly including members of the California
22
    Legislature, who do not agree with the Mission Statement of the SAN DIEGO MINUTEMEN. They
23
    have a different point of view and they are attempting to stifle the expression and point of view of
24
    Plaintiff. In our society, this cannot be tolerated or allowed and Plaintiff's only avenue of redress is
25
    to come to this court and ask for injunctive relief as Plaintiff is now doing.
26
        As Plaintiff has set forth herein, it appears that CALTRANS is under political pressure from
27
    certain California Legislators who have their own agendas, to take down and/or move Plaintiff's sign.
28
    Plaintiff submits that political pressure based on the contents of speech or expression, should not be

                                      -19-                    08CV0210 WQH (RBB)

1    tolerated in our society.

2    **F.     The First Amendment Prohibits CALTRANS from Exercising Unbridled Discretion**

3    **to Restrict Plaintiff's Speech and Discretion.**

4    The CALTRANS regulations set forth in the Declaration Jeff Schwilk at Exhibits "**F**" and

5    "**G**", allow the Director of CALTRANS to have unfettered discretion as to what signs he will or will

6    now allow and what signs he will remove; however, there are no regulations regarding what signs

7    he may move once a site specific permit is issued.  Further, as will be discussed later, there are no

8    procedures within the CALTRANS regulations to afford Plaintiff, and others similarly situated, a

9    notice and a hearing before any action is taken.

10       A law or policy permitting communication in a certain manner for some but not
         others raises a specter of content and viewpoint censorship.  This danger is at its
11       zenith when the determination of who may speak and who may not is <u>left to the</u>
         <u>unbridled discretion</u> of a government official. As demonstrated above, we have often
12       and uniformly held that such statutes or policies impose censorship on the public or
         the press, and hence are unconstitutional, because without standards governing the
13       exercise of discretion, a government official may decide who may speak and who
         may not based on the content of the speech or viewpoint of the speaker.
14    *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-764, 108 S.Ct. 2138, 100 L.Ed.2d

15    771 (1965).  (Emphasis added.)

16

17       As stated in *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965):

18       It is clearly unconstitutional to enable a public official to determine which
         expressions of view will be permitted and which will not or to engage in invidious
19       discrimination among persons or groups either by use of a statute providing a system
         of broad discretionary licensing power or, as in this case, the equivalent of such a
20       system by selective enforcement of an extremely broad prohibitory statute.
      *Id.*, 379 U.S. at 557-558.
21

22       A restriction on speech is constitutional <u>only</u> if certain principals are adhered to.  Among

23    these principals is the requirement that the restriction be specific enough that it does not delegate

24    unbridled discretion to the government officials entrusted to enforce the regulation.  *See City of*

25    *Lakewood , supra.*

26       In cases such as the instant one, wherein an official like CALTRANS has unfettered

27    discretion to take down the Adopt-a-Highway sign or move such a highway sign, both in direct

28    violation of its own regulations and without specific guidelines, the courts have generally held such

1    action to violate the First Amendment. "It is clearly unconstitutional to enable a public official to

2    determine which expressions of view will be permitted and which will not . . . by use of a statute

3    providing a system of broad discretionary licensing power. . . ." *Cox, supra*, 379 U.S. at 557.

4         In reviewing the regulations of the CALTRANS (Exhibits "**F**" and "**G**" attached to the

5    declaration of Jeff Schwilk, there are no boundaries, regulations, guidelines or rules for CALTRANS

6    or its directors or officials, to determine when to remove a sign from a specific location or on what

7    basis an Adopt-a-Highway sign should or must be relocated.

8         Such action, plaintiff contends, is completely within the unbridled discretion of CALTRANS

9    and its officers and clearly does not pass constitutional muster. The actions of CALTRANS in acting

10   at their mere whim based on content or viewpoint discrimination, are arbitrary and capricious.

11   **G.    CALTRANS Has Violated its Own Rules and Procedures in Taking down Plaintiff's**

12   **Sign near the U.S. Border Station on Interstate 5.**

13        In reviewing the permit issued by CALTRANS, said permit clearly shows that it is issued for

14   a site specific location. The rules and regulations of CALTRANS only discuss the revocation of

15   such a permit, "for failure of the permitee, or their representative, to adhere to direction given by the

16   department representative."

17        There is no showing and there will be no showing that Plaintiff or its representatives refused

18   to adhere to any direction given by CALTRANS.

19        Defendants may argue that they have an absolute right to modify or abrogate their

20   regulations. While this is contained in Defendants' regulations, there is no evidence or showing that

21   any action was taken by CALTRANS at any time to change, modify or abrogate its regulations.

22   CALTRANS took the instant action without changing or modifying its guidelines. Such action is

23   in direct violation of CALTRANS guidelines.

24        Further, by CALTRANS not following its guidelines, it acted arbitrarily and capriciously

25   without consideration for its own rules and regulations. Such action was taken by CALTRANS, as

26   Plaintiff contends, because of content and/or viewpoint discrimination by CALTRANS

27   **H.    CALTRANS Denied Plaintiff its Procedural Due Process**

28        The actions by Defendants, and each of them, in removing Plaintiff's Adopt-a-Highway sign

-21-                    08CV0210 WQH (RBB)

1   under the pretext that "questions were raised" and not allowing Plaintiff the opportunity for a hearing

2   and/or to be heard and present evidence to refute the allegations in the January 28, 2008 letter,

3   Exhibit "**C**" attached to the declaration of Jeff Schwilk, is a violation of Plaintiff's procedural due

4   process rights.

5          Plaintiff was never given a hearing nor does Plaintiff believe there are any procedures

6   through which Plaintiff could have obtained a fair hearing to present evidence to rebut the allegations

7   contained in the said January 28, 2008 letter.

8          Plaintiff was never notified of any review procedures nor was Plaintiff ever notified of any

9   right(s) it had to contest the removal of its sign from the location on Interstate 5 near San Onofre,

10  California. Plaintiff had previously entered into a "legal and binding document" with CALTRANS

11  (see Exhibit "**D**" attached to the declaration of Jeff Schwilk) and believed pursuant to CALTRANS'

12  rules and regulations (Exhibits "**F**" and "**G**" to the declaration of Jeff Schwilk) that its Adopt-a-

13  Highway rights could only be terminated if it did not follow the instructions of CALTRANS' officers

14  or if CALTRANS were to modify its rules. Plaintiff has always followed CALTRANS' rules and

15  Plaintiff is informed and believe that CALTRANS never, at any time, modified its rules to allow

16  unfettered discretion by its officers or directors.

17         It is universally accepted that parties must have reasonable notice and an opportunity for

18  hearing before they lose acquired rights. *Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed.

19  97 (1908).

20         Procedural due process does not require a trial before a court and Plaintiff is not requesting

21  a trial before a court. Plaintiff is only arguing that it was never allowed a fair hearing before anyone,

22  including any administrative officer, an independent board, or even a CALTRANS board.

23         Proceedings which wholly deny a hearing are generally considered lacking in due process,

24  when an individual's rights are taken away. *See Morgan v. United States*, 298 U.S. 468, 56 S. Ct.

25  908, 80 L.Ed. 1288 (1936); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576

26  (1953).

27         It has been held that a statute or regulation itself must provide for a hearing and that the

28  absence of such right contained in the statutes or regulations, is not cured by a hearing granted as a

1  matter of discretion. *See Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424, 35 S.Ct. 625, 59 L.Ed.

2  1027 (1915).

3         In *Coe, supra*, the court discussed the failure of a statute to provide in the statute itself a

4  provision for a hearing when the court stated:

5         Nor can extra-official or casual notice, or hearing granted as a matter of favor or
       discretion, be deemed a substantial substitute for the due process of law that the
6         constitution requires. In Stewart v. Palmer, 74 N.I. 183,188 30 Am. Rep. 289, which
       involved the validity of a statute providing for assessing the expense of a local
7         improvement upon the lands benefitted, without notice to the owner, the court said:
       'It is not enough that the owners may by chance have notice, or that they may as a
8         matter of favor have a hearing. The law must require notice to them, and give them
       a right to a hearing and the opportunity to be heard. The soundness of this doctrine
9         has repeatedly been recognized by this court'.
   *Id.*, 237 U.S. at page U.S. 424-425.

10

11         Plaintiff knows of no rights for a hearing nor has any hearing ever been offered or made

12  available to Plaintiff regarding the loss of its rights to have an Adopt-a-Highway sign on Interstate

13  5 at San Onofre, California.

14         Plaintiff submits that Defendants herein acted arbitrarily, capriciously and with unfettered

15  discretion to effectuate their content and viewpoint discrimination in an attempt to eliminate

16  Plaintiff's name from the public's view.  In this regard, Plaintiff submits that is procedural due

17  process rights were violated by the Defendants herein.

18  **9. THERE IS A HIGH PROBABILITY OF SUCCESS OF PLAINTIFF'S COMPLAINT**

19         The Ninth Circuit Court of Appeal has held that the minimum required showing of success

20  is that there is a "fair chance of success on the merits". *Johnson v. California State Bd. of*

21  *Accountancy*, 72 F.3d 1427, 1429 (9th Cir. 1995).

22         The primary facts are not in dispute in the instant case. Plaintiff did apply for an Adopt-a-

23  Highway sign at a specific location and was granted that right. It appears from Exhibit "**I**" attached

24  to the declaration of Jeff Schwilk, that three California legislators put unacceptable political pressure

25  on Defendant WILL KEMPTON, CALTRANS Director, to have Plaintiff's Adopt-a-Highway sign

26  on Interstate 5 near San Onofre taken down.

27         The Defendants, on January 28, 2008, sent a letter to Plaintiff indicating that they were taking

28  down Plaintiff's sign because "it raised questions".  Plaintiff believes it has now submitted evidence

to show there is a very good likelihood the Plaintiff will prevail because the actions of the Defendants were:

1.    A violation of Plaintiff's First Amendment rights to free speech and Equal Protection under the law;

2.    The actions of the Defendants constitute impermissible viewpoint discrimination;

3.    The actions of the Defendants constitute impermissible content discrimination;

4.    The actions of the Defendants were arbitrary, capricious and the result of unfettered discretion by the director of CALTRANS and his agents;

5.    CALTRANS did not follow its own rules and procedures;

6.    The actions of CALTRANS violated Plaintiff's procedural due process rights.

Plaintiff submits from all of the above that it has more than a fair chance of success on the merits and in fact, there is a probability of success of Plaintiff's claims on the merits.

## 11. CONCLUSION

Plaintiff requests this Court issue a Preliminary Injunction requiring the Defendants herein to reinstate encroachment permit No. 11-07NAH0586 granted to Plaintiff for Location ND 5: SD66.3-SD68.3 and re-erect the Adopt-A-Highway sign at that specific location on Interstate 5 near the United States Border Inspection Station near San Onofre, California.

DATED: February 25, 2008


                                    /s/ Lowell Robert Fuselier
                                    LOWELL ROBERT FUSELIER
                                    **KALOOGIAN & FUSELIER, LLP**
                                    Attorneys for Plaintiff, SAN DIEGO
                                    MINUTEMEN