

1  Howard Kaloogian, State Bar No. 118954
   Lowell Robert Fuselier, State Bar No. 14070
2  David T. Hayek, State Bar No. 144116
   Kaloogian & Fuselier LLP
3  2382 Faraday Avenue, Suite 130
   Carlsbad, California 92008
4  Tel. 760-522-1802
   Fax. 760-431-1116
5  **Attorneys for Plaintiffs**

6

7

8                  **UNITED STATES DISTRICT COURT**
9                   **Southern District of California**

10

11  SAN DIEGO MINUTE MEN            )    Case Number:  08CV0210 WQH [RBB]
                                    )
12           Plaintiff,            )    **PLAINTIFF'S MEMORANDUM OF**
                                    )    **POINTS AND AUTHORITIES IN**
13      vs.                        )    **OPPOSITION TO DEFENDANTS'**
                                    )    **MOTION TO DISMISS COMPLAINT**
14  DALE BONNER in his Official Capacity )  **PURSUANT TO FEDERAL RULE OF**
    as  Agency  Director,  Business, )    **CIVIL PROCEDURE 12(b)(1), (2) AND**
15  Transportation and Housing Agency; )  **(6)**
    WILL  KEMPTON  in  his  Official )
16  Capacity as CalTrans Director;  PEDRO )  Hearing Date:        May 9, 2008
    ORSO-DELGADO  in  his  Official )    Hearing Time:        1:30 p.m.
17  Capacity as Caltrans District Director and )  Courtroom:        Courtroom 4
    DOES 1 through 50,             )    Judge:               William Q. Hayes
18                                  )
             Defendants.            )
19  _____)

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2                                                                                     **Page**

3    *Table of Authorities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

4    I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    II. LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6        A.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7        B.    PLAINTIFF'S CLAIM AGAINST DEFENDANTS
               IS RIPE BECAUSE PLAINTIFF HAS SUFFERED
8              IRREPARABLE INJURY AND HARM . . . . . . . . . . . . . . . . . . . . . 4

9        C.    PLAINTIFF HAS PROPERLY STATED A
               CAUSE OF ACTION FOR VIOLATION OF ITS
10             CONSTITUTIONAL RIGHT OF FREE SPEECH . . . . . . . . . . . . . . . . . . 5

11             1.    The San Diego Minute Men's Participation
                     in the Adopt-A-Highway Program and its
12                   Recognition Sign are Speech . . . . . . . . . . . . . . . . . . . . . . . . . 5

13             2.    Defendants Revoked the Site-Specific Permit
                     of Plaintiff San Diego Minute Men . . . . . . . . . . . . . . . . . . . . . . 6

14
               3.    Regardless of the Type of Public Forum
15                   Northbound Interstate 5 Constitutes,
                     the Conduct of Defendants Violates
16                   Plaintiff's First Amendment Rights . . . . . . . . . . . . . . . . . . . . . . 7

17                   a.    Even if the Highway is a "Nonpublic Forum,"
                           Defendant's Revocation of Plaintiff's Site-Specific
18                         Permit violates Plaintiff's Constitutional Rights . . . . . . . . . . . . . 7

19                   b.    A Highway is a Traditional Public Forum
                           Requiring Strict Scrutiny of any Abridgment
20                         of Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21             4.    Defendants' Attempt to Move Plaintiff's Speech
                     "Behind the Barn" is Impermissible . . . . . . . . . . . . . . . . . . . . 12

22
         D.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT
23             TO EQUAL PROTECTION UNDER THE LAW . . . . . . . . . . . . . . . . 13

24       E.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT
               TO DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25             1.    Defendants violated Plaintiff's Right
26                   to Procedural Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

27             2.    Defendants violated Plaintiff's
                     Substantive Due Process Rights . . . . . . . . . . . . . . . . . . . . . . . 18
28

1

## TABLE OF CONTENTS (cont.)

2

Page

3

         a.   Plaintiff has a Fundamental Right to Free Speech  . . . . . . . . . . .  18

4

         b.   Plaintiff's Right to Free Speech Has Been Infringed  . . . . . . . . .  18

5

         c.   Defendants' Actions Cannot Survive Scrutiny  . . . . . . . . . . . . . .  19

6

    F.   PLAINTIFF HAS PROPERLY PLEADED A CLAIM

7

        PURSUANT TO 42 U.S.C. §1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

8

    G.   DEFENDANT CALTRANS IS NOT IMMUNE
        FROM SUIT UNDER THE ELEVENTH

9

        AMENDMENT TO THE CONSTITUTION  . . . . . . . . . . . . . . . . . . . . .  20

10

      1.   The Eleventh Amendment Does Not Preclude Suits
         Against a State by Citizens of that State based on

11

         Federal Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

12

      2.   State Officials in their Official Capacities are
         "Persons" and Are Not Immune from Suit

13

         for Declaratory and Injunctive Relief  . . . . . . . . . . . . . . . . . . . . . . .  21

14

      3.   No Qualified Immunity for Individual Defendants
         Where There Are Constitutional Violations of

15

         Clearly Established Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

16

III. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

### United States Supreme Court Cases

5

*Bell v. Burson,*
402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6

*Board of Regents of State Colleges v. Roth,*
7   408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

8

*Boddie v. Connecticut,*
401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

*Connell v. Higginbotham,*
10   403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11

*Cornelius v. N.A.A.C.P. Legal Defense and Educ. Fund, Inc.,*
473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 8

12

*Elrod v. Burns,*
13   427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

*Ex Parte Young,*
209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15

*Frisby v. Schultz,*
16   487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) . . . . . . . . . . . . . . . . . . . . . . . 12

17

*Goldberg v. Kelly,*
397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18

*Greer v. Spock,*
19   424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

*Hafer v. Melo,*
502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

21

*Hans v. Louisiana,*
22   134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

23

*Harper v. Virginia Board of Elections,*
383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

24

*Idaho v. Coeur d'Alene Tribe of Idaho,*
25   521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26

*National Mutual Ins. Co. v. Tidewater Transfer Co.,*
337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

27

*Police Dept. of Chicago v. Mosley,*
28   408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212(1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

1

## **TABLE OF AUTHORITIES (cont.)**

2

**Page**

**Cases**

3

**United States Supreme Court Cases (cont.)**

4

*Reno v. Flores,*

5   507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6   *Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7

*Stanley v. Illinois,*

8   405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9   *West v. Atkins,*
    487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

10

11  **United States Court of Appeals Cases**

12  *Associated Gen. Contractors of Calif. vs. Coalition for Economic Equity,*
    950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13
    *Brown v. Cal. Dep't of Transp., et al.,*
14  321 F.3d 1217 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15  *DeNieva v. Reyes,*
    966 F.2d 480 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

16
    *Flint v. Dennison,*
17  488 F.3d 816, 825 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18  *Hale v. Department of Energy,*
    806 F.2d 910 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

19
    *Hopper v. City of Pasco,*
20  241 F.3d 1067 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

21  *Lewis v. Wilson,*
    253 F.3d 1077 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 19

22
    *Monterey County Democratic Central Committee v. United Postal Service,*
23  812 F.2d 1194, 1196 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24  *Pena v. Gardner,*
    976 F.2d 469 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25
    *Porter v. Jones,*
26  319 F.3d 483 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

27  *Walling v. Beverly Enterprises,*
    476 F.2d 393 (9th Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28

1

# **TABLE OF AUTHORITIES (cont.)**

2

**Page**

**Cases**

3

**United States Court of Appeals Cases (cont.)**

4

5

*Western Reserve Oil & Gas Co. v. New,*
  765 F.2d 1428 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

6

7

**United States District Court Cases**

8

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach,*
  475 F.Supp.2d 952 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

9

*Cuffley v. Mickes,*
  44 F.Supp.2d 1023 (E.D. Mo. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 16

10

11

*Jackson v. City of Markham,*
  773 F.Supp. 105 (N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12

*Knights of Ku Klux Klan v. Arkansas State Highway and Transp. Dept.,*
  807 F. Supp. 1427 (W.D. Ark. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 16

13

14

**United States Constitution**

15

Amendment XI     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">I.  INTRODUCTION</div>

1

2      The motion by Defendants [Doc# 19] is replete with factual assertions not found in Plaintiff's

3  complaint.  In short, the entire motion is based on Defendants' attempt to misdirect Plaintiff's claim

4  as one about "moving Plaintiff's recognition sign from one location to another." Indeed, the entirety

5  of Defendants' 12(b)(6) analysis is premised on this incorrect statement of Plaintiff's case.  To be

6  absolutely clear, that is *not* Plaintiff's claim.  As alleged in the complaint herein, Plaintiff San Diego

7  Minutemen, an association of individuals whose purpose is to advocate the enforcement of all U.S.

8  laws, alleges that:

9      •   On or about September 18, 2007, plaintiff applied for an Adopt-a-Highway

10         encroachment permit. [*Complaint* [Doc#1], ¶8];

11     •   On or about November 21, 2007 an encroachment permit, allowing plaintiff to

12         maintain the shoulders of Interstate 5 near San Onofre, was issued.  *Complaint*

13         [Doc#1], ¶10];

14     •   Defendants erected the Adopt-a-Highway sign (bearing the name SAN DIEGO

15         MINUTEMEN) on the northbound side of Interstate 5 just south of the San Onofre,

16         Immigration Check Point [*Complaint* [Doc#1], ¶11];

17     •   In January of 2008, numerous members of plaintiff's organization, dressed in CalTrans

18         approved hard hats and safety vests proceeded to clean up their Adopt-a-Highway

19         assigned area [*Complaint,* [Doc #1] ¶12].

20     •   That the termination of its Adopt-a-Highway sign and requisite privileges and

21         obligations was terminated in violation of their First Amendment rights because of

22         content and viewpoint discrimination by defendants herein and possibly others

23         including members of the California Legislature [*Complaint* [Doc#1], ¶15.1.];

24     •   the actions of defendants and each of them in terminating plaintiff's site specific

25         Adopt-a-Highway location was done arbitrarily, capriciously and based upon the

26         unfettered discretion given to the defendants and each of them in violation of plaintiff's

27         constitutional rights to free speech and equal protection under the laws [*Complaint*

28         *[Doc#1],* ¶15.2.];

1             •   Defendants did not follow their own policies and procedures in removing plaintiff's

2                 sign and plaintiff's Rights to a site specific Adopt-a-Highway sign and that defendant

3                 CalTrans' procedures do not allow for a hearing or for plaintiff or any individual to

4                 present evidence which refutes or challenges a revocation of an Adopt-a-Highway

5                 permit [*Complaint* [Doc#1], ¶15.3.]; and

6             •   The actions of defendants and each of them in depriving plaintiff of its Rights to

7                 freedom of speech and expression, procedural due process and equal protection under

8                 the laws, violated plaintiff's Rights [*Complaint* [Doc#1], ¶19].

9

10     Defendants' attempt to characterize Plaintiff's complaint as being about "moving the sign" is

11 misplaced. First, it is factually erroneous. Plaintiff alleges, and the facts demonstrate that, Plaintiff's

12 site specific permit was ***revoked***. Plaintiff has not accepted any new permit for a new location for

13 its litter cleanup activities. To be sure, Plaintiff *does* address Defendants' ***attempted*** relocation of

14 Plaintiff's site-specific permit (and the accompanying recognition sign) from its original location to

15 a remote location, but does so only to soundly negate Defendants' argument that such a movement

16 "saves" Defendants' constitutional violations (*see* discussion at Section B.4, *ante*), not as a basis for

17 Plaintiff's claims herein.

18

19     The *gravamen* of Plaintiff's Complaint is that every decision made by Defendants (*after* it

20 properly approved the site-specific permit to the San Diego Minute Men) was based on Defendants

21 dislike of the ***viewpoint*** of Plaintiff – every excuse and justification for revoking that site-specific

22 permit arises because of the association of the Minute Men's name with that group's ***viewpoint***

23 regarding enforcement of the U.S. immigration laws. Such conduct violates the guarantees of the

24 U.S. Constitution.

25

26     Taking Plaintiff's allegations as true, as this Court must on a motion to dismiss, Plaintiff has

27 certainly stated facts sufficient to constitute the causes of action alleged in the complaint. Therefore,

28 the motion to dismiss must be denied.

1    Apart from the substantive issues raised, Defendant Caltrans (and the individual defendants in
2    their "official capacity) also raises jurisdictional issues involving the claims asserted against it
3    pursuant to 12(b)(1) and (2) (lack of subject matter/personal jurisdiction). Caltrans asserts it is
4    immune from suit pursuant to the Eleventh Amendment to the United States Constitution. The
5    individual defendants assert they are equally immune in their "official capacity" from such claims.
6    As set forth more fully below, Plaintiff asserts that the Eleventh Amendment does not afford
7    Caltrans (or the individual defendants in their "official capacity") immunity on a claim arising from
8    federal question jurisdiction and which seeks prospective injunctive relief and, therefore, the claims
9    asserted against Caltrans and the individual defendants in their official capacity herein are properly
10   stated.

11

12   The analysis employed on a motion to dismiss is not controversial. A Court will review the
13   material factual allegations of the complaint to determine whether the plaintiff has stated a claim
14   upon which relief may be granted. Given this paradigm, Plaintiff is troubled by Defendant's
15   repeated recitation of, and reliance on, purported facts which are beyond the complaint. Indeed,
16   Defendants do not make *one citation* to Plaintiff's Complaint in their moving papers – peculiar
17   indeed for a motion to dismiss which entirely rests on the Complaint's allegations. Instead, the
18   motion resembles a motion for summary judgment, replete with facts far removed from Plaintiff's
19   Complaint and which are wholly unsupported by evidence. While it is perhaps understandable that
20   Defendants wish to avoid the facts as pleaded by Plaintiff, on a motion to dismiss Defendants remain
21   bound by allegations contained within the four corners of the Complaint. Though facts extraneous
22   to the Complaint should not be considered by the Court on a motion to dismiss, Plaintiff will correct
23   the factual record with undisputed testimony from Defendants themselves where appropriate to avoid
24   the potential confusion such errors in fact may create and demonstrate the truth of the complaint's
25   allegations. Should the Court consider Defendants' motion as one pursuant to Federal Rule of Civil
26   Procedure 56, it still must fail as the undisputed facts demonstrate the propriety of Plaintiff's claims.
27   //
28   //

## II.  LEGAL DISCUSSION

**A.    LEGAL STANDARD.**

In ruling on a motion to dismiss, the Court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party. *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir.1973).

Here, upon review of the facts *alleged in the Complaint*, it is clear that Plaintiff has set forth facts which, if proven, would entitle it to the relief requested herein.  Therefore, the motion to dismiss must be denied.

**B.    PLAINTIFF'S CLAIM AGAINST DEFENDANTS IS RIPE BECAUSE PLAINTIFF HAS SUFFERED IRREPARABLE INJURY AND HARM.**

The first salvo lobbed by Defendants is that Plaintiff cannot state a claim because Plaintiff has suffered no harm.  This assertion by Defendants is falsely premised upon their suggestion that Plaintiff's claims arise from "relocation of Plaintiff's sign."  As noted above, such is not Plaintiff's claim.

As set forth in detail below, Plaintiff's Complaint herein states cognizable claims for violation of its Rights under the First and Fourteenth Amendments of the United States Constitution, as well as a claim pursuant to 42 U.S.C. Section 1983.  It is settled that when a claim for violation of constitutionally protected rights is shown, injury has been demonstrated.  *Associated Gen. Contractors of Calif. vs. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).  The presumption of irreparable injury is particularly strong in cases involving infringement of First Amendment Rights: "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary

1  injection. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

2

3      Thus, the loss of freedom of speech, the disparate treatment of Plaintiff *vis-a-vis* every other

4  participant in the Adopt-A-Highway Program (none of whom has never had their permit revoked as

5  a result of the participant's *viewpoint*), the substantive and procedural due process violations visited

6  upon Plaintiff are certainly sufficient to establish the ripeness of Plaintiff's claims.

7

8  **C.      PLAINTIFF HAS PROPERLY STATED A CAUSE OF ACTION FOR VIOLATION**

9          **OF ITS CONSTITUTIONAL RIGHT OF FREE SPEECH.**

10

11     Plaintiff's claim herein is that Defendants systematically deprived Plaintiff of its right to free

12  speech, equal protection and procedural due process when Defendants revoked Plaintiff's site-

13  specific encroachment permit for location designated ND 5: SD66.3-SD68.3 and removed its

14  recognition because of pressure from others who did not like the message that Plaintiff's group, and

15  its recognition sign, represented.  The propriety of Plaintiffs first amendment claim rests upon an

16  analysis of the level of scrutiny given to Defendants' decision, the public forum at issue and the

17  reasons underlying Defendants' removal of Plaintiffs sign at the behest of opponents to Plaintiff's

18  viewpoint. As set forth below, even under the least challenging scrutiny, Defendants' viewpoint-

19  based reasoning for revoking the Plaintiff's site specific permit clearly violates Plaintiff's

20  constitutional Rights. Axiomatically, under more intense scrutiny, the decision by Defendants is not

21  even close to passing constitutional muster.

22

23     **1.     The San Diego Minute Men's Participation in the Adopt-A-Highway Program and its**

24          **Recognition Sign are Speech.**

25     The question of whether or not the San Diego Minute Men's participation in the Adopt-A-

26  Highway program is speech is settled.  Other jurisdictions have considered that precise issue.  For

27  example, in *Knights of Ku Klux Klan v. Arkansas State Highway and Transp. Dept.*, 807 F. Supp.

28  1427 (W.D. Ark. 1992), the Court noted:

1    ***The court also has no doubt but that the individuals, businesses, groups and***

2    ***other organizations participating in the program are engaged in "speech" when***

3    ***they participate***.

4    *Id.,* 807 F.Supp. at 1435. [Emphasis supplied..]

5

6    Of course, the means by which the San Diego Minute Men, or any other permittee gains such

7    recognition is via the recognition sign which bears its name and speaks the participant's message

8    embodied in its name.  Other courts have similarly held the Adopt-A-Highway sign is speech.  *See*

9    *Cuffley v. Mickes,* 44 F.Supp.2d 1023, 1026 (E.D. Mo. 1999) [*Cuffley II*].

10

11    **2.    Defendants Revoked the Site-Specific Permit of Plaintiff San Diego Minute Men.**

12    Defendants suggest there was no revocation of Plaintiff's site-specific permit, but instead a

13    "relocation."  These purported facts are outside the complaint, and are not properly considered on

14    a motion to dismiss. (*Western Reserve, supra.*) The Complaint herein specifically alleges that "on

15    January 28, 2008, plaintiff's president, Jeff Schwilk, received a letter from Pedro Orso-Delgado,

16    CalTrans District Director, informing him that because plaintiff's participation "raised questions",

17    CalTrans was terminating and revoking plaintiff's permit at the site specific location at the U.S.

18    Border Inspection Station on Interstate 5, San Onofre, California." *Complaint* [Doc #1] at p.3, ¶13.

19

20    Moreover, Defendant Kempton, Director of Caltrans, specifically testified that Plaintiff's permit

21    had been revoked:

22    Q:        OKAY.  BUT IN THIS CASE YOU DIDN'T REVOKE THE PERMIT, DID YOU?
              OR DID YOU REVOKE IT? I DON'T KNOW.
23    KEMPTON: TECHNICALLY, THAT EXISTING PERMIT WAS REVOKED.
                                        *
24    Q:        ALL RIGHT.  NOW I UNDERSTAND.  BECAUSE I WAS A BIT CONFUSED
              ABOUT THAT. TECHNICALLY, THE PERMIT HAS BEEN REVOKED, IS THAT
25            FAIR?
      KEMPTON: THAT SPECIFIC PERMIT WHICH IS A CONTRACT FOR THAT LOCATION
26            HAS BEEN REVOKED.
      *Deposition of William Alan Kempton* ("Kempton Depo."), [47:20-23] and [48:3-7]. [*LRF Decl.* Ex.1,
27    pp. 11-12] .A true and correct copy of portions of the transcript of the Kempton Depo are attached
      as Exhibit "1" to the Declaration of Lowell Robert Fuselier . ("*LRF Decl.*") filed contemporaneously
28    herewith.  The complete transcript will be lodged with the Court at the hearing hereon.

1     **3.    Regardless of the Type of Public Forum Northbound Interstate 5 Constitutes, the**

2         **Conduct of Defendants Violates Plaintiff's First Amendment Rights.**

3

4         **a.    Even if the Highway is a "Nonpublic Forum," Defendant's Revocation of**

5             **Plaintiff's Site-Specific Permit violates Plaintiff's Constitutional Rights.**

6         To analyze a claim of violation of free speech rights on public property under the United

7     States Constitution, the analysis employed is as follows:

8         "[W]e must identify the nature of the forum, because the extent to which the
          Government may limit access depends on whether the forum is public or
9         nonpublic." *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 797,
          105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). If the forum is public, "speakers can be
10        excluded ... only when the exclusion is necessary to serve a compelling state
          interest and the exclusion is narrowly drawn to achieve that interest." *Id.* at 800,
11        105 S.Ct. 3439. If, on the other hand, the forum is non-public, the government is
          free to restrict access "as long as the restrictions are 'reasonable and [are] not an
12        effort to suppress expression merely because public officials oppose the speaker's
          view.' " *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S.
13        37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).
      *Hopper v. City of Pasco,* 241 F.3d 1067, 1074 (9th Cir. 2001).

14

15        That is not the end of the inquiry, for public property is further divided into three groups:

16        "Forum analysis divides government property into three categories: public fora,
          designated public fora, and nonpublic fora." FN5DiLoreto v. Downey Unified Sch.
17        Dist. Bd. of Educ., 196 F.3d 958, 964 (9th Cir.1999), cert. denied, 529 U.S. 1067,
          120 S.Ct. 1674, 146 L.Ed.2d 483 (2000) (quoting Children of the Rosary v. City of
18        Phoenix, 154 F.3d 972, 976 (9th Cir.1998)). A designated public forum exists
          where "the government intentionally opens up a nontraditional forum for public
19        discourse." Id."Restrictions on expressive activity in designated public fora are
          subject to the same limitations that govern a traditional public forum,"i.e., strict
20        scrutiny. Id. at 964-965 (citing International Soc'y for Krishna Consciousness v.
          Lee, 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992)).
21    *Id.*

22

23        In this case, the property involved is a public highway and adjacent shoulder - Interstate 5

24    Northbound, clearly public property.   Several Courts have held that highways and the adjacent

      shoulder are "traditional public fora" for purposes of scrutiny of the abridgement of speech (*see*
25
      *discussion, ante*). But even in cases where a Court has concluded that the highway thoroughfare was
26
      a non-public forum, the result has been the same – the free speech right may not be abridged based
27
      upon a distaste for the message of the speaker or the controversy surrounding it.
28

1    The issue presented in this case – whether the denial (revocation) of a group's right to participate

2    in an Adopt-A-Highway program based on the group's viewpoint is repugnant to the constitutional

3    principal of free speech - has been precisely addressed by courts in the Eighth Circuit. In *Cuffley II*,

4    *supra*, the District Court parted company with prior decisions and held instead:

5        Although the speech analysis in this matter has not changed, the Court disagrees
         somewhat with the forum analysis in *Cuffley I*. *** At this time, in light of the
6        MHTC's subsequent attempts to limit access to the program, the Court finds that the
         MHTC attempted to create a nonpublic forum rather than a designated public
7        forum.
                                                              *

8

9        Having concluded that this case involves a nonpublic forum, the Court must now
         address the regulations imposed by the MHTC. Access to nonpublic fora can be
         restricted as long as the restrictions are reasonable and ***are not an effort to suppress***
10       ***expression merely because public officials oppose the speaker's view.***
     *Cuffley II, supra,* at 1027, citing *Cornelius v. N.A.A.C.P. Legal Defense and Educ. Fund, Inc.,* 473
11   U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). [*Emphasis supplied.*]

12
     But even under this least restrictive analysis, the Court in *Cuffley II* found that denial of the
13
     KKK's participation in the program based on its viewpoint violated the KKK's right to free speech.
14
     In this case, the decision of Defendants to revoke the permit of Plaintiff was ***precisely because of***
15
     ***the viewpoint*** of Plaintiff. This allegation is borne out by the testimony of Defendant Kempton, the
16
     Caltrans Director, who testified that he had been advised of complaints by members of the Latino
17
     community (who oppose the message of Plaintiff) and then testified:
18
     Q:        WHAT WAS YOUR UNDERSTANDING OF THE COMPLAINT?
19   KEMPTON: MY UNDERSTANDING OF THE COMPLAINT WAS THAT THERE WAS
               GREAT CONCERN ON THE PART OF THE COMPLAINANT THAT A GROUP
20             THAT WAS – THAT WAS OPPOSED TO CERTAIN IMMIGRATION POLICIES
               WOULD HAVE BEEN ISSUED A PERMIT TO PICK UP LITTER ALONG A
21             STATE HIGHWAY, PARTICULARLY A STATE HIGHWAY IN THE VICINITY
               OF A BORDER INSPECTION FACILITY WHERE THERE WOULD BE A GOOD
22             DEAL OF IMMIGRATION TRAFFIC.
     *Kempton Depo.,* at [11:14-23]. [*LRF Decl.*, Ex. 1, p. 3.]
23
     Mr. Kempton further testified:
24
     Q:        WAS THIS A SUBJECTIVE CONCLUSION THAT YOU CAME TO ON YOUR
25             OWN?
     KEMPTON: I WOULD SAY, YES, IT WAS A SUBJECTIVE CONCLUSION.  AND I DID
26             COME TO THAT CONCLUSION ON MY OWN.
     *Kempton Depo.,* at [13:25 to 14:4].  [*LRF Decl.*, Ex. 1, pp. 4-5.]
27                                                            *
     Q:        GOING BACK TO YOUR CONCERNS – YOUR SAFETY CONCERNS.  WAS IT
28             YOUR THOUGHT THAT THE NAME, SAN DIEGO MINUTE MEN, ITSELF WAS

1    GOING TO CAUSE PEOPLE TO HAVE AN ADVERSE REACTION OF SOME
     SORT?

2    KEMPTON: I DON'T BELIEVE IT WAS GOING TO CAUSE PEOPLE, IN A GENERIC SENSE,
     TO HAVE AN ADVERSE REACTION. I DID FEEL THAT IT COULD CAUSE

3    MEMBERS OF THE LATINO COMMUNITY AND SOME OF THE FOLKS –
     SOME OF THE IMMIGRATION TRAFFIC, TO HAVE AN ADVERSE REACTION,

4    YES.

5    Q:    SO IN OTHER WORDS, WHEN THEY SEE THE NAME, YOU BELIEVE THAT
     THOSE MEMBERS OF THE COMMUNITY THAT YOU HAVE DESCRIBED

6    WOULD REACT NEGATIVELY TO THE MINUTEMEN'S POSITION ON
     IMMIGRATION; IS THAT FAIR?

7    KEMPTON: I THINK THAT IS FAIR.

8    Q:    AND THAT WAS THE UNDERLYING MOTIVATION FOR YOU TO MAKE THE
     DECISION YOU MADE ABOUT THE SIGN?

9    KEMPTON: NO, I DON'T THINK THAT'S THE UNDERLYING MOTIVATION AS TO WHY
     I MADE THE DECISION. THE UNDERLYING MOTIVATION IN MAKING THE

10   DECISION WAS AN ISSUE OF SAFETY.  IT REALLY -- I MEAN, THE
     RELATIONSHIP OF THE MINUTEMEN TO THE LATINO COMMUNITY IN

11   THIS INSTANCE WAS, OF COURSE, THE CONTROVERSY THAT I FORESAW.
     BUT THE UNDERLYING MOTIVATION WAS A QUESTION OF SAFETY.

12

13   Q:    SO THAT I CAN BE CLEAR ON THIS NOW - - AND THE QUESTION OF
     SAFETY ARISES BECAUSE OF THE POSSIBLE ADVERSE REACTION BY

14   MEMBERS OF THE LATINO COMMUNITY AND OTHER GROUPS REACTING
     TO THE MESSAGE OF THE MINUTEMEN AS TO THEIR POSITION ON
     IMMIGRATION; IS THAT FAIR?

15   KEMPTON: THAT'S FAIR.
     *Kempton Depo.*, at [14:24 to 17:1].  [*LRF Decl.*, Ex. 1, pp. 5-8.]

16

17   As is clear from the foregoing responses by Mr. Kempton, the decision by Defendants, and each

18   of them, to revoke the site-specific permit of the San Diego Minute Men, and to remove the courtesy

19   sign bearing their name in the dark of night, was based upon the viewpoint of the Plaintiff and, as

20   such, violates Plaintiff's first amendment rights under even the most lenient scrutiny.

21

22   It is equally clear that Defendants decision to revoke Plaintiff's site-specific permit and remove

23   their recognition sign granted a "heckler's veto" to those who opposed the message of the San Diego

24   Minute Men represented by their name on the recognition sign.  This, too, is constitutionally

25   impermissible.  In *Lewis v. Wilson*, 253 F.3d 1077 (8th Cir. 2001), the Defendant, the Missouri

26   Department of Revenue had revoked Plaintiff's vanity license plate "ARYAN-1." Eventually, the

27   DOR based its decision on the argument that it did so to promote "highway safety by rejecting

28   license plates that could incite so-called road rage. *Id.*, at p. 1080.  In analyzing this argument the


1   Court reasoned:

> The DOR contends that Ms. Lewis' plate may be regulated because it is likely to provoke a violent response. We think, however, that "[t]he only reason why [this] expressive conduct would be especially correlated with violence is that it conveys a particularly odious message; because the 'chain of causation' thus *necessarily* 'run[s] through the persuasive effect of the expressive component' of the conduct (emphasis in original), the possibility for violence is a primary effect of the message itself. [Citations omitted.] While we do not disagree with the DOR that road rage is a conceivable consequence of the "ARYAN-1" plate, any road rage that might occur would result directly from the message of racial superiority that the plate would carry in the minds of some who read it.
>
>               ***
>
> Without evidence that Ms. Lewis has intentionally sought to provoke a violent reaction or has directed at a particular individual [fighting words], the mere possibility of a violent reaction to Ms. Lewis's speech is simply not a constitutional basis on which to restrict her right to speak. [Citations omitted.]  "The argument amounts to little more than the self-defeating proposition that to avoid physical censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawless, the States may more appropriately effectuate that censorship themselves," [*Cohen v. California*, 403 U.S. 15, 23 (1971)]. Even if we assume that the DOR made no judgment about the viewpoint of Ms. Lewis's speech, therefore, we reject its attempt to censor Ms. Lewis's speech because of the potential responses of its recipients. The first amendment knows no heckler's veto.

*Lewis, supra*, 253 F.3d at 1081-1082.

Here, Plaintiff has alleged that, as a result of threats of violence and other pressure from those who oppose Plaintiff's point of view, Defendants granted a "heckler's veto." This allegation is bolstered by Caltrans Director Kempton's testimony, *supra*.

**b.    A Highway is a Traditional Public Forum Requiring Strict Scrutiny of any Abridgment of Speech.**

Roads, highways and sidewalks have been classified as public fora so long they are often spoken of as "traditional public fora" and alleged speech abridgement at such fora are reviewed using the highest level of scrutiny . *See, e.g. Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, 475 F.Supp.2d 952 (C.D. Cal. 2006). Indeed, the availability of these fora for public discourse are often stated as grounds for upholding time, place, manner restrictions on speech at other, less open fora. *See e.g. Hale v. Department of Energy*, 806 F.2d 910, 917 (9th Cir. 1986) [one factor bearing on the reasonableness of restriction is the existence of adjacent Highway as public forum for expressive activity]. Even if privately owned, the shoulder of a public highway is a public

1  forum. *Jackson v. City of Markham*, 773 F.Supp. 105, 107 (N.D. Ill. 1991) citing *Monterey County*

2  *Democratic Central Committee v. United Postal Service,* 812 F.2d 1194, 1196 (9th Cir.1987).

3

4     As mentioned above, several courts have concluded that Adopt-A-Highway programs along

5  highways constitute "traditional public fora" requiring the strictest scrutiny of any effort to regulate

6  speech. *Knights of Ku Klux Klan v. Arkansas State Highway and Transp. Dept.*, 807 F. Supp. 1427

7  (W.D. Ark. 1992). In that case, the Court eloquently concluded:

8          The court believes that it is undeniable that in this day and time that public highway
           rights-of-way have become places where "speech" of one type or another is engaged
9          in.

10         However, even if that is not true, and even if one can say that public highways and
           the public highway right-of-way are not traditional places of public speech, it is
11         unquestionable, in this court's view, that the state has made them such, at least for
           purposes of allowing and encouraging individuals, groups, and organizations to
12         participate in the Adopt-A-Highway Program in return for, among other things, the
           opportunity to advertise and promote their views or at least their good name. In this
13         respect, the very policy statement which established the program and encouraged
           participation assures possible participants that signs will be erected containing the
14         name of the adopting entity and that "news" media coverage will be encouraged ...
           to recognize participating organizations *supra* at 1430.
15
           Does anyone seriously believe that at least some if not many of the more than
16         2200 persons, groups, or organizations, who have adopted portions of Arkansas
           highways prior to December 9, 1991 did not do so, at least in part, because of the
17         sign and the publicity that will come from their participation in the program?
           Surely not. In fact, it is evident from Chief Counsel Wilson's memorandum of
18         December 9, 1992 to the District Engineer that at least he, as the Department's
           lawyer, believed that one of the benefits to participants was the good will and
19         promotion received from the placing of the signs naming them. In that
           memorandum he said: "Because of the Klan's discriminatory practices, it would
20         not be consistent with the aims of the State to spend State funds for signs that
           would promote the Klan." (emphasis supplied).
21
           Thus, the state has clearly opened for use by the public a place for "speech" through
22         the program. Once having done so, the state may not discriminate against a person,
           group or organization simply because the state officials, and perhaps most of the
23         citizens of the state, disagree with the views being espoused by a particular
           organization.
24  *Id.*, at 1435.

25

26     It is this view that has found favor in the Courts within the Ninth Circuit. *See   Comite De*

27  *Jornaleros De Redondo Beach, supra*; *Hale, supra*.

28

1    In their motion, Defendants attempt to suggest otherwise. However, the cases cited are

2    inapposite. First, Defendants' reference *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d

3    505 (1976). Of course, that case concerned whether Fort Dix, a military base, could impose

4    restrictions on discourse, and did not involve a public highway. *Id.,* 424 U.S. at 830-831. So too,

5    the other case cited by Defendants, *Brown v. Cal. Dep't of Transp., et al.*, 321 F.3d 1217 (9th Cir.

6    2003), also did not involve a highway, but instead a fence on an overpass. *Id.*, at 1222. Again, the

7    authorities are clear that public thoroughfares are "the hallmarks of a traditional public forum."

8    *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988).

9

10    Thus, whether one concludes that the Northbound side of Interstate 5 thoroughfare is a public

11    forum, whether by longstanding tradition or by designation, or a "non-public forum," the fact that

12    Defendants revoked Plaintiff's site-specific permit because of Plaintiff's viewpoint places that

13    decision in irreconcilable conflict with the First Amendment.

14

15    **4.    Defendants' Attempt to Move Plaintiff's Speech "Behind the Barn" is Impermissible.**

16

17    The next substantive argument proffered by Defendants in their motion is that the removal of

18    Plaintiff's speech from its original location to a remote section of another highway is permissible.

19    Again, Defendants' argument is in error. This precise argument has been rejected in the Ninth

20    Circuit. For example, in *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001), artists whose works

21    were excluded from city hall, as allegedly being too controversial, brought a civil rights action to

22    recover for alleged violation of their First Amendment rights. As a defense to the claim, the City

23    argued that it could bar the work from city hall as long as it permitted the artwork to be displayed

24    at other venues. The Court made short shrift of that argument:

25         The city steadfastly maintains that its exclusion of plaintiffs' works was not
           "censorship" since Hopper and Rupp "have been free to show their art throughout
26         the City, *other than [at] city hall*." The art, in Pasco's view, was merely ejected
           from the parlor, not thrown off the farm. <u>But relegating the art to the barnyard does</u>
27         <u>not pass First Amendment scrutiny.</u>

28         We do not endorse Pasco's cramped view of what constitutes censorship, and we

1    find none of the city's reasons for excluding the art work compelling. Although
     children may pass through the hallways of the building, the city concedes that the
2    works are not obscene, and it is beyond peradventure that the works have serious
     artistic value. And the city offered no evidence to suggest that children would be
3    harmed by, or even saw, the works. <u>The mere fact that the works caused
     controversy is, of course, patently insufficient to justify their suppression.</u> *See Texas*
4    *v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("If there
     is a bedrock principle of the First Amendment, it is that the government may not
5    prohibit the expression of an idea simply because society finds the idea itself
     offensive or disagreeable.") (citations omitted); *Consolidated Edison Co. v. Public*
6    *Serv. Comm'n*, 447 U.S. 530, 537-38, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980);
     *Cinevision*, 745 F.2d at 571.
7    *Id.*, at p.1081-1082. [*Underlining supplied. Other emphasis in original.*] [Footnote omitted.]

8

9        Thus, the revocation of Plaintiff's site-specific permit, and attempt to force Plaintiff to accept a

10   new permit for a different site, is constitutionally impermissible and does not save the violation of

11   Plaintiff's First Amendment rights.

12

13   **D.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION**

14        **UNDER THE LAW.**

15

16        Under the Equal Protection Clause, government may not grant the use of a forum to people whose

17   views it finds acceptable, but deny use to those wishing to express less favored or more controversial

18   views. And it may not select which issues are worth discussing or debating in public facilities. Once

19   a forum is opened up to assembly or speaking by some groups, government may not prohibit others

20   from assembling or speaking on the basis of what they intend to say.

21        The Equal Protection Clause requires that statutes affecting First Amendment
          interests be narrowly tailored to their legitimate objectives. *Williams v. Rhodes*,
22        393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *see generally Dunn v. Blumstein*,
          405 U.S., at 342-343, 92 S.Ct., at 1003.[Footnote 8 text: In a variety of contexts we
23        have said that 'even though the governmental purpose be legitimate and substantial,
          that purpose cannot be pursued by means that broadly stifle fundamental personal
24        liberties when the end can be more narrowly achieved.' *Shelton v. Tucker*, 364 U.S.
          479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). This standard, of course, has
25        been carefully applied when First Amendment interests are involved. *E.g.*,
          *Schneider v. State*, 308 U.S. 147, 164, 60 S.Ct. 146, 152, 84 L.Ed. 155 (1939); *De*
26        *Jonge v. Oregon*, 299 U.S. 353, 364-365, 57 S.Ct. 255, 259-260, 81 L.Ed. 278
          (1937); *Cantwell v. Connecticut*, 310 U.S. 296, 307, 60 S.Ct. 900, 904, 84 L.Ed.
27        1213 (1940); *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d
          405 (1963); *Cox v. Louisiana*, 379 U.S. 559, 562-564, 85 S.Ct. 476, 479-481, 13
28        L.Ed.2d 487 (1965); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20

1    L.Ed.2d 672 (1968).]
*Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 101-102 (including FN8)(1972).

2

3    In this case, it is clear that Plaintiff has set forth a facially valid claim of violation of its First

4    Amendment right to free speech. *Complaint* [Doc#1], ¶¶1-15. Having done so, strict scrutiny of

5    Defendant's conduct is required.

6    Again, the testimony of Director Kempton is illuminating:

7    Q:        ARE YOU AWARE OF ANY OTHER SIGN BEING REMOVED OR RELOCATED

8              BECAUSE OF THE NAME THAT WAS ON THE SIGN?

9    KEMPTON: I AM NOT.

10   *Kempton Depo.*, at [61:22-25].   [*LRF Decl.*, Ex. 1, p.13.]

11

12   In fact, Director Kempton testified that the very location where the Plaintiff's site-specific permit

13   had been revoked and their recognition sign had been removed was available for any other group:

14   Q:        SO, THEN, AS WE SIT HERE TODAY, THAT PART OF HIGHWAY IS
              AVAILABLE FOR ANOTHER APPLICANT TO REQUEST A PERMIT,
15             ENCROACHMENT PERMIT TO ADOPT THAT PART OF THE ROAD AS WE
              SIT HERE NOW, CORRECT?
16   KEMPTON: IF IT HASN'T BEEN REMOVED FROM THE ADOPT-A-HIGHWAY ELIGIBLE
              SEGMENTS OF HIGHWAY, THEN IT WOULD STILL BE AVAILABLE.
17
     Q:        WOULD YOU KNOW IF IT HAS BEEN REMOVED?  IS THAT SOMETHING
18             THAT WOULD BE PASSED BY YOU, CONSIDERING THIS LITIGATION AND
              ALL THE THINGS THAT ARE GOING ON?
19   KEMPTON: YES, I WOULD EXPECT TO KNOW.  AND THE FACT THAT I DON'T KNOW
              IS AN INDICATION TO ME THAT IT HAS NOT BEEN REMOVED.
20   *Kempton Depo.*, at [43:22 to 44:11].   [*LRF Decl.*, Ex. 1, pp. 9-10.]

21

22   As noted above, Plaintiff is the only participant in the Adopt-A-Highway program who as ever had

23   its site-specific permit revoked because of its viewpoint.  Such disparate treatment, based purely on

24   subjective whim, does not withstand such scrutiny.  Plaintiff has set forth a valid, viable claim for

25   declaratory and injunctive relief and relief pursuant to 42 U.S.C. §1983 based upon a violation of

26   the equal protection clause of the Fourteenth Amendment. *Complaint* {Doc#1], ¶¶1-20. Defendants'

27   motion to dismiss must fail.

28

1 **E.  DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS.**

2

3     **1.    Defendants violated Plaintiff's Right to Procedural Due Process.**

4     The requirements for establishing a violation of due process are well established.  Before a person

5 is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing,

6 'except for extraordinary situations where some valid governmental interest is at stake that justifies

7 postponing the hearing until after the event.' *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780,

8 28 L.Ed.2d 113 (1971).

9
10
11
> 'Liberty' and 'property' are broad and majestic terms. They are among the '(g)reat (constitutional) concepts . . . purposely left to gather meaning from experience. . . . (T)hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.'

12 *National Mutual Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting).

13

14     The U.S. Supreme Court has also made clear that the property interests protected by procedural

15 due process extend well beyond actual ownership of real estate, chattels, or money.  *See, e.g.,*

16 *Connell v. Higginbotham*, 403 U.S. 207, 208, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); *Bell v.*

17 *Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90

18 S.Ct. 1011, 25 L.Ed.2d 287 (1970).  Similarly, the Court has required due process protection for

19 deprivations of liberty beyond the sort of formal constraints imposed by the criminal process.  *See,*

20 *e.g., Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

21

22     In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548

23 (1972) the Court determined that a non-tenured employee who was not re-hired at the end of his

24 contract had not asserted a due process claim.  However, in so doing, the Court noted that:

25
26
27
> When a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards. Thus, we have required fair notice and opportunity for an adversary hearing before an injunction is issued against the holding of rallies and public meetings. [Citation omitted.]

*Id.*, at p. 575.

28

1    Thus, unlike Plaintiff in *Roth*, Plaintiff here has specifically alleged that Defendants' conduct

2    impacted on Plaintiff's right to free speech. *Complaint* [Doc#1], ¶15.1.    As noted above, the

3    participation in the Adopt-A-Highway program *is speech*. *Knights of Ku Klux Klan v. Arkansas*

4    *State Highway and Transp. Dept., supra*; *Cuffley II, supra*. As such, Plaintiff has demonstrated a

5    fundamental right for which  the procedural due process protections afforded by the Fourteenth

6    Amendment apply.

7

8    Moreover, even absent the first amendment issue, Plaintiff still has asserted a right subject to due

9    process requirements. As stated in *Roth*:

10          To have a property interest in a benefit, a person clearly must have more than an
           abstract need or desire for it. He must have more than a unilateral expectation of it.
11          He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the
           ancient institution of property to protect those claims upon which people rely in
12          their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of
           the constitutional right to a hearing to provide an opportunity for a person to
13          vindicate those claims.
     *Roth, supra*, 408 U.S. at 577.
14
15    In this case, Plaintiff has alleged such a property interest. The complaint asserts that Plaintiff was

16    granted and issued a site-specific encroachment permit for the I-5 NB location. *Complaint* [Doc#1],

17    ¶¶7 & 10. Pursuant to the Adopt-A-Highway program guidelines, such a permit has a duration of five

18    years. *Complaint* [Doc#1], Exhibit 2. Thus, Plaintiff had a "legitimate claim of entitlement" to the

19    permit. Defendants reference to a portion of a sentence in the permit which states that the permit

20    does not convey a "property" interest is misplaced. It is clear from the context in the full sentence

21    in the permit ("This permit is not a property right and does not transfer with the property to a new

22    owner") that it is referencing ***not*** a "property interest" in the due process analysis sense, but instead

23    is simply noting that "real property interest" is not being conveyed to the permittee.

24
25    Moreover, a "property right" is not the only one protected by procedural due process.  Plaintiff

26    has expressed a "liberty interest" afforded due process protection.

27          'While this court has not attempted to define with exactness the liberty . . .
           guaranteed (by the Fourteenth Amendment), the term has received much
           consideration and some of the included things have been definitely stated. Without
28          doubt, it denotes not merely **2707 freedom from bodily restraint but also the right

1          of the individual to contract, to engage in any of the common occupations of life,
2          to acquire useful knowledge, to marry, establish a home and bring up children, to
        worship God according to the dictates of his own conscience, and generally to enjoy
3          those privileges long recognized . . . as essential to the orderly pursuit of happiness
        by free men.'Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed.
4          1042. In a Constitution for a free people, there can be no doubt that the meaning of
        'liberty' must be broad indeed. See, e.g., Bolling v. Sharpe, 347 U.S. 497, 499-500,
5          74 S.Ct. 693, 694, 98 L.Ed. 884;Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31
        L.Ed.2d 551.

*Roth*, *supra*, 408 U.S. at 572.

6

7      Axiomatically, the right of free speech is certainly one "essential to the orderly pursuit of

8  happiness by free men," as well as a "property right" entitled to due process protections.

9      As Director Kempton noted, the agreement between Caltrans and The San Diego Minute Men was

10  ***a contract***. *Kempton Demo.*, p. 48. When Caltrans unilaterally, and without following its own

11  procedures for doing so, revoked Plaintiff's site-specific permit, it violated that contract. Plaintiff's

12  complaint alleges that Caltrans has a specific process for revocation of a permitted's site specific

13  permit. Indeed, the "*Adopt-A-Highway Program Guidelines and Coordinators Handbook*" for

14  which Defendants have sought judicial notice by this Court in conjunction with the instant motion,

15  specifically sets forth such procedures. On page 3-16 of that guidebook, Caltrans has listed the

16  reasons why a permit may be cancelled/revoked:

17          Permits may be cancelled for *[sic]* a several reasons, including:

18          •    Permittee requests cancellation.

19          •    Permit violations.

20          •    Site fails to meet current site review criteria.

21          •    Majority of site undergoing <u>long-term</u> construction.

22      Where a permittee falls within one of these four categories, the Guidebook then sets forth specific

23  procedures which must be followed to first warn the permittee of such violations, then, if

24  appropriate, take steps to revoke that permit. The complaint herein alleges that Defendants'

25  revocation of Plaintiff's site-specific permit did not meet any of the four criteria set forth in the

26  Guidebook and that Defendants failed to follow its own established procedures and criteria for

27  revocation of a site-specific permit, in violation of Plaintiff's Constitutional due process rights.

28  *Complaint* [Doc#1], ¶15.3. Taken as true, as they must, the allegations in the complaint set forth

1   sufficient facts which constitute a proper claim for relief. Therefore, the motion to dismiss must be

2   denied.

3

4   **2.    Defendants violated Plaintiff's Substantive Due Process Rights.**

5

6   As noted in the moving papers, the analysis for determining whether substantive due process

7   rights have been violated are (1) Is there a fundamental right; (2) Is the constitutional right infringed;

8   (3) Is there a sufficient justification for the government's infringement of a right; and (4) Is the

9   means sufficiently related to the purpose? Plaintiff has alleged such a fundamental right (*Complaint*

10  [Doc#1], ¶¶15.1-2) and that Defendants' violation of this right was arbitrary and capricious

11  *Complaint* [Doc#1], ¶15.3), *i.e.* unjustified and unrelated to its purpose.

12

13  **a.    Plaintiff has a Fundamental Right to Free Speech.**

14  Misstating Plaintiff's claim as stemming from the attempted movement of Plaintiff's site-

15  specific permit, Defendants then conclude that "access to a particular location to clean the State's

16  highways via the A.H Program is "deeply rooted in this Nation's history and tradition." Of course,

17  the faulty premise dooms Defendant's conclusion. Plaintiff's claim is that Defendant's abridgement

18  of Plaintiff's right to speech violated Plaintiff's Rights. It is beyond dispute that the right of free

19  speech protected by the First Amendment *is* a fundamental right. (*Police Dept. of Chicago v.*

20  *Mosley*, *supra*, 408 U.S. at p.101 and fn.8). As such, the Defendants' actions are subject to the

21  strictest scrutiny. "Regulations that impinge on fundamental Rights are subject to strict scrutiny."

22  *Harper v. Virginia Board of Elections*, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

23  Thus, in order to survive, such a regulation must be narrowly tailored to serve a compelling state

24  interest. *Reno v. Flores*, 507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

25

26  **b.    Plaintiff's Right to Free Speech Has Been Infringed.**

27  As discussed in Section II.B, *supra*, Plaintiff has alleged an infringement of its right to free

28  speech. Again, Defendants' effort to "restate" Plaintiff's claim as one relating to the movement of

1    Plaintiff's permitted location is incorrect.  Clearly, an infringement of Plaintiff's First Amendment

2    right to free speech satisfies this element of the substantive due process analysis.

3

4        **c.    Defendants' Actions Cannot Survive Scrutiny**.

5        As noted above, Plaintiff's allege (and the facts adduced in deposition bear out) that Defendants'

6    purpose in revoking Plaintiff's site-specific permit was to silence Plaintiff's message as embodied

7    in Plaintiff's name.  *Complaint* [Doc#1], ¶¶15.1.  It did so by granting a "heckler's veto" to those

8    who opposed Plaintiff's viewpoint.  The claim of "safety" arises only from Defendant's assertion

9    that persons opposed to Plaintiff's viewpoint would engage in "road rage" in response to seeing a

10   sign bearing Plaintiff's name on the side of the highway.  Such a justification was precisely rejected

11   as deficient in *Lewis v. Wilson, supra* (253 F.3d at 1081-1082).

12

13       Having failed this step, analyzing the conduct's relationship to the State's purpose is unnecessary.

14   However, the Complaint alleges that Defendants' conduct was arbitrary and capricious (*i.e.* without

15   a valid relationship to any proper governmental purpose).  *See Complaint* [Doc#1] at paragraph 2.

16

17   **F.    PLAINTIFF HAS PROPERLY PLEADED A CLAIM PURSUANT TO 42 U.S.C.**

18        **§1983.**

19

20       To state a claim under 42 U.S.C. § 1983 , a plaintiff must allege two essential elements: (1) that

21   a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

22   violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S.

23   42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

24

25       Here, the Plaintiff's third cause of action pursuant to §1983 (which incorporates the all of the

26   factual allegations of the complaint) alleges that Defendants conduct  under color of State law

27   deprived Plaintiff of its constitutional rights.  Thus, the claim has been properly stated and the

28   motion to dismiss must be denied.

1  **G.    DEFENDANT CALTRANS IS NOT IMMUNE FROM SUIT UNDER THE**
2  **ELEVENTH AMENDMENT TO THE CONSTITUTION.**

3

4      Having demonstrated that Plaintiff's complaint sets forth facts which, taken as true, would entitle
5  Plaintiff to obtain the relief requested against each the named defendants. The next issue presented
6  is whether Caltrans is entitled to escape its liability by reliance on the Eleventh Amendment to the
7  United States Constitution. Plaintiffs contend Caltrans may not.

8

9  **1.    The Eleventh Amendment Does Not Preclude Suits Against a State by Citizens of that**
10  **State based on Federal Questions.**

11      The Eleventh Amendment is brief, and provides:

12          The Judicial power of the United States shall not be construed to extend to any suit
13          in law or equity, commenced or prosecuted against one of the United States by
14          Citizens of another State, or by Citizens or Subjects of any Foreign State.

15  *United States Constitution*, Amendment XI.

16

17      Upon plain reading, one is struck by the fact that it makes no reference to claims asserted against
18  a State by Citizens of *that State*. In analyzing this very issue, the United States Supreme Court has
19  been sharply divided. *See, e.g. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028,
20  138 L.Ed.2d 438 (1997). Although the Supreme Court has found such immunity exists (*see, e.g.*
21  *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), Plaintiff asserts that the thorough
22  historical analysis of the Eleventh Amendment and legal reasoning of Justice Souter's dissent (joined
23  by Justices Ginsburg and Breyer) in *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 100, 116 S.Ct.
24  1114, 134 L.Ed.2d 252 (1996) is the correct interpretation of the genesis and application of the
25  Eleventh Amendment. As noted by Justice Souter:

26          The *Hans* Court erroneously assumed that a State could plead sovereign immunity
            against a noncitizen suing under federal-question jurisdiction, and for that reason
27          held that a State must enjoy the same protection in a suit by one of its citizens. The
            error of *Hans* 's reasoning is underscored by its clear inconsistency with the
28          Founders' hostility to the implicit reception of common-law doctrine as federal law,

1    and with the Founders' conception of sovereign power as divided between the States
and the National Government for the sake of very practical objectives.

2                                          * * *

3    The history and structure of the Eleventh Amendment convincingly show that it
reaches only to suits subject to federal jurisdiction exclusively under the
Citizen-State Diversity Clauses. In precisely tracking the language in Article III

4    providing for citizen-state diversity jurisdiction, the text of the Amendment does,
after all, suggest to common sense that only the Diversity Clauses are being

5    addressed. If the Framers had meant the Amendment to bar federal-question suits
as well, they could not only have made their intentions clearer very easily, but could

6    simply have adopted the first post-*Chisholm* proposal, introduced in the House of
Representatives by Theodore Sedgwick of Massachusetts on instructions from the

7    Legislature of that Commonwealth. Its provisions would have had exactly that
expansive effect:

8    "[N]o state shall be liable to be made a party defendant, in any of the judicial
courts, established, or which shall be established under the authority of the United

9    States, at the suit of any person or persons, whether a citizen or citizens, or a
foreigner or foreigners, or of any body politic or corporate, whether within or

10   without the United States." *Gazette of the United States* 303 (Feb. 20, 1793).
*Id.*, at pp.102 and 110-111 (footnotes omitted).

11

12   Justice Souter's reasoning is sound, historically accurate and the action against Caltrans should

proceed.

13

14

15   **2.    State Officials in their Official Capacities are "Persons" and Are Not Immune from**

**Suite for Declaratory and Injunctive Relief.**

16

17

18   Defendants assert that Defendants Bonner, Kempton and Orso-Delgado, acting in their official

19   capacities, are immune from suit pursuant to the Eleventh Amendment.  However, when sued for

20   prospective injunctive relief,  a state official in his official capacity is considered a "person" for §

21   1983 purposes and a suit for prospective injunctive relief provides a narrow, but well-established,

22   exception to Eleventh Amendment immunity. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

23   As noted in *Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003):

24   Although Plaintiffs' allegations are rooted in events that occurred in the past, the
injunctive and declaratory relief that they seek would prevent future and ongoing

25   illegality.    The Eleventh Amendment poses no bar to Plaintiffs' claims for
prospective relief.

*Id.*, at 491.

26

27   Clearly, the Complaint herein seeks prospective injunctive relief as to an alleged ongoing

28   violation of Plaintiff's civil rights.  Therefore, the claims asserted against the individual defendants

1    in their official capacity are properly stated.

2

3    **3.    No Qualified Immunity for Individual Defendants Where There Are Constitutional**

4         **Violations of Clearly Established Rights.**

5    Even if the Eleventh Amendment rendered the State immune from suits on federal questions, the

6    individual defendants (Bonner, Kempton and Orso-Delgado) are clearly not personally immune from

7    the claims herein. In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme

8    Court confirmed that where a representative of the state purports to engage in conduct which violates

9    the federal constitution, the representative is "stripped of his official or representative character and

10   is subjected in his person to the consequences of his individual conduct." *Ex Parte Young*, *supra*,

11   209 U.S. at p. 160.  Simply put, claims against government officials in their personal capacities are

12   not barred by the Eleventh Amendment.  *Pena v. Gardner*, 976 F.2d 469, 472-473 (1992) (*citing*

13   *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *DeNieva v. Reyes*, 966 F.2d

14   480, 483-84 (9th Cir.1992)).

15   As noted in *Hafer*, *supra*:

16        Personal-capacity suits, on the other hand, seek to impose individual liability upon
          a government officer for actions taken under color of state law. Thus, "[o]n the
17        merits, to establish personal liability in a § 1983 action, it is enough to show that
          the official, acting under color of state law, caused the deprivation of a federal
18        right." [citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87
          L.Ed.2d 114 (1985) ].
19   *Hafer*, *supra*, 502 U.S. at p.25.

20
     Thus, government officials sued in their personal capacities are subject to suit for damages under
21
     42 U.S.C. §1983 for actions taken in her official capacity.  *Hafer*, *supra*, 502 U.S. at p.27.  Such
22
     officials possess a qualified immunity *only* if their conduct does not violate "clearly established
23
     statutory or constitutional Rights of which a reasonable person would have known. Here, Plaintiff's
24
     right to free speech under the First Amendment, and to equal protection and due process under the
25
     Fourteenth Amendment, can hardly be characterized as Rights not "clearly established."  Indeed in
26
     cases such as *Cuffley II*, and *Knights of Ku Klux Klan* and *Lewis*, cited herein and which span from
27
     1992 to 2002, as well as the Ninth Circuit's decision in *Hopper*, *supra*, clearly established that
28

1  Defendants could not revoke Plaintiff's site-specific permit without violating Plaintiff's Rights,

2  particularly where it constituted a grant of a "heckler's veto." Nor are these Rights ones which

3  anyone can plausibly argue that a "reasonable person would not have known." The motion must

4  be denied.

5

6  ### III. CONCLUSION

7

8  Confining one's analysis to Plaintiff's Complaint, it becomes clear that as to the substantive

9  allegations, Plaintiff has set forth claims upon which relief may be granted as to each of the

10  Defendants. Thus, unless there is some other bar to such claims, Plaintiff is entitled to pursue them

11  in this action. If, as a result of the instant motion's recitation of facts beyond the complaint, the

12  Court chooses to consider the motion as one pursuant to Federal Rule of Civil Procedure 56, the

13  undisputed facts confirm the allegations of the complaint and demonstrate the validity of Plaintiff's

14  claims herein.

15

16  Plaintiff acknowledges authorities which hold that the Eleventh Amendment, despite its clear

17  language, encompasses the notion of sovereign immunity of the State from claims by citizens of that

18  state. However, Plaintiff contends that the better historical and legal analysis is that the Eleventh

19  Amendment does not bar federal constitutional claims against a State by Citizens of that State.

20

21  As to the individual Defendants, no immunity applies to protect them from suit for prospective

22  relief in their official capacities nor, in their personal capacities, for damages for their violations of

23  Plaintiff's Constitutional Rights. Therefore, the motion to dismiss must be denied as to the

24  individual defendants.

25  DATED:    April 25, 2008

26                                  /s/ L. Robert Fuselier
                                    Lowell Robert Fuselier, Esq.
27                                  David T. Hayek, Esq.
                                    Kaloogian & Fuselier, LLP
28                                  Attorneys for Plaintiff