Howard Kaloogian, State Bar No. 118954
Lowell Robert Fuselier, State Bar No. 140701
David T. Hayek, State Bar No. 144116
Kaloogian & Fuselier LLP
2382 Faraday Avenue, Suite 130
Carlsbad, California 92008
Tel. 760-522-1802
Fax 760-431-1116

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**

**Southern District of California**

SAN DIEGO MINUTEMEN, An Unincorporated Association,

Plaintiff,

vs.

CALIFORNIA BUSINESS, TRANSPORTATION AND HOUSING AGENCY'S DEPARTMENT OF TRANSPORTATION; DALE BONNER in his Official Capacity as Agency Director, Business, Transportation and Housing Agency; WILL KEMPTON in his Official Capacity as CalTrans Director; PEDRO ORSO-DELGADO in his Official Capacity as Caltrans District Director and DOES 1 through 50,

Defendants.

Case Number: 08 CV 0210 WQH RBB

**NOTICE OF LODGMENT RE: MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

**Hearing Date: October 27, 2008**
**Hearing Time: 11:00 a.m.**
**Court: Courtroom 4**

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

Plaintiff hereby lodges its proposed First Amended Complaint in conjunction with its Motion for Leave to File a First Amended Complaint.

DATED: September 15, 2008

/s/ Lowell Robert Fuselier
Lowell Robert Fuselier
Kaloogian & Fuselier, LLP
Attorneys for Plaintiff,
SAN DIEGO MINUTEMEN

Howard Kaloogian, State Bar No. 118954
Lowell Robert Fuselier, State Bar No. 14070
David T. Hayek, State Bar No. 144116
Kaloogian & Fuselier LLP
2382 Faraday Avenue, Suite 130
Carlsbad, California 92008
Tel. 760-522-1802
Fax. 760-431-1116
**Attorneys for Plaintiffs**

**UNITED STATES DISTRICT COURT**
**Southern District of California**

SAN DIEGO MINUTEMEN, An Unincorporated Association,

Plaintiff,

vs.

CALIFORNIA BUSINESS TRANSPORTATION AND HOUSING AGENCY'S DEPARTMENT OF TRANSPORTATION; DALE BONNER, Individually and in his Official Capacity as Agency Director, Business, Transportation and Housing Agency; WILL KEMPTON, Individually and in his Official Capacity as CalTrans Director; PEDRO ORSO-DELGADO, Individually and in his Official Capacity as Caltrans District Director; Joe Coto, an individual; Gilbert Cedillo, and individual; and DOES 1 through 10,

Defendant.

Case Number: 08CV0210 WQH [RBB]

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF; VIOLATION OF 42 USC 1983 AND FOR FEES PURSUANT TO 42 USC 1988**

**(DEMAND FOR JURY TRIAL)**

Plaintiff, SAN DIEGO MINUTEMEN allege:

## JURISDICTION AND VENUE

1. The jurisdiction of this court over the subject matter of this action is predicated upon 28 USC 1331, 42 USC 1983 and 42 USC 1988 regarding a violation of plaintiff's constitutional rights, free speech and expression, due process and equal protection.

## INTRODUCTION

2. Plaintiff SAN DIEGO MINUTEMEN (herein referred to as the MINUTEMEN) were denied their rights under the United States Constitution, Amendment 1 and Amendment 14 by the named Defendants acting under color of law.

3. Individuals and organizations with political views opposed to the MINUTEMEN's activism for the enforcement of United States Laws and the laws of the State of California demanded that the State of California through its agencies Business, Transportation and Housing Agency; CalTrans; and State Lawmakers ignore and violate the MINUTEMEN's constitutional rights by removing the MINUTEMEN's Adopt-A-Highway sign thereby preventing the MINUTEMEN's name (and its political message) from being viewed by the public.

4. The named defendants conspired together to silence the MINUTEMEN's message and remove the MINUTEMEN's presence from public view. The named defendants, and each of them were fully aware that the removal of the MINUTEMEN's sign would be a constitutional violation. Nevertheless, they agreed to violate the MINUTEMEN's constitutional rights as alleged herein and did remove the sign.

**FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**
**AS AGAINST ALL DEFENDANTS**

5. Plaintiff is and was at all times herein mentioned an unincorporated association operating in County of San Diego, State of California within the Southern District of California.

6. Plaintiff is unaware of the names and capacities of defendants named herein as DOES 1 through 10, and each of them, and therefore, sues said defendants in such fictitious names and capacities. Plaintiff is informed and believes that each defendant named herein as DOE combined and conspired among themselves and with the other defendants herein, to deprive plaintiff of its constitutional rights. DOE defendants are alleged to have committed the same acts as the named defendants.

7. The defendant CALIFORNIA BUSINESS TRANSPORTATION AND HOUSING AGENCY'S DEPARTMENT OF TRANSPORTATION is a California department and/or

agency of the state of California which is in charge of highway transportation, maintenance and the California Adopt-a-Highway program under its agency, CalTrans, and at all times herein mentioned acted under the color of state law.

8. DALE BONNER is Agency Director of the CALIFORNIA BUSINESS TRANSPORTATION AND HOUSING AGENCY'S DEPARTMENT OF TRANSPORTATION and at all times herein mentioned acted under the color of state law.

9. Defendant WILL KEMPTOM is the Director of CalTrans; defendant PEDRO ORSO-DELGADO is the District Director of CalTrans for the area which is the subject of plaintiff's within complaint located on Interstate 5 near the United States Border Inspection Station at San Onofre, California, and each at all times herein mentioned acted under the color of state law.

10. Defendant JOE COTO was at the time alleged herein a California State Assembly Person and the Chair Person for the California Latino Legislative Caucus. Defendant COTO was at all times herein mentioned acted under the color of state law.

11. Defendant GILBERT CEDILLO was at the time alleged herein a California State Senator and the Vice-Chair Person for the California Latino Legislative Caucus. Defendant CEDILLO was at all times herein mentioned acted under the color of state law.

12. Plaintiff, SAN DIEGO MINUTEMEN, is an organization which promotes adherence to both California and federal immigration laws in a peaceful, non-violent manner. The Mission Statement of the SAN DIEGO MINUTEMEN is:

> "To demand maximum border security and immigration enforcement both locally and at the national level. We oppose illegal immigration in all parts of San Diego County with our activism. We assist and support the U.S. Border Patrol in securing the U.S.-Mexican border from terrorists, gang members, criminals, drugs, and illegal aliens entering the United States. We also assist ICE (Immigration & Customs Enforcement) and local law enforcement in exposing law breaking employers and helping to return illegal aliens to their country of legal residence. We act on behalf of and in accord with the United States Constitution and the Bill of Rights."

13. On or about September 18, 2007, plaintiff applied for an Adopt-a-Highway encroachment permit.

14. That on November 19, 2007, plaintiff's application for an Adopt-a-Highway sign was

accepted. A copy of said letter of acceptance is attached hereto as Exhibit "**1**".

15. On or about November 21, 2007 an encroachment permit, allowing plaintiff to maintain the shoulders of Interstate 5 near San Onofre was issued. A copy of said permit is attached hereto as Exhibit "**2**". Said permit is site specific relating only to that area south of the United States Border Inspection Station on Interstate 5, San Onofre, California.

16. That thereafter, Adopt-a-Highway signs were erected on either side of the San Onofre, Immigration Check Point on the northbound side of Interstate 5. A photograph of one of the signs is attached hereto as Exhibit "**3**". Such sign bears the name "SAN DIEGO MINUTEMEN".

17. That thereafter, in January of 2008, numerous members of plaintiff's organization, dressed in CalTrAns approved hard hats and safety vests proceeded to clean up their Adopt-a-Highway assigned area. While cleaning up their area, there was no violence, no interaction with motorists, no signs, waiving or of placards. Plaintiff's members acted in a nondescript, appropriate manner under the direction of CalTrans in picking up litter in their assigned area. A photograph of plaintiff's members picking up litter in their assigned area and near their Adopt-a-Highway sign is attached hereto s Exhibit "**4**".

18. Open border advocates became aware of the SAN DIEGO MINUTEMEN Adopt-A-Highway Sign on Interstate Highway 5 near the San Onofre Immigration Check Point, and immediately demanded that the officials in Caltrans remove the sign. Open Border advocates such as Gente Unida and Enrique Marones, the director of the Border Angels, were claiming that the sign was offensive to the Latino community.

19. On or about January 9, 2008, Gente Unida, an open Borders advocate, publicly demanded that Caltrans remove the MINUTEMEN sign. The demand was also made to DALE BONNER, the Agency Director of the Business, Transportation and Housing Agency. Additionally, BONNER learned on January 10, 2008 that the San Diego Tribune was about to publish a news story about the MINUTEMEN sign and the demands by the open border advocates to remove the sign. BONNER's office requested that the San Diego Tribune hold the story while he investigated the matter.

20. Other advocates also were demanding the MINUTEMEN sign be removed including but not limited to MAAC Project; el Grupo; Latino Policy Institute; Casa Familiar; and even Ricardo Pineda the Consulate General of Mexico. Those individuals and organizations as well as the Mexican Government were communicating their demands for the removal of the sign directly to members of the California Government including the named defendants.

21. On January 10, 2008, BONNER contacted staff members wanting to know if there could be some other grounds than safety as a basis for revoking the MINUTEMEN's permit. BONNER contacted State Director of Caltans, WILL KEMPTON, about revoking the MINUTEMEN permit based upon the MINUTEMEN being discriminatory.

22. KEMPTON responded by email on the 11th summarizing the Adopt-A-Highway guidelines and providing BONNER with a copy of the guidelines. KEMPTON informed BONNER in the email that the *MINUTEMEN are not directly discriminatory*. Nevertheless, KEMPTON sought to assure BONNER that there might be other justifications to revoke the permit: *However, if there are problems, we may have grounds to pull the permit*.

23. The sign was located in Caltrans District 11, so the District Director, Mr. ORSO-DELGADO became involved in the attempt to remove the MINUTEMEN sign. ORSO-DELGADO met with Mike Miles the Deputy for Maintenance and Operations for Caltrans in Sacramento and Steve Tawiaga the Chief of the Maintenance Program for Caltrans in Sacramento. The purpose of the meeting was to find a way of justifying the removal of the MINUTEMEN sign. Miles and Tawiaga both informed Orso-Delgado that Caltrans could not refuse the MINUTEMEN a sign because of the MINUTEMEN's First Amendment rights. ORSO-DELGADO agreed that the removal of the sign was a violation of the MINUTEMEN's First Amendment rights, but he continued in his efforts to find some justification to remove the sign.

24. The Border Angels, headed by Marones, began making private demands to ORSO-DELGADO that the sign be removed. ORSO-DELGADO advised State Director of Caltans, Will KEMPTON, that Marones and other activists were demanding the sign be moved. ORSO-DELGADO was also keeping Marones informed about his communications

with the Government in Sacramento. When Marones learned that ORSO-DELGADO was discussing just moving the sign as a way to calm the controversy, he "clarified" his position in a letter to ORSO-DELGADO on January 18, 2008:

WE DO NOT WANT SIGNS MOVED TO ANOTHER PART OF FREEWAY AS STATED TODAY BY A HANDFUL OF PEOPLE. . . WE DEMAND MINUTEMEN SIGNS BE REMOVED, PERIOD! WE DO NOT ACCEPT THE SAN DIEGO MINUTEMEN SIGNAGE ANYWHERE.

25. ORSO-DELGADO advised KEMPTON that he was receiving written demands to not only move the sign, but to take the sign down on January 18, 2008. KEMPTON responded the following day wanting to be assured that "absolute latest" demand by Marones and the other activists was the removal of the MINUTEMEN sign. KEMPTON wanted to know the complainers' position because he was being pressured by members of the California Latino Legislative Caucus who had demanded that KEMPTON present himself at their offices and explain why the sign had not been removed.

26. ORSO-DELGADO in an effort to justify the removal of the sign began an active campaign to obtain damaging information against the MINUTEMEN to support his intention to remove the sign. ORSO-DELGADO emailed KEMPTON on January 19, 2008 regarding his progress:

I WILL CALL YOU TUESDAY CUZ WE MAY HAVE MORE LEVERAGE ON THE MINUTEMEN.

27. ORSO-DELGADO's progress in his effort to get *more leverage on the MINUTEMEN* was unacceptable to KEMPTON as stated in his email response:

PEDRO: I WILL NEED INFORMATION SOONER THAN THAT. I AM BEING CALLED ON THE CARPET BY THE LATINO CAUCUS ON TUESDAY MORNING, AND WE NEED TO HAVE AN APPROPRIATE STRATEGY DEVELOPED BY THE MEETING.

28. On January 22, 2008, KEMPTON reported to State Capitol Room 5100 and met with Senator GILBERT CEDILLO, Vice Chair of the California Latino Legislative Caucus, R.

Harmon, and Regina Evans, Deputy Cabinet Secretary of the Office of Governor Schwarzenegger

29. KEMPTON then initiated an "informal off the record" police investigation of the MINUTEMEN. He privately asked the director of the California Highway Patrol to conduct an investigation of the MINUTEMEN and its members.

30. On January 24, 2008, Senator CEDILLO and Assembly Member JOE COTO, the Chair of the California Latino Legislative Caucus, confirmed in a letter to KEMPTON confirmed their joint conspiracy to violate the First and Fourth Amendment rights of the MINUTEMEN:

> YOUR COMMITMENT TO IMMEDIATELY REVOKING THIS ORGANIZATION'S [SAN DIEGO MINUTEMEN] PERMIT TO ADOPT A HIGHWAY AND THE REMOVAL OF THE SIGN IN SAN DIEGO IS THE MOST PRUDENT APPROACH IN AVOIDING ANY FUTURE VIOLENCE AND DISCRIMINATION. THE LATINO CAUCUS WILL CONTINUE TO INSIST THAT THE HISTORY OF DISCRIMINATION AND VIOLENCE BY THE MINUTEMEN IS ENOUGH EVIDENCE TO PERMANENTLY BAN THIS ORGANIZATION FROM EVER PARTICIPATING IN THE ADOPT-A-HIGHWAY PROGRAM.

31. KEMPTON and ORSO-DELGADO knowing that there was no legitimate reason to revoke the MINUTEMEN's permit fabricated a safety issue. They claimed that the sign's location near the California Highway Patrol Office and Border Patrol Check Point created a safety issue for the motoring public because the name SAN DIEGO MINUTEMEN would offend the immigrant traffic.

32. On January 28, 2008, ORSO-DELGADO (at the direction of KEMPTON and with the approval of BONNER) notified the MINUTEMEN that their permit was "modified" and the sign would be moved. This action was in direct violation of Caltrans published procedures. Additionally, the sign was not moved but <u>removed</u>.

33. Terri Patterson at Caltrans headquarters, acting on behalf of BONNER and KEMPTON, put out the word to all its district offices that should any new application by the

MINUTEMEN for an Adopt-A-Highway permit be made to hold that application and immediately notify headquarters. Patterson knowing that delaying or holding an application by the MINUTEMEN was a direct violation of their own procedures and guidelines as well as the MINUTEMEN's First and Fourth Amendment rights undertook to informally contact the rest of the AAH Coordinators to let them know that they should *let me know if they receive any applications from this group, and that their response to questions about the turn-around time for new permits in areas with no waiting list is up to 60 days.*

34. Patterson "informally" instructed Caltrans Coordinators to misrepresent the processing time in order to stall the MINUTEMEN applications hoping that KEMPTON's improper police investigation would produce justification for revoking their permit and avoid the issuance of any new permits to the MINUTEMEN. Her email on February 7, 2008 states:

> I WILL INFORMALLY CONTACT THE REST OF THE AAH COORDINATORS TO LET THEM KNOW THAT THEY SHOULD LET ME KNOW IF THEY RECEIVE ANY APPLICATIONS FROM THIS GROUP, AND THAT THEIR RESPONSE TO QUESTIONS ABOUT TURN-AROUND TIME FOR NEW PERMITS IN AREAS WITH NO WAITING LISTS IS UP TO 60 DAYS.

35. On May 15, 2008, the MINUTEMEN faxed a new application for an Adopt-A-Highway sign at a different location. Later that same day, Caltrans' Public Information Officer, Steve Saville gave an interview to the North County Times newspaper claiming that the MINUTEMEN application was rejected because it did not contain an original signature. The Caltrans guidelines and procedures for the AAH program specifically allow for fax applications.

36. On May 16, 2008, a new application with an original signature was mailed to Caltrans by the MINUTEMEN. The US Mail attempted to deliver the application on May 17, 2008, but no one was at the Caltrans' office would sign for the letter. The mailed application was finally signed for on May 19, 2008 by J. Hernandez.

37. On May 30, 2008, the MINUTEMEN email Catherine Bruce-Johnson at Caltrans inquiring about their application. Steve Saville responded to the email stating that the

application was being “processed.” That response was an intentional misrepresentation, but was in keeping with the directions from Patterson to stall any inquires.

38. In June 2008, the MINUTEMEN began emailing numerous officials at Caltrans demanding a response to their application for a new permit. In response, the MINUTEMEN received a letter from Caltrans on August 6, 2008 informing them that the location they had applied for was given to another applicant.

39. That on January 28, 2008, plaintiff's president, Jeff Schwilk, received a letter from PEDRO ORSO_DELGADO, CalTrans District Director, informing him that because plaintiff's participation "raised questions", CalTrans was terminating and revoking plaintiff's permit at the site specific location at the U.S. Border Inspection Station on Interstate 5, San Onofre, California. A copy of said letter is attached hereto as Exhibit "**5**". Plaintiff was neither allowed nor informed that it had a right to a hearing to offer evidence and/or dispute any of the allegations or "questions" raised in the letter of January 28, 2008, Exhibit "**5**".

40. That thereafter, an article was published in the San Diego Union Tribune by columnist Logan Jenkins, indicating that the decision to terminate plaintiff's site specific location for its Adopt-a-Highway participation was terminated because of political pressure placed upon CalTrans by three members of the California Legislature. [Exhibit 6]

41. An actual controversy exists between plaintiff and defendants and each of them. Plaintiff contends:

1. That the termination of its Adopt-a-Highway sign and requisite privileges and obligations was terminated in violation of their First Amendment rights because of content and viewpoint discrimination by defendants herein and possibly others including members of the California Legislature.

2. Plaintiff contends that the actions of defendants and each of them in terminating plaintiff's site specific Adopt-a-Highway location was done arbitrarily, capriciously and based upon the unfettered discretion given to the defendants and each of them in violation of plaintiff's constitutional rights to free speech and equal protection under the laws.

3. Plaintiff contends that defendants and each of them did not follow their own

policies and procedures in removing plaintiff's sign and plaintiff's rights to a site specific Adopt-a-Highway sign and that defendant CalTrans' procedures do not allow for a hearing or for plaintiff or any individual to present evidence which refutes or challenges a revocation of an Adopt-a-Highway permit.

4. Plaintiff contends that defendants in denying their application for a second site permit acted arbitrarily, capriciously and based upon the unfettered discretion given to the defendants and each of them in violation of plaintiff's constitutional rights to free speech and equal protection under the laws.

5. Plaintiff contends that defendants and each of them did not follow their own policies and procedures in denying Plaintiffs second application for an Adopt-a-Highway permit and that defendant CalTrans' procedures required that Plaintiff's first in time application be granted.

4. Plaintiff contends that defendants dispute plaintiff's contentions set forth above.

42. Plaintiff requests a declaration of this court that the actions of defendants and each of them in removing plaintiff's Adopt-a-Highway sign from its site specific location along Interstate 5 at San Onofre, California was a violation of plaintiff's First Amendment Rights of freedom and expression and a violation of plaintiff's rights under the Fourteenth Amendment to procedural due process and for equal protection under the law. Plaintiff further requests that in addition to the aforementioned declaration, that this court temporarily, preliminarily and permanently enjoin defendants and each of them from assigning the specific site location given to plaintiff under its Adopt-a-Highway program to any other individual or entity during the term which plaintiff is a member of the California Adopt-a-Highway program.

43. Plaintiff further requests a mandatory injunction requiring defendants and each of them to return and replace plaintiff's Adopt-a-Highway sign to its original location on Interstate 5, south of San Onofre, California, and to restore all of plaintiff's rights, duties and obligations as an Adopt-a-Highway member at said location.

44. Plaintiff also requests a declaration of this court that the actions of defendants and

each of them in denying plaintiff's second Adopt-a-Highway application in favor of a later applicant was a violation of plaintiff's First Amendment Rights of freedom and expression and a violation of plaintiff's rights under the Fourteenth Amendment to procedural due process and for equal protection under the law.

**SECOND CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 USC §1983**

45. Plaintiff incorporates paragraphs 1 through 44 of the First Cause of Action as though fully set forth at length herein.

46. 42 USC §1983 provides in part: "every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, in equity or other proper pleadings for redress . . . "

47. That the actions of defendants and each of them in depriving plaintiff of its rights to freedom of speech and expression, procedural due process and equal protection under the laws, violated plaintiff's rights.

48. Defendants and each of them knew that the action they were taking or conspiring to have done would be a violation of Plaintiff's constitutional rights and as such are subject to an award of punitive damages. Plaintiff seeks punitive damages in an amount to be determined by the trier of fact.

49. That as a result of the actions of defendants and each of them, as set forth herein above, plaintiff has been injured in a sum not readily ascertainable, but is believed to be in excess of $50,000. Plaintiff ask leave to amend its complaint when the true nature and extent of its damages have been ascertained. Additionally, plaintiff is statutorily entitled to recover its reasonable attorneys fees and costs incurred in this action.

## THIRD CAUSE OF ACTION FOR VIOLATION OF 42USC §1988 AS AGAINST ALL DEFENDANTS

50. Plaintiff incorporates paragraphs 1 through 49 as though fully set forth at length herein.

51. As a result of the defendants and each of them, plaintiff's rights under 42 USC §1988 have been violated. Plaintiff is entitled to reasonable attorney fees as the result of the actions of defendants and each of them.

PRAYER:

Plaintiff prays for judgment against defendants and each of them as follows:

1. General damages according to proof;
2. Special damages according to proof;
3. Punitive damages
4. Reasonable attorney fees;
5. For a declaration that defendants, and each of them, violated plaintiff's First Amendment rights and expression, procedural due process and equal protection under the laws by moving plaintiff's Adopt-a-Highway sign on Interstate 5 near San Onofre, California.
6. For a declaration that defendants, and each of them, violated plaintiff's First Amendment rights and expression, procedural due process and equal protection under the laws by denying plaintiff's second application for an Adopt-a-Highway permit.
6. For the issuance of a temporary restraining order and preliminary injunction prohibiting defendants and each of them from assigning the Adopt-a-Highway area previously assigned to plaintiff on Interstate 5 south of San Onofre, California;
7. For a mandatory injunction ordering defendants and each of them to grant plaintiff's second application for an Adopt-a-Highway permit.
8. For a mandatory injunction ordering defendants and each of them to replace plaintiff's Adopt-a-Highway signs in their original locations south of San Onofre on Interstate 5 and to allow plaintiff to participate in the CalTrans Adopt-a-Highway with all rights, duties and obligations as any other member of the CalTrans Adopt-a-Highway program;

7. For costs of suit incurred herein;

8. For such other and further relief as this court may deem just and proper.

DATED: September 8, 2008

/s/ Lowell Robert Fuselier
Lowell Robert Fuselier
KALOOGIAN & FUSELIER, LLP
Attorneys for Plaintiff,
SAN DIEGO MINUTEMEN

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: September 8, 2008

/s/ Lowell Robert Fuselier
Lowell Robert Fuselier
KALOOGIAN & FUSELIER, LLP
Attorneys for Plaintiff,
SAN DIEGO MINUTEMEN