ROBIN B. JOHANSEN, State Bar No. 79084
KARI KROGSENG, State Bar No. 215263
REMCHO, JOHANSEN & PURCELL, LLP
201 Dolores Avenue
San Leandro, CA  94577
Phone:  (510) 346-6200
Fax:  (510) 346-6201
Email:  rjohansen@rjp.com

Attorneys for Defendants
Senator Gilbert Cedillo and
Assemblyman Joe Coto

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO MINUTEMEN, an Unincorporated Association,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CALIFORNIA BUSINESS TRANSPORTATION AND HOUSING AGENCY'S DEPARTMENT OF TRANSPORTATION; DALE BONNER, Individually and in his Official Capacity as Agency Director, Business, Transportation and Housing Agency; WILL KEMPTON, Individually and in his Official Capacity as Caltrans Director; PEDRO ORSO-DELGADO, Individually and in his Official Capacity as Caltrans District Director; JOE COTO, an individual; GILBERT CEDILLO, an individual; and DOES 1 through 10,<br><br>　　　　　　Defendants. | No.:  08 CV 0210 WQH RBB<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS GILBERT CEDILLO AND JOE COTO FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:　　March 23, 2009<br>Time:　　11:00 a.m.<br>Crtrm:　　4<br><br>(The Honorable William Q. Hayes)<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

CASE NO.:  08 CV 0210 WQH RBB

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION AND STATEMENT OF RELIEF ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS AND THE CASE ........................................................................ 2

ARGUMENT

I.    STANDARD OF REVIEW .......................................................................................... 4

II.   DEFENDANTS' ACTIONS ARE PROTECTED BY THE FIRST
AMENDMENT ............................................................................................................. 4

    A.    Defendants' Actions Are Protected by the Free Speech Clause
of the First Amendment ..................................................................................... 4

    B.    Defendants' Actions Are Protected by the Petition Clause
of the First Amendment ..................................................................................... 8

III.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .......................... 10

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*American Family Assn., Inc. v. City & County of San Francisco*, ............................................................ 5
   277 F.3d 1114 (9th Cir. 2002)

*Bond v. Floyd*, ................................................................................................................................. 4, 8
   385 U.S. 116 (1966)

*Burns v. County of King*, ........................................................................................................................ 7
   883 F.2d 819 (9th Cir. 1989)

*Davis v. Scherer*, .................................................................................................................................. 10
   468 U.S. 183 (1984)

*DeGrassi v. City of Glendora*, ................................................................................................................ 4
   207 F.3d 636 (9th Cir. 2000)

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, .......................................................... 9
   365 U.S. 127 (1961)

*Gravel v. U.S.*, ................................................................................................................................. 8, 11
   408 U.S. 606 (1972)

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, ........................................................................ 4
   896 F.2d 1542 (9th Cir. 1990)

*Hammerhead Enterprises, Inc. v. Brezenoff*, .......................................................................................... 5
   707 F.2d 33 (2d Cir. 1983)

*Harlow v. Fitzgerald*, ............................................................................................................................ 10
   457 U.S. 800 (1982)

*Hinshaw v. Smith*, .................................................................................................................................. 5
   436 F.3d 997 (8th Cir. 2006)

*Hunter v. Bryant*, .................................................................................................................................. 12
   502 U.S. 224 (1991)

*Manistee Town Ctr. v. City of Glendale*, ................................................................................................ 9
   227 F.3d 1090 (9th Cir. 2000)

*Mitchell v. Forsyth*, .............................................................................................................................. 12
   472 U.S. 511 (1985)

*Pearson v. Callahan*, ....................................................................................................................... 10, 11
   ___ U.S. ___, 129 S. Ct. 808 (2009)

*Penthouse Int'l Ltd. v. Meese*, ................................................................................................................ 5
   939 F.2d 1011 (D.C. Cir. 1991)

**TABLE OF AUTHORITIES**: (continued)                                                                                                    **Page(s)**

*R.C. Maxwell Co. v. Borough of New Hope*, ............................................................................................... 5
   735 F.2d 85 (3d Cir. 1984)

*Sanghvi v. City of Claremont*, ..................................................................................................................... 9
   328 F.3d 532 (9th Cir. 2003)

*Saucier v. Katz*, ............................................................................................................................... 10, 11, 12
   533 U.S. 194 (2001)

*Schultz v. Sundberg*, .................................................................................................................................... 7
   759 F.2d 714 (9th Cir. 1985)

*Somers v. Thurman*, ................................................................................................................................... 12
   109 F.3d 614 (9th Cir. 1997)

*Tenney v. Brandhove*, ............................................................................................................................. 7, 8
   341 U.S. 367 (1951)

*United Mine Workers of Am. v. Pennington*, ............................................................................................ 9
   381 U.S. 657 (1965)

*Van Buskirk v. Cable News Network, Inc.*, ................................................................................................ 3
   284 F.3d 977 (9th Cir. 2002)

*Wilder v. Hall*, ........................................................................................................................................... 10
   501 F. Supp. 2d 887 (E.D. Ky. 2007)

*X-Men Security, Inc. v. Pataki*, ............................................................................................................ passim
   196 F.3d 56 (2d Cir. 1999)

**STATUTES:**

Government Code
   § 13976 ................................................................................................................................................... 7
   § 14003 ................................................................................................................................................... 7

**MISCELLANEOUS:**

Federal Rule of Civil Procedure 12(c) ....................................................................................................... 4

**NOTICE OF MOTION AND STATEMENT OF RELIEF**

PLEASE TAKE NOTICE THAT on March 23, 2009 at 11:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court, Southern District of California, at 940 Front Street, San Diego, California 92101, defendants Senator Gilbert Cedillo and Assemblyman Joe Coto will move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motion will be based upon this notice and the memorandum of points and authorities, which are filed herewith.

Defendants' motion is made on the following grounds: (1) that defendants' alleged actions are protected under the free speech and petition clauses of the First Amendment of the Constitution of the United States; (2) that even if their actions were not constitutionally protected, defendants are entitled to qualified immunity.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff's decision to name two California legislators as defendants in this case raises fundamental questions about the nature of representative democracy. Plaintiff objects because Senator Gilbert Cedillo and Assemblyman Joe Coto urged the Caltrans Director to revoke plaintiff's Adopt-A-Highway permit. According to the allegations in the Amended Complaint, they did so on two grounds: (1) plaintiff did not satisfy the criteria for participation in the program, and (2) plaintiff's name on an Adopt-A-Highway sign created a threat of violence. Plaintiff does *not* allege that the legislators threatened any government sanction against the Director if he did not comply, nor could it. As members of the legislative branch, Senator Cedillo and Assemblyman Coto exercise no authority or control over the Director. The most that they could do would be to open an investigation or author legislation that would affect Caltrans. As demonstrated below, those particular actions would be absolutely protected by legislative immunity.

Thus, plaintiff is left only with the charge that these legislators exercised their own First Amendment rights and represented their constituents' views to a separate branch of government. Well-established case law recognizes that such actions are constitutionally protected and that, even if

1 they were not, these defendants are entitled to qualified immunity. For those reasons, Senator Cedillo
2 and Assemblyman Coto are entitled to judgment on the pleadings without leave to amend.

## STATEMENT OF THE FACTS AND THE CASE

Defendants Senator Gilbert Cedillo and Assemblyman Joe Coto were only recently brought into this case. Plaintiff San Diego Minutemen, an unincorporated association organized around immigration issues, filed its original complaint on February 4, 2008 against defendants California Department of Transportation (erroneously referred to in the complaint as the Business, Transportation and Housing Agency's Department of Transportation) ("Caltrans"); Dale Bonner, Secretary of California Business, Transportation and Housing Agency (erroneously referred to in the complaint as the Agency Director); Will Kempton, Caltrans Director; and Pedro Orso-Delgado, Caltrans District Director. The amended complaint alleges that on November 21, 2007, Caltrans issued an Adopt-A-Highway encroachment permit to San Diego Minutemen, which allowed plaintiff to maintain areas along Interstate 5 near the United States Border Inspection Station in San Onofre, California. First Am. Compl. ¶ 15. Adopt-A-Highway signs bearing the name "SAN DIEGO MINUTEMEN" were then erected on either side of the San Onofre Immigration Check Point. *Id*. ¶ 16. Thereafter immigration organizations opposed to the granting of the permit made public and private demands that Caltrans remove the sign. *Id*. ¶¶ 18-20, 24. On January 28, 2008, Caltrans notified San Diego Minutemen by letter that its permit raised questions and had been modified. *Id*. ¶¶ 32, 39, Ex. 5. The signs were removed from their location on Interstate 5. *Id*. The amended complaint further alleges that Caltrans failed to follow its policies and procedures with respect to the revocation of the permit and removal of the signs and arbitrarily denied plaintiff's application for a second site permit. *Id*. ¶¶ 32-41.

Plaintiff alleges that the revocation of its Adopt-A-Highway permit and removal of its signs violated 42 U.S.C. section 1983 and the procedural due process, equal protection, and free speech clauses of the United State Constitution. *Id.* ¶¶ 46-47. On June 27, 2008, this Court granted plaintiff's motion for a preliminary injunction to reinstate plaintiff's permit and signs, and granted in part, and denied in part, the then-defendants' motion to dismiss. Defendant Caltrans was dismissed on Eleventh Amendment grounds, and the claims for damages against defendants Bonner, Kempton, and Orso-

1  Delgado in their official capacities were dismissed.  Order on Defs.' Motion to Dismiss and Pl's
2  Motion for Prelim. Inj. at 33 (Doc. #34).  Nearly six months later, plaintiff amended its complaint to
3  add Senator Cedillo and Assemblyman Coto as defendants in their individual capacities and served
4  copies of a First Amended Complaint for Declaratory Relief on the new defendants on December 4,
5  2008.  Senator Cedillo and Assemblyman Coto filed their answer to the amended complaint on
6  December 19, 2008.

7  Senator Cedillo and Assemblyman Coto dispute the allegations that plaintiff has made
8  against them.  Nevertheless, for purposes of this motion, the truth of the allegations must be assumed.
9  Plaintiff alleges that Senator Cedillo and Assemblyman Coto, then-Chair and Vice-Chair of the
10 California Latino Legislative Caucus, requested that defendant Caltrans Director Will Kempton attend
11 a meeting to discuss the removal of the Adopt-A-Highway permit and signs.  First Am. Compl. ¶¶ 25,
12 27, 28, 30.  On January 22, 2008, defendant Kempton met with Senator Cedillo, as well as others,
13 including Regina Evans, Deputy Cabinet Secretary of the Office of Governor Schwarzenegger.  *Id*.
14 ¶ 28.  On January 24, 2008, Senator Cedillo and Assemblyman Coto followed up with a letter to
15 Kempton which affirmed the California Latino Legislative Caucus's position that "the most prudent
16 approach in avoiding any future violence and discrimination" was to revoke plaintiff's permit and
17 remove the signs, and that they believed that plaintiff's "history of discrimination and violence" was
18 "enough evidence to permanently ban this organization from ever participating in the Adopt-A-
19 Highway program."  *Id*. ¶ 30.[1]

20 An article published in the San Diego Union Tribune indicated that the permit was
21 terminated "because of political pressure placed upon Caltrans by three members of the California
22 Legislature."  First Am. Compl. ¶ 40, Ex. 6.  Plaintiff alleges that Assemblyman Coto and Senator
23 Cedillo "conspired" with the other defendants to violate plaintiff's constitutional rights.  First Am.

---

26 [1] A full copy of this letter is available in the court's records.  Fuselier Decl. in Support of Pl.'s Mot. for Prelim. Inj., Ex. 2 (Doc. #32); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980
27 (9th Cir. 2002) (documents extensively referred to in complaint are incorporated by reference and may be relied upon in Rule 12 motions).
28

1  Compl. ¶ 4; *see also id.* ¶ 30 (the letter "confirmed their joint conspiracy to violate [plaintiff's] First
2  and Fourth Amendment rights").

### ARGUMENT

### I.

### STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). Just like Rule 12(b)(6) motions to dismiss, Rule 12(c) motions test the legal sufficiency of the complaint, assuming that the facts as alleged are true. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1550 (9th Cir. 1990).

### II.

### DEFENDANTS' ACTIONS ARE PROTECTED BY THE FIRST AMENDMENT

**A.   Defendants' Actions Are Protected by the Free Speech Clause of the First Amendment**

"One does not lose one's right to speak upon becoming a legislator." *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 69 (2d Cir. 1999). Indeed, "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy" and that their "statements criticizing public policy and the implementation of it must be similarly protected." *Bond v. Floyd*, 385 U.S. 116, 136 (1966); *see also DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (citing *Bond*, 385 U.S. at 136) ("[T]he free speech rights of elected officials may well be entitled to broader protection than those of public employees generally . . .").

Thus, the Second Circuit has held in a case very similar to this one that "just as the First Amendment protects a legislator's right to communicate with administrative officials to provide assistance in securing a publicly funded contract, so too does it protect the legislator's right to state publicly his criticism of the granting of such a contract to a given entity and to urge to the administrators that such an award would contravene public policy." *X-Men Sec.*, 196 F.3d at 70. In *X-*

*Men Security*, the court found that a state legislator and a member of Congress were protected by the First Amendment from charges that they pressured state and federal authorities not to renew a security services contract for a housing project financed by state and federal funds with an entity affiliated with the Nation of Islam because they were a "hate group" and "racist." *Id*. at 61-62, 68-72.

The Second Circuit is not alone; other circuits have reached similar conclusions. *Hinshaw v. Smith*, 436 F.3d 997, 1009 (8th Cir. 2006) (state representative is constitutionally protected in advocating to state police and firefighter retirement system board members that they replace board's executive director with himself, even if he "may have pressured them verbally"); *Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1015-16 (D.C. Cir. 1991) (government officials may criticize pornographers by letter); *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 89 (3d Cir. 1984) (city council may send letters encouraging landowner to terminate billboard lease); *Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33, 39-40 (2d Cir. 1983) (government official may "exhort" retail stores not to sell offensive board game). The Ninth Circuit has likewise followed this line of thinking in holding that a city board of supervisors does not violate the First Amendment's religious or free speech clauses when it, by letter and formal resolutions, formally disapproves of an advertising campaign sponsored by religious groups and encourages television stations not to air advertisements, because "public officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction." *American Family Assn., Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1119, 1124-25 (9th Cir. 2002).

This case differs from the *American Family Association* case in that it *does* involve practices that the State has a "constitutional ability to regulate" as to time, place, and manner: the placement of a sign on state property.[2] The court's caveat in that case that public officials may

---

[2] Defendants recognize that in ruling on the Caltrans defendants' motion to dismiss, the Court held that plaintiff does have a protected First Amendment right to participate in the AAH program and "that it is not necessary to determine the precise nature of the AAH forum, as such a determination involves a fact sensitive inquiry into the government's intent in opening the forum as well as other factors." Order on Defs.' Motion to Dismiss and Pl's Motion for Prelim. Inj. at 10 (Doc. #34). The *American Family Association* case differed from this one, however, in that the City and County clearly had no
(continued . . .)

criticize practices "so long as there is no actual or threatened imposition of government power or sanction" therefore does not apply. Even if it did, however, plaintiff has not and cannot allege that Senator Cedillo and Assemblyman Coto's conduct in any way exceeded the bounds of their own First Amendment rights.

Plaintiff's allegations with respect to the two legislative defendants are contained in paragraphs 28 and 30 of the First Amended Complaint:

> 28. On January 22, 2008, KEMPTON reported to State Capitol Room 5100 and met with Senator GILBERT CEDILLO, Vice Chair of the California Latino Legislative Caucus, R. Harmon, and Regina Evans, Deputy Cabinet Secretary of the Office of Governor Schwarzenegger.
>
> 30. On January 24, 2008, Senator CEDILLO and Assembly Member JOE COTO, the Chair of the California Latino Legislative Caucus, confirmed in a letter to KEMPTON confirmed [sic] their joint conspiracy to violate the First and Fourth [sic] Amendment rights of the MINUTEMEN:
>
> Your commitment to immediately revoking [San Diego Minutemen's] permit to adopt a highway and the removal of the sign in San Diego is the most prudent approach in avoiding any future violence and discrimination. The Latino Caucus will continue to insist that the history of discrimination and violence by the Minutemen is enough evidence to permanently ban this organization from ever participating in the Adopt A Highway program.

First Am. Comp. ¶¶ 28, 30, capitalization removed.

Thus, plaintiff has alleged (1) that a meeting occurred and (2) that following the meeting the legislative defendants sent a letter to defendant Kempton describing Mr. Kempton's decision to revoke plaintiff's permit as "the most prudent approach in avoiding any future violence and discrimination" and reiterating the Latino Caucus's view that the Minutemen's history disqualifies the organization because of the Adopt-A-Highway Program's prohibition against entities that advocate violence, violation of the law, or discrimination based on race, religion, or a variety of other factors.[3]

---

(. . . continued)
authority to impose time, place, and manner restrictions on the plaintiff's right to publish advertisements.

[3] Fuselier Decl. in Support of Pl.'s Mot. for Prelim. Inj., Ex. 2 (Doc. #32).

1       This is the sum total of plaintiff's factual allegations against the named legislative defendants.  Nothing in those allegations would come close to supporting a claim that either Senator Cedillo or Assemblyman Coto threatened anyone – either the Minutemen themselves or the other defendants – with any kind of government sanction for exercise of the Minutemen's free speech rights.  Nor could they.  Neither Senator Cedillo nor Assemblyman Coto exercises any authority or control over the Caltrans Director or any of his staff.

       Defendants Bonner and Kempton were appointed by the Governor and serve at his pleasure. Cal. Gov't Code §§ 13976, 14003.  Defendant Orso-Delgado reports to them.  All three are executive branch officials.  The only control that members of the Legislature would have over these individuals would be in the legislative arena.  They could exercise their fact-finding and oversight authority or they could introduce legislation that would then require the agreement of a majority of the other 118 members of the Legislature *and* the Governor to go into effect.  Both types of conduct would be absolutely immune under well-established case law protecting legislators from liability for legislative acts.  *See Tenney v. Brandhove*, 341 U.S. 367, 376-379 (1951) (California legislators immune from liability for actions taken as members of legislative fact-finding committee, applying predecessor to section 1983); *Schultz v. Sundberg*, 759 F.2d 714, 716-717 (9th Cir. 1985) (president of Alaska State Senate absolutely immune for conduct in compelling state representative to attend joint session of Legislature).  As the Second Circuit put it in *X-Men Security*:  "To the extent that the complaint's references to 'pressure' might be read to allege that the legislators threatened the decisionmakers with legislation, such a threat could not be the basis of a civil claim, for legislators enjoy absolute immunity for legislative acts, regardless of their motivation." 196 F.3d at 71.[4]

       Thus, just as in *X-Men Security*, "[w]hat the legislators are alleged to have done is to express their views.  The only concrete acts ascribed to them are attending meetings, making

---

[4] For the same reasons, plaintiff cannot state a claim by alleging, without more, that the legislators' conduct amounts to a conspiracy. *X-Men Sec.*, 196 F.3d at 71 ("the complaint contains several charges of 'participation' in a 'conspiracy' that are conclusory, and are for that reason insufficient to state a claim . . . .  It is to the specific allegations that we look to determine whether a constitutional violation is alleged."); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (plaintiff alleging section 1983 conspiracy "must state specific facts to support the existence of the claimed conspiracy.").

statements, and writing letters," which "are entitled to First Amendment protection." 196 F.3d at 71. San Diego Minutemen therefore has no "constitutional right to prevent the legislators from exercising their own rights to speak." *Id.* at 70 ("[n]o case . . . has recognized a right in any individual under the First Amendment or the Equal Protection Clause, or any other constitutional provision, to prevent legislators from exercising their rights merely to express their views.").

As noted above, the United States Supreme Court has repeatedly emphasized the importance of affording legislators wide latitude in expressing their views on matters involving public policy. *Bond*, 385 U.S. at 136. In *Gravel v. U.S.*, 408 U.S. 606, 625 (1972), the Court noted that "[m]embers of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies – they may cajole, and exhort with respect to the administration of a federal statute . . . ." And in *Tenney v. Brandhove*, which arose out of activities by members of the California Legislature, the Court quoted approvingly from an 1885 treatise about the importance of legislative oversight:

> 'It is the proper duty of a representative body to look diligently into every affair of government and to talk much about what it sees. It is meant to be the eyes and the voice, and to embody the wisdom and will of its constituents. Unless Congress have and use every means of acquainting itself with the acts and the disposition of the administrative agents of the government, the country must be helpless to learn how it is being served; and unless Congress both scrutinize these things and sift them by every form of discussion, the country must remain in embarrassing, crippling ignorance of the very affairs which it is most important that it should understand and direct. The informing function of Congress should be preferred even to its legislative function.'
>
> *Tenney*, 341 U.S. at 377, n.6 (quoting Wilson, Congressional Government 303 (1885)).

For these reasons and because the legislative defendants are protected by their own free speech rights, plaintiff's amended complaint fails to state a cause of action against the legislative defendants.

**B.     Defendants' Actions Are Protected by the Petition Clause of the First Amendment**

The First Amendment protects not only the legislative defendants' free speech rights to engage in the type of conduct alleged in the amended complaint. It also protects their right to petition

another branch of government.  The *Noerr-Pennington* doctrine provides immunity against claims under 42 U.S.C. section 1983 based on allegations that defendants petitioned public authorities – including executive and administrative agencies – for redress.  *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).

The Supreme Court first articulated the doctrine in resolving an antitrust violation claim:

> In a representative democracy such as this, [members of the executive] branch[ ] of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives.  To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act.
>
> *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961) ("*Noerr*").[5]

*Noerr-Pennington* immunity applies to government officials who petition other government officials or entities:

> Government officials are frequently called upon to be ombudsmen for their constituents.  In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals, both expressed and perceived.  This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens.
>
> *Manistee*, 227 F.3d at 1093-94.

Thus, section 1983 cannot "regulat[e] this quintessentially 'political activity'" by government officials.  *Id*. (citing *Noerr*, 365 U.S. at 137) (city officials who sought to prevent certain tenants from leasing space in plaintiff's shopping center by writing letters to residents, encouraging papers to write articles, and lobbying county officials are immune from section 1983 suit); *Sanghvi v. City of Claremont*, 328 F.3d 532, 543 (9th Cir. 2003) (city officials who opposed expansion of plaintiffs' Alzheimer's care

---

[5] The doctrine initially applied to immunity from antitrust liability for lobbying government officials (*Noerr*, 365 U.S. at 135; *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)), but has since been extended to include immunity under section 1983.  *Manistee*, 227 F.3d at 1092.

1 facility by lobbying state legislators and county supervisors and filing suit against plaintiffs are
2 immune from section 1983 suit); *Wilder v. Hall*, 501 F. Supp. 2d 887, 895-96 (E.D. Ky. 2007) (state
3 representative who recommended an individual for a Cabinet position is immune from suit when
4 exercising his First Amendment right to petition government).

Accordingly, the *Noerr-Pennington* immunity applies squarely to defendants Senator Cedillo and Assemblyman Coto. Their only offense is lobbying other government officials – the Caltrans defendants – to take a particular course of action with respect to plaintiff's permit and sign. This sort of "political activity" is immune from suit.

## III.

### **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The qualified immunity defense protects government officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Thus, "[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, ____ U.S. ___, 129 S. Ct. 808, 815 (2009).

The Supreme Court has explained the qualified immunity test as follows: courts should determine whether a constitutional right would have been violated on the alleged facts, and if a constitutional right would have been violated, whether that right was clearly established at the time the official took action. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Therefore, "[a] plaintiff who seeks damages for violation of constitutional or [federal] statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

1  The Supreme Court modified its own decision in *Saucier* just last month in *Pearson v. Callahan* to allow courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818.  This case is more simple than most and can be disposed of under either prong.

In addition to being barred under the First Amendment and *Noerr-Pennington* doctrine, plaintiff's claims against Senator Cedillo and Assemblyman Coto fail under the first prong of the qualified immunity analysis:  they have not violated plaintiff's constitutional rights.  As explained above, Senator Cedillo and Assemblyman Coto could not have violated plaintiff's constitutional rights, because they had no authority to take action regarding the permit and sign.  Their advocacy was merely the exercise of their own protected speech, which cannot be trumped by plaintiff's constitutional claims.  Therefore, like the legislator defendants in *X-Men Security* and *Hinshaw*, Senator Cedillo and Assemblyman Coto should be dismissed from the case under the qualified immunity doctrine.

Likewise, Senator Cedillo and Assemblyman Coto are entitled to qualified immunity under *Saucier's* second prong:  plaintiff cannot show it had a clearly established right to silence defendants' speech when they perform in their "official capacity."  *Gravel*, 408 U.S. at 625 (legislative representatives "may cajole, and exhort [administrative agencies] with respect to the administration of a federal statute.").  At the time Senator Cedillo and Assemblyman Coto discussed the San Diego Minutemen's permit and sign with the Caltrans defendants and advocated their removal, there was no authority stating that they should refrain from such advocacy.  To the contrary, as explained above, the only authority on the subject makes clear that Senator Cedillo and Assemblyman Coto were well within their constitutional rights to express their opinions and advocate a particular course of action to an administrative agency.  This authority demonstrates that an entity affected by governmental decisions over which a legislator has no authority or control has no "constitutional right to prevent the legislators from exercising their own rights to speak." *X-Men Sec.*, 196 F.3d at 70.  There would have been no reason for either Senator Cedillo or Assemblyman Coto to think that he violated anyone's constitutional rights, nor "that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The United States Supreme Court has "repeatedly [ ] stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."); *Saucier*, 533 U.S. at 200 (immunity should be determined "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive"). Judgment on the pleadings is thus an appropriate vehicle for determining the issue of qualified immunity for state legislators. *See*, *e.g.*, *Somers v. Thurman*, 109 F.3d 614, 616 (9th Cir. 1997); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery."). Accordingly, Senator Cedillo and Assemblyman Coto are entitled to dismissal now.

## **CONCLUSION**

The actions that Senator Cedillo and Assemblyman Coto are alleged to have taken are protected by the First Amendment, and they are immune from suit under the *Noerr-Pennington* doctrine. Alternatively, defendants' exercise of their First Amendment rights provides them with qualified immunity. The case against defendants should therefore be dismissed with prejudice.

Dated:  February 19, 2009                                        Respectfully submitted,

REMCHO, JOHANSEN & PURCELL, LLP


By:  /s/ Robin B. Johansen
    Attorneys for Defendants Assemblyman
    Joe Coto and Senator Gilbert Cedillo
    Email:  rjohansen@rjp.com

(00071675-13)