1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## SOUTHERN DISTRICT OF CALIFORNIA

8

9  SAN DIEGO MINUTEMEN, An                    CASE NO. 08cv210-WQH-RBB
   Unincorporated Association,
10                                            **ORDER**
                                 Plaintiff,
11         vs.
12  CALIFORNIA BUSINESS,
    TRANSPORTATION AND HOUSING
13  AGENCY'S DEPARTMENT OF
    TRANSPORTATION; DALE BONNER,
14  in his official capacity as Agency Director
    of the California Business, Transportation
15  and Housing Agency; WILL KEMPTON,
    individually and in his official capacity as
16  Caltrans Director; PEDRO ORSO-
    DELGADO, individually and in his
17  official capacity as Caltrans District
    Director; Joe Coto, an individual; Gilbert
18  Cedillo, an individual; and DOES 1
    through 50,
19
                                 Defendants.
20  HAYES, Judge:

21         The matters before the Court are the Ex Parte Application for Order Enforcing

22  Settlement Agreement, filed by Plaintiff San Diego Minutemen (Doc. # 75), the Counter Ex

23  Parte Application for an Order of Defendants' Compliance with the Settlement Agreement,

24  filed by Defendants (Doc. # 78), and the Notice of Lien by Judgment Creditor Joanne Yoon

25  (Doc. # 71).

26  **I.      BACKGROUND**

27         On February 4, 2008, Plaintiff San Diego Minutemen filed a Complaint against

28  Defendants California Business, Transportation and Housing Agency's Department of

Transportation ("Caltrans"); Dale Bonner, Agency Director of the California Business, Transportation and Housing Agency; Will Kempton, Caltrans Director; and Pedro Orso-Delgado, Caltrans District Director. (Doc. # 1). The Complaint alleged that Defendants violated Plaintiff's constitutional rights to free speech, free expression, equal protection, and due process in revoking Plaintiff's Adopt-A-Highway Program permit and removing Plaintiff's Adopt-A-Highway courtesy signs from their location along Interstate 5 at San Onofre, California. (Doc. # 1). The Complaint asserted claims for damages pursuant to 42 U.S.C. §§ 1983 and 1988. (Doc. # 1).

On February 25, 2008, Plaintiff filed a motion for a preliminary injunction. (Doc. # 13). On June 27, 2008, the Court granted Plaintiff's motion for preliminary injunction, and required Defendants to reinstate Plaintiff's Adopt-A-Highway Program permit and reinstall Plaintiff's courtesy signs during the pendency of this litigation. (Doc. # 34).

On August 14, 2009, Plaintiff's counsel filed two documents, each entitled, "Notice of Attorney's Lien." The first Notice states:

> [B]y virtue of written fee agreements, one dated January 8, 2008, and two dated January 29, 2008, the undersigned law firm has and claims a lien ahead of all others on the San Diego Minutemen's claims and causes of action asserted herein, and on any judgment or settlement rendered in favor of the San Diego Minutemen, to secure payment for legal services rendered and costs and expenses advanced on behalf of said party, all in accordance with the terms of the aforementioned fee agreements.

(Doc. # 69 at 2). The second Notice states:

> [T]he undersigned law firm is the attorney of record for Jeff Schwilk in other pending civil actions.... [B]y virtue of written fee agreements, one dated January 8, 2008, and two dated January 29, 2008, the undersigned law firm has and claims a lien ahead of all others on any judgment or settlement rendered in favor of the San Diego Minutemen which inures to the benefit of Jeff Schwilk, to secure payment for legal services rendered and costs and expenses advanced on behalf of Jeff Schwilk, all in accordance with the terms of the aforementioned fee agreements.

(Doc. # 70 at 1-2).

On August 17, 2009, Joanne Yoon, a non-party to this action, filed a "Notice of Lien by Judgment Creditor Joanne Yoon." (Doc. # 71). This Notice states that Yoon has a money judgment against Jeff Schwilk, who "is the president of, a member of and controls plaintiff San Diego Minutemen ... and was the officer or member of that association that controlled this

litigation in United States District Court." (Doc. # 71 at 2). Attached to the Notice is a copy of a Judgment filed on June 25, 2009 in an action in San Diego County Superior Court, entitled Joanne Yoon v. Ray Carney and Jeff Schwilk, case no. GIC882238. (Doc. # 71, Ex. 1). The Judgment states that Yoon shall recover from Schwilk principal of $135,000, plus interest. (Doc. # 71, Ex. 1 at 2). The Notice states that Yoon "creates and claims a lien" in this action pursuant to California Code of Civil Procedure § 708.410 et seq. (Doc. # 71 at 2).

On August 18, 2009, Defendants in this action filed a "Notice of Multiple Lien Claimants on Settlement." (Doc. # 72). This Notice states:

> [O]n August 13, 2009, defendants received a Lien on behalf of Ms. Joanne Yoon ... against the settlement between defendants and plaintiff.... On August 14, 2009, defendants were served with two separate Notice of Attorney's Liens from the Law Firm of Kaloogian & Fuselier.... On August 14, 2009, defendants received a letter from Kaloogian & Fuselier disputing the lien of Ms. Yoon.... On August 18, 2009, the settlement check was received by my office. Pursuant to the settlement, the warrant is made payable to "SAN DIEGO MINUTEMEN AND ITS ATTORNEYS OF RECORD KALOOGIAN AND FUSELIER LLP." Defendants seek the Court's determination with respect to the competing lien claimants. Unless the Court prefers that the check be deposited with the Court, defendants will retain custody of the settlement check until the Court determines the validity of the liens.

(Doc. # 72 at 1-2).

On September 4, 2009, Plaintiff filed the Ex Parte Application for Order Enforcing Settlement Agreement. (Doc. # 75). Plaintiff attached a copy of a settlement agreement signed on August 3, 2009 by Schwilk, Plaintiff's counsel, and Defendants' counsel. Defendants' counsel signed the agreement as "attorney and representative for Defendants State, Dale Bonner, William Kempton and Pedro Orso Delgado."[1] (Kaloogian Decl., Ex. 1 at 2, Doc. # 75-2). The settlement agreement states:

> In accordance with the below named terms, Plaintiff San Diego Minutemen hereby dismisses its lawsuit in its entirety against [Defendants].

> (1) $157,500 paid by the State to the San Diego Minutemen. Other than the monetary figure stated above, each side shall bear its own costs, fees and expenses. No interest shall attach to this monetary figure. Payment to be made within 60 days from the execution of this formal settlement agreement and formal release of all claims....

---

[1] Defendants Gilbert Cedillo and Joe Coto were dismissed from this action on July 10, 2009. (Doc. # 67).

(2) The State shall grant a permit for the location just south of the San Diego Minutemen's current permit.

....

(4) The State shall grandfather in the current permit location near the San Onofre checkpoint ... so that any newly proposed regulations ... will not apply to that site.

(5) Steve Saville, Public Information Officer for the State, shall read the following statement:

> 'The San Diego Minutemen's Adopt-a-Highway permit was revoked in January 2008. Caltrans has conducted an informal investigation and has determined that they are a law-abiding political activist group that has been lobbying for secure borders. Any negative implications contained in the revocation letter of January 28, 2008 were in error and are regretted. Caltrans has reinstated the permit and the San Diego Minutemen are welcomed participants in the Adopt-a-Highway Program.'

This statement shall be read at a press conference to be held within 14 days following the execution of this settlement agreement.

(Kaloogian Decl., Ex. 1 at 1-2, Doc. # 75-2). In a Declaration in support of the Ex Parte Application, Plaintiff's counsel stated that, prior to the parties signing the agreement, the parties orally agreed that "the press conference contemplated in the [settlement] agreement would be a joint press conference with Plaintiff's representative participating, at the District 11 offices of Caltrans, with Caltrans' spokesman Mr. Saville reading the prepared statement, then turning the press conference over to Plaintiff's representative to make any statement they wanted and fielding any questions from the media." (Kaloogian Decl. ¶ 6, Doc. # 75-2). Attached to the Ex Parte Application is a letter dated August 25, 2009 from a Caltrans representative to the Magistrate Judge in this case, which states:

> [O]n August 13, 2009, Caltrans read the ... statement [as set out in the settlement agreement] absent the term 'law-abiding.' ... [U]pon reflection it is the Department's considered judgment that it is beyond the expertise, ability, and authority of this department, a non-law enforcement agency of the State of California, to make a determination that any individual or entity is at all times 'law-abiding' in conducting its affairs.

(Kaloogian Decl., Ex. 3 at 1-2, Doc. # 75-2). Plaintiff contends that Defendants have failed to comply with the first, second and fifth provisions of the above-quoted settlement agreement. Plaintiff requests that the Court to issue the following order:

> 1. Caltrans shall fulfill its obligation under paragraph (5) of the settlement agreement as follows: Steve Saville, Public Information Officer for CalTrans

District 11, shall read the ... statement [as written in the settlement agreement] verbatim....  The statement ... shall be read at a press conference at the District 11 headquarters that will be held jointly with the San Diego Minutemen participating on the second Thursday at 3:00 p.m. after entry of this Order.

2. Caltrans forthwith pay the sum of ONE HUNDRED FIFTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($157,500.00) to Plaintiff as previously directed by Plaintiff.

3. Caltrans forthwith issue an encroachment permit to the San Diego Minutemen to participate in the Adopt A Highway program ... for the location just south of the San Diego Minutemen's current permit, also referred to as Interstate 5 SB, mile post 62-64.

4. Within seven days of completion of the foregoing by Caltrans, Plaintiff shall file a Request for Dismissal of this action, with prejudice, in its entirety.

(Doc. # 75 at 1).

On September 25, Yoon filed an opposition to the Ex Parte Application, based upon her lien pursuant to California Code of Civil Procedure § 708.410 et seq.  (Doc. # 79).  Yoon contends that "San Diego Minutemen ... is Schwilk."  (Doc. # 79 at 2).  Yoon submitted a transcript of testimony from Schwilk in the state court action, wherein Schwilk testified that he is "one of the founding members" of the San Diego Minutemen, that he has "access to the San Diego Minutemen bank account," but the funds "are in the San Diego Minutemen name. I'm Treasurer, but they are accounted for separately; and they are not my funds."  (Doc. # 79, Ex. 5 at 6-7, 26).  Yoon also attached a copy of a "Fictitious Name Statement" Schwilk filed with the San Diego County Recorder indicating that the fictitious business name "San Diego Minutemen" is "an unincorporated association–other than a partnership" and "is hereby registered by" Schwilk.  (Doc. # 79, Ex. 4 at 1).  Yoon contends that Schwilk has a personal property interest in the settlement proceeds in this case.  Yoon asserts: "This Court should not order the disbursement of the settlement proceeds only to the San Diego Minutemen and/or [Plaintiff's counsel]....  The $157,000 check should be made payable to the San Diego Minutemen, [Plaintiff's counsel] and Joanne Yoon, or simply interplead."  (Doc. # 79 at 3).

On September 25, 2009, Defendants filed an opposition to Plaintiff's Ex Parte Application and a "Counter Ex Parte Application for an Order of Defendants' Compliance with the Settlement Agreement."  (Doc. # 78).  Defendants contend that "the plain language of the settlement agreement that plaintiff's representative Jeff Schwilk and plaintiff's attorney ...

executed, reveals that there was no requirement for a joint press conference. If Plaintiff demanded a joint press conference, it should have made that point clear in the settlement agreement." (Doc. # 78 at 2-3). Defendants contend that "Plaintiff's actions after the August 3, 2009, Settlement Conference render their demand for a joint press conference moot," because Schwilk and Plaintiff's counsel "made their own statements to the press directly after the settlement conference rather than waiting for an anticipated 'joint' press conference." (Doc. # 78 at 3, Ex. B (article from San Diego Union-Tribune)). Defendants state:

> In the afternoon of August 12, 2009, Caltrans notified the news media that it would be making a statement at 3:00 p.m. the following afternoon as part of its regular press release. Steve Saville, the State's Public Information Officer, was unable to speak because he was out of the office with swine flu. Instead, Laurie Berman, Chief Deputy District Director of Project Delivery, addressed the press, which included a camera crew. The ... statement [quoted in the settlement agreement] was read verbatim except for one word: 'law-abiding.' The State omitted this word because it was decided that it is beyond the expertise, ability and authority of the Department of Transportation, a non-law enforcement agency of the State of California, to make a determination that any individual or entity is at all times 'law-abiding' in conducting its affairs.

> To now order Defendants to orchestrate a joint press conference with Plaintiff would result in a meaningless act because news of the settlement has already been made public by both Plaintiff and Defendants. Defendants seek an Order from the Court stating they have substantively complied with provision (5) of the settlement agreement and no further actions are necessary.

(Doc. # 78 at 3-4). Defendants further assert:

> The State has retained custody of the settlement check because it seeks the Court's determination as to the validity of the liens filed in this case. The State has no interest in how the check is ultimately dispersed.... If the Court agrees, the State will deposit the settlement check with the Court pending resolution of these lien claims. Under these circumstances, the State requests an Order from the Court that the State has complied with provision (1) of the settlement agreement by providing a check in the agreed upon amount.

(Doc. # 78 at 5). With respect to the new Adopt-a-Highway permit referenced in provision two of the settlement agreement, Defendants contend: "There has been no unnecessary delay with respect to how the State is processing this permit. The issuance of this permit has been delayed [due] to a change in signage requested by the San Diego Minutemen. Further, a recent problem has a emerged regarding the language of provision (2) and the permit application filled out by Jeff Schwilk on behalf of the San Diego Minutemen. The State believes these issues will be resolved shortly." (Doc. # 78 at 5). Defendants move the Court for "an Order

1  stating that Defendants have complied with the provisions of the Settlement Agreement."
2  (Doc. # 78 at 6).

3       On October 2, 2009, Plaintiff filed a reply brief.  (Doc. # 81).  Plaintiff contends that
4  "Yoon's claim fails because the State Court judgment debtor, Jeff Schwilk, is not a party to
5  this action; her Notice of Lien was not timely filed because the State Court interim judgment
6  is on appeal; and any lien she may have is junior to a superior Attorney's Lien that is first in
7  time and also filed in this case."  (Doc. # 81 at 1).

8  **II.    DISCUSSION**

9       **A.    Judgment Creditor Yoon**

10       "Under [California's] judgment lien statutes, '[a] judgment creditor who has a money
11  judgment against a judgment debtor who is a party to a pending action ... may obtain a lien [on
12  the rights of the judgment debtor to money under any judgment subsequently procured in the
13  action] to the extent required to satisfy the judgment creditor's money judgment.'"  *Brown v.*
14  *Superior Court*, 116 Cal. App. 4th 320, 326 (2004) (quoting Cal. Code Civ. P. § 708.410(a)).
15  "To obtain a judgment lien under these statutes, 'the judgment creditor shall file a notice of
16  lien and an abstract or certified copy of the judgment creditor's money judgment in the
17  pending action....'" *Id*. (quoting Cal. Code Civ. P. § 708.410(b)).  After filing the notice of lien,
18  a judgment creditor may thereafter enforce the lien by application to the court pursuant to Cal.
19  Code Civ. P. § 708.470.  *See Id*. at 327.  "The[] judgment lien statutes are subject to strict
20  construction...."  *Casa Eva I Homeowners Ass'n v. Ani Constr. & Tile, Inc.*, 134 Cal. App. 4th
21  771, 778 (2005) (quotation omitted).

22       The plain language of California Code of Civil Procedure § 708.410 permits a judgment
23  creditor to obtain a lien on the money of a judgment debtor only where the judgment debtor
24  is "a party" to a pending action.  Cal. Code Civ. P. § 708.410(a).  The judgment debtor,
25  Schwilk, is not a party to this action.  Yoon contends, without citation to authority, that she
26  may enforce her judgment against Schwilk in this action because "the San Diego Minutemen
27  ... is Schwilk."  (Doc. # 79 at 2).

28       Under California law, there are two requirements for the application of the "alter ego"

doctrine: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (quotation omitted); *see also Barr v. United Methodist Church*, 90 Cal. App. 3d 259, 267 (1979) (alter ego doctrine may be applied to an unincorporated association); *cf. Clean Air Trans. Sys. v. San Mateo County Transit Dist.*, 198 Cal. App. 3d 576, 579 (1988) ("[A]n unincorporated association can sue and be sued in its own name and judgments can be enforced only as against its own assets.  Therefore, an unincorporated association resembles a corporation more than it does an individual...."). Even if the "alter ego" doctrine were applicable to California's judgment lien statutes,  the evidence submitted by Yoon fails to establish both of the required elements.

Additionally, California's judgment lien statute provides: "A lien created under this article may be enforced by any applicable procedure: ... If an appeal is filed from the judgment subject to the lien, after the appeal is finally determined." Cal. Code Civ. P. § 708.480(b); *cf. Manco Contracting Co. v. Bezdikian*, 45 Cal. 4th 192, 202 (2008) ("While in California a judgment is not final and conclusive between the parties when it is on appeal, or for as long as it remains subject to appeal, the federal rule is contrary.") (citations omitted).  Plaintiff has submitted a copy of a Notice of Appeal, which was filed on September 11, 2009 in the state court case. (Doc. # 81, Ex. 1).  There is no indication from the record that this appeal has been finally determined.  Yoon may not utilize the procedures outlined in California's judgment lien statutes until "after the appeal is finally determined." Cal. Code Civ. P. § 708.480(b).

Yoon's request for relief pursuant to California Code of Civil Procedure § 708.410 et seq. is denied.

## B.    Counter Ex Parte Applications

Plaintiff has filed an Ex Parte Application for Order Enforcing Settlement Agreement, contending that Defendants have failed to comply with the settlement agreement in the following ways: (1) failure to hold a *joint* press conference; (2) failure to have Saville read the required statement; (3) omission of the word "law-abiding" from the statement; (4) failure to

deliver the settlement check to Plaintiff; and (5) failure to issue the Adopt-a-Highway permit referenced in provision two of the settlement agreement.  Defendants have filed a Counter Ex Parte Application for an Order of Defendants' Compliance with the Settlement Agreement.

Because of "the high judicial favor accorded the voluntary settlement of disputes," a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (quotations omitted).  To be enforced, a settlement agreement must meet two requirements.  First, it must be a "complete agreement." *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994).  Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).  A party's attorney may enter into a settlement agreement if he or she has the express permission of his or her client. *See id.* at 1145.

The parties do not dispute that there is a complete agreement, and that Defendants' counsel possessed the authority to settle the case on behalf of all Defendants.  Neither party requests an evidentiary hearing.

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.  This is true even though the underlying cause of action is federal." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (quotation omitted).  California courts apply Restatement (Second) of Contracts § 237, which provides: "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."  Rest. 2d Contracts § 237; *see also Taylor v. Johnston*, 15 Cal. 3d 130, 139 n.12 (1975); *FPI Dev., Inc. v. Nakashima*, 231 Cal. App. 3d 367, 398-99 (1991).  "In determining whether a failure to render ... performance is material," the following circumstances are significant:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Rest. 2d Contracts § 241; *see also Taylor*, 15 Cal. 3d at 139 n.12; *Linden Partners v. Wilshire Linden Assoc.*, 62 Cal. App. 4th 508, 531 (1998).

Applying these principles to this case, the Court concludes that the failure to hold a joint press conference and the failure to have Saville read the required statement do not constitute material breaches of the settlement agreement.  However, the Court concludes that the omission of the word "law-abiding" from the statement, the failure to deliver the settlement check to Plaintiff, and the failure to issue the Adopt-a-Highway permit referenced in provision two of the settlement agreement are material.  Plaintiff will not be required to render performance pursuant to the settlement agreement (i.e., move for the dismissal of this action) until Defendants have delivered the settlement check to Plaintiff, issued the Adopt-a-Highway permit referenced in provision two of the settlement agreement, and, no later than fourteen days from the date of this Order, a Public Information Officer for the State has complied with provision five of the settlement agreement.

## III.   CONCLUSION

IT IS HEREBY ORDERED that Yoon's request for relief pursuant to California Code of Civil Procedure § 708.410 et seq. is **DENIED**.

The Ex Parte Application for Order Enforcing Settlement Agreement (Doc. # 75) and the Counter Ex Parte Application for an Order of Defendants' Compliance with the Settlement Agreement (Doc. # 78) are each **GRANTED** in part and **DENIED** in part.  Plaintiff will not be required to render performance pursuant to the settlement agreement until Defendants have delivered the settlement check to Plaintiff, issued the Adopt-a-Highway permit referenced in provision two of the settlement agreement, and, no later than **fourteen (14) days** from the date of this Order, a Public Information Officer for the State has complied with provision five of the settlement agreement.

1        No later than **fifteen (15) days** after this Order is filed, the parties shall file either: (1)

2   a joint motion to dismiss this action, or (2) a status report as to the performance of the material

3   provisions of the settlement agreement.

4   DATED:  October 27, 2009

5   _William Q. Hayes_

6   **WILLIAM Q. HAYES**
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28